UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY MADISON | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23CV16476 |
| | ) | |
| | ) | Hon. Judge Elaine E. Bucklo |
| CREATIVE WERKS, LLC, and | ) | |
| STEVE SCHROEDER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO SET ASIDE AND FOR LEAVE TO FILE**

# EXHIBIT B

UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MARY MADISON                        )
                                    )
        Plaintiff,                  )        Case No. 23CV16476
                                    )
                                    )        Hon. Judge Elaine E. Bucklo
CREATIVE WERKS, LLC, and            )
STEVE SCHROEDER,                    )
                                    )
        Defendant.                  )
                                    )

## MOTION TO DISMISS

The named Defendant, Creative Werks, Inc., by and through its counsel, Dickinson Wright PLLC, hereby sets forth this Motion to Dismiss, with respect to Plaintiff, Mary Madison's Complaint Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### RELEVANT BACKGROUND

On December 4, 2023, Plaintiff, Mary Madison, filed a Complaint against Creative Werks, Inc. ("Creative Werks") alleging violations under the Age Discrimination Employment Act, Title VII of the Civil Rights Act (based upon Race) and Title VII of the Civil Rights Act (based on sex). *See* Complaint, Dkt #1 ("hereinafter "Federal Civil Complaint," attached hereto with relevant exhibits as Exhibit A hereto). Prior to filing the Federal Civil Complaint, Plaintiff filed a Charge of Discrimination with the EEOC on August 23, 2023 (alleging race discrimination, retaliation and harassment in response to whistleblowing). (*Id*. at Ex. 1). The EEOC thereafter issued a Notice of Right to Sue on September 5, 2023. (*Id* at Ex. 2). On or about November 2, 2023, the Plaintiff then requested the IDHR to investigate the discrimination charge that had previously been before the EEOC. (*Id*. at Ex. 3). Creative Werks has since replied to Requests for Information and Documents Requested in the IDHR, in addition to submitting a Position Statement, denying any

liability. The IDHR Matter (Charge 2024CR0389) remains pending and was pending when Plaintiff filed the instant Federal Complaint. This is directly reflected in Paragraph 7.2(a)(ii), wherein Plaintiff asserts same and indicates, "Currently Under Investigation" before the IDHR (*Id*.).

## ARGUMENT

### I.  **Ms. Madison Failed to Exhaust All of Her Available Remedies Requiring the Dismissal of All Counts.**

For the reasons set forth in greater detail herein, federal courts do not have jurisdiction over IDHR claims unless and until a Plaintiff exhausts their administrative remedies. Here, Plaintiff has failed to exhaust her administrative remedies, and therefore her Complaint (which wholly overlaps her IDHR matter) must be dismissed under Rule 12(c).

When a Court considers a Rule 12(b)(6) motion, the court must assume the truth of the complaint's well-pleaded factual allegations (but not mere legal conclusions.) *See Zahn v. N. Am. Power & Gas*, *LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). In doing so, the Court may also take notice of "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See, e.g., Anderson v. Centers for New Horizons, Inc.,* 891 F. Supp. 2d 956, 959 (N.D. Ill. 2012), *citing 188 LLC v. Trinity Indus. Inc.,* 300 F.3d 730, 735 (7th Cir.2002). Accordingly, this Court may consider Plaintiff's IDHR and EEOC documents attached to her Federal Civil Complaint. These demonstrate, on their face, that the basis of her Complaint is still pending administrative resolution before the IDHR.

Failure to exhaust administrative remedies is an affirmative defense. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). "[T]he proper vehicle for dismissal based on an affirmative defense is a Rule 12(c) motion for judgment on the pleadings." *Scott v. City of Kewanee*, 2014 WL

1302025, at *5 (C.D. Ill. 2014) (*citing Carr v. Tillery*, 591 F.3d 909, 912–13 (7th Cir. 2010) and *McCready v. eBay, Inc*., 453 F.3d 882, 892 n.2 (7th Cir. 2006)).

The court evaluates a Rule 12(c) motion under "the same standard as a Rule 12(b)(6) motion." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006).In order to defeat a 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). This Court has specifically addressed, motions to dismiss predicated upon a failure to exhaust administrative remedies. *See e.g., Davis v. Potter*, 2004 U.S. Dist. LEXIS 2105, No. 03 C 4155, *7 (N.D. Ill. Feb. 6, 2004); *Boutte v. Principi*, 2003 U.S. Dist. LEXIS 1796, No. 02 C 1916, *1 (N.D. Ill. Jan. 27, 2003). It has been noted in this regard, that a mere "right to sue letter from the EEOC does not serve as a substitute for a final order from the [IDHR]." *Anderson,* 891 F. Supp. 2d at 959-960 (N.D. Ill. 2012), *citing Jimenez v. Thompson Steel Co., Inc.,* 264 F.Supp.2d 693, 695 (N.D.Ill.2003); *see also Hankins v. Best Buy Co., Inc.,* No. 10 CV 4508, 2011 WL 6016233, at *6 (N.D.Ill. Dec. 2, 2011) ("the fact that [the plaintiff] received a right to sue notice from the EEOC does not establish that he may bring suit under the [IDHR]"). Here, when the EEOC issued a "Right to Sue Letter," Plaintiff specifically requested that the IDHR take up the changes and continue her administrative claim before that agency. Accordingly, as 365 days have not passed since Plaintiff filed her IDHR charge, (*see* 775 ILCS 5/7A–102(G)(2)), she cannot initiate a lawsuit (i.e. the instant Complaint), without a final order from the IDHR. (775 ILCS 5/7A–102(D)(3)-(4)).

*Anderson,* 891 F. Supp. 2d at 960 (N.D. Ill. 2012); *Vroman v. Round Lake Area Sch.-Dist.*, No. 15 C 2013, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015).[1]

For the reasons set forth above, Plaintiff's Complaint seeking relief upon age discrimination must also be dismissed. Notably, in paragraph 9 of her Federal Complaint, she checked a box indicating that she was seeking relief with respect to Age Discrimination (although no factual allegations of the same are included the Complaint). Before bringing an age discrimination claim, a plaintiff must file a charge of discrimination with the EEOC and/or IDHR. *Anderson*, 891 F. Supp. 2d at 956. Having never filed such an EEOC or IDHR claim based on age discrimination, Plaintiff may not now assert same in her Complaint. *See Vroman,* No. 15 C 2013, 2015 WL 7273108, at *2.

## II.     This Court Lacks Jurisdiction as to the Individual Defendant(s) Requiring Dismissal of the Claims against such Individual Defendant(s).

In addition to the above noted reasons that the entire Complaint must be dismissed, the action otherwise must be dismissed against named defendant, Steve Schroeder. Firstly, "it is well settled that ordinarily a person not named in the EEOC charge may not be sued under Title VII." *Feng v. Sandrik*, 636 F. Supp. 77, 80–81 (N.D. Ill. 1986), *citing Eggleston v. Chicago Journeymen Plumbers' Local Union No*. 130, 657 F.2d 890, 905 (7th Cir.1981); *Zewde v. Elgin Community*

---

[1] In the Federal Civil Complaint, Plaintiff has added an age discrimination claim that was not asserted in the EEOC and/or IDHR claim still pending. (*See* Complaint, par. 9 and Ex. 1). thereof) Before bringing an age discrimination claim, a plaintiff must file a charge of discrimination with the EEOC and/or IDHR. *Anderson,* 891 F. Supp. 2d at 960. Having never filed such an EEOC or IDHR claim based on *age* discrimination, Plaintiff may not now assert same in her Complaint nor later do so in a later action without exhausting her administrative remedies. *See Vroman,* No. 15 C 2013 *2 .

*College*, 601 F.Supp. 1237, 1243–44 (N.D.Ill. 1984). Here, Mr. Schroeder was not named in Plaintiff's EEOC and/or IDHR action, and thus, this Court does not have jurisdiction to address such an action against him. *Id.*

Additionally, Plaintiff cannot state a claim for employment discrimination against any of the individually named defendants in this case because none of them were or are alleged to be Plaintiff's "employer" within the meaning of the statute. The individual named Defendant in Plaintiff's complaint was an officer of the company Plaintiff seeks to sue, not her employer. With respect to Title VII actions, the Seventh Circuit has held that Title VII's definition of "employer," is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents. *See e.g., EEOC v. AIC Security Investigations, Ltd*., 55 F.3d 1276, 1281 (7th Cir.1995). Because an *individual* who does not otherwise meet the statutory definition of "employer" cannot be held individually liable under Title VII (*see Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995)), the individual defendant named in Plaintiff's instant Federal Complaint could not be held liable for any Title VII discrimination claims and should thus be dismissed, in addition to the other bases set forth for dismissal herein. *See Poole v. Spagnolo*, No. 98 CV 2785, 2000 WL 1720217, at *6 (N.D. Ill. Nov. 16, 2000).

## CONCLUSION

WHEREAS, Defendants Creative Werks, Inc., and Steve Schroeder respectfully request that this Court dismiss Plaintiff's Mary Madison's Federal Civil Complaint in its entirety and for any all other relief that is just.

**On behalf of Creative Werks, LLC & Steve Schroeder,**


\_\_/s Jon D. Cohen_____
By Jon D. Cohen

Dickinson Wright PLLC
Jon D. Cohen
jcohen@dickinsonwright.com
Joseph R. Delehanty
jdelehanty@dickinsonwright.com
55 W. Monroe St., Suite 1200
Chicago, Illinois 60603
312-572-6905

UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | | |
|---|---|---|---|
| MARY MADISON | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No. 23CV16476 | |
| | ) | | |
| | ) | Hon. Judge Elaine E. Bucklo | |
| CREATIVE WERKS, LLC, and | ) | | |
| STEVE SCHROEDER, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

**<u>MOTION TO DISMISS</u>**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**



SM

| | |
|---|---|
| **Mary Madison** ) | |
| ) | |
| _____ ) | |
| ) | 1:23-cv-16476 |
| Plaintiff(s), ) | Judge Elaine E. Bucklo |
| ) Case Number: | Magistrate Judge Beth W. Jantz |
| v. ) | RANDOM |
| **Creative Werks, LLC** ) | Cat. 2 |
| ) | |
| **Steve Schroeder** ) | |
| ) | |
| Defendant(s). ) | |

FILED

DEC 0 4 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is **Mary Madison** _____ of the

county of **Cook** _____ in the state of **Illinois** _____.

**Creative Werks is a corporation organized in Delaware**
3. The defendant is **and Steve Schroeder** _____, whose

street address is **1460 Brummel** _____,

(city) **Elk Grove Village** (county) **Cook** _____ (state) **Illinois** _____ (ZIP) **60007** _____

(Defendant's telephone number) (**630** ) –**860-2222** _____

4. The plaintiff sought employment or was employed by the defendant at (street address)

**1460 Brummel** _____ (city) **Elk Grove Village** _____

(county) **Cook** _____ (state) **Illinois** _____ (ZIP code) **60007** _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

5.  The plaintiff [*check one box*]

    (a) ☐    was denied employment by the defendant.

    (b) ☐    was hired and is still employed by the defendant.

    (c) ☒    was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about,
    (month) **October**_____, (day)**26**_____, (year)**2022**_____.

7.1  (*Choose paragraph 7.1 or 7.2, do not complete both*.)

    (a)  The defendant is not a federal governmental agency, and the plaintiff
         [*check one box*] ☒*has*  ☐*has not* filed a charge or charges against the defendant

         asserting the acts of discrimination indicated in this complaint with any of the

         following government agencies:

         (i)   ☒ the United States Equal Employment Opportunity Commission, on or about

               (month) **August**_____ (day) **21**_____ (year) **2023**_____.    **See Attached Exhibit 1**

         (ii)  ☒ the Illinois Department of Human Rights, on or about
               **Currently under investigation see attached Exhibit 2**
               (month)_____ (day)_____ (year)_____.

    (b)  If charges *were* filed with an agency indicated above, a copy of the charge is

         attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

    It is the policy of both the Equal Employment Opportunity Commission and the Illinois

    Department of Human Rights to cross-file with the other agency all charges received. The

    plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

    (a)    the plaintiff previously filed a Complaint of Employment Discrimination with the

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☒  the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month)__**September**__ (day)__**5**____ (year)__**2023**____ a copy of which

        *Notice* is attached to this complaint.    **See Attached Exhibit 3**

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

    (a) ☒  Age (Age Discrimination Employment Act).

    (b) ☐  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims

by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42

U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the

Rehabilitation Act, 29 U.S.C. § 791. **42 U.S.C..§ 2000e et Seq., and 42 U.S.C.§1985(3)**

12.    The defendant [*check only those that apply*]
(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights
       protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify):  __**See Attached #12(h)**_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

    **See attached #13**_____

_____

_____

_____

_____

14.    **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a)    ☐ Direct the defendant to hire the plaintiff.

    (b)    ☒ Direct the defendant to re-employ the plaintiff.

    (c)    ☐ Direct the defendant to promote the plaintiff.

    (d)    ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e)    ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f)    ☒ Direct the defendant to (specify): **See Attached # 16(f)**_____

    _____

    _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

**Mary Madison**
(Plaintiff's name)

**9758 S. Charles**
(Plaintiff's street address)

(City)**Chicago**_____(State)_ **IL**_____(ZIP) **60643**____

(Plaintiff's telephone number) (**773** ) – **297-9569**_____

Date: ___**December 4, 2023**_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

12. 12(h) supplemental Attachment

## VIOLATION OF TITLE VII (DISPARATE TREATMENT)

Defendants conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant'(s) discriminatory animus.

As a direct and proximate result of the Defendants unlawful conduct in violation of Title VII, Madison has suffered and continues to suffer monetary and or/economic damages, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

As a direct and proximate result of the Defendants' unlawful conduct in violation of Title VII, Madison has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

As a direct and proximate result of the Defendants' conduct in violation of Title VII, Madison has suffered damage or injury to her reputation which diminishes her future earning capacity and Madison cannot be made whole without compensation for the lost earnings she would have received absent the Defendants' unlawful discrimination.

12. 12(h) supplemental Attachment

Defendants unlawful conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Madison, and was done with conscious disregard of Madison's civil rights, entitling her to an award of punitive damages.

### VIOLATION OF SECTION 1981 (DISPARATE TREATMENT)

Defendants have violated Section 1981 by subjecting Madison to disparate treatment on the basis of her race and sex.

As a direct and proximate result of the Defendants unlawful conduct in violation of Section 1981, Madison has suffered and continues to suffer monetary and or/economic damages, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

As a direct and proximate result of the Defendants' unlawful conduct in violation of Section 1981, Madison has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

As a direct and proximate result of the Defendants' conduct in violation of Section 1981, Madison has suffered damage or injury to her reputation which diminishes her future earning capacity and Madison cannot be made whole without compensation for the lost earnings she would have received absent the Defendants' unlawful discrimination.

Page 2-Madison

12.  12(h) supplemental Attachment

Defendants unlawful conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Madison, and was done with conscious disregard of Madison's civil rights, entitling her to an award of punitive damages.

Page 3-Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

1.    Madison an African American, female, that began working at Creative Werks on September 27, 2022, and at the relevant time was the only African American, female manager at the corporate office.

2.    Madison's responsibilities entailed compliance with the Food Safety Modernization Act "hereinafter referred to as FSMA" and other regulatory schemes such as the Bioterrorism Act of 2002 (Food Defense) in addition to being a liaison between customers and the company regarding compliance quality, regulatory and customer requirements (See Exhibit 4 FDA report pg. 8).

3.    Madison at all relevant times met Defendant's legitimate expectations relative to her role and responsibilities as the Quality Regulatory Manager.

4.    At all relevant times, Madison possessed the skills, education, experience, and qualifications necessary to work in her employment position and adequately and completely performed all of the functions, duties, and responsibilities of her employment with Defendant Creative Werks.

5.    At all times, Steve Schroeder, ("Schroeder"), a White, male, held the position of Founder and President. Mr. Schroeder was in a position of authority to undertake tangible employment decisions and/or control the terms and conditions of Madison's employment with Defendant Creative Werks.

6.    At all relevant times, Schroeder, acting on behalf of himself and his alter ego Creative Werks directed and approved all operational activities, including but not limited to hiring, pay, scheduling, performance management, workflow, and the like.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

7.    At all relevant times, Erich Zicher, ("Zicher"), a White, male, coordinated regulatory, compliance, and quality activities relative to Creative Werks' operations, including but not limited to hiring, scheduling, workflow, investigations, safety, food defense, and safety plans, as well as, internal, external, federal, state and local compliance audits relative to the Food Drug and Cosmetic Act and other relevant statutes and the like.

8.    Madison was hired for her expertise, as the Quality Regulatory Manager. Madison was to manage quality and regulatory issues internally and externally, with customers such as: Nestlé, Mondelez, General Mills, Hersey, Ghirardelli, Mars, Ferrara and Ferrero Candy, Tate's, and other snack food and confections companies, as well as, other companies such as Wilton Brands, Blue Diamond Growers among others; in addition to other relevant third (3rd) party stakeholders.

9.    The FDA inspector initially visited the site on or about September 28, 2022[1], in response to a consumer complaint from October 2021. Present at the visit were Mr. Erich Zicher, who presented himself as the person in charge, Ms. Angela Knabe, Anupam Sharma and Madison. While waiting for the FDA Inspector Mr. Zicher began expressing his wanton disdain for the competency or the lack thereof for the FDA inspector, who turned out to be African American female.

10.    Mr. Zicher's made continued disparaging remarks in a vile, animus, contemptuous and derogatory manner about the FDA Inspector and in particular her competency; remarking that she was incompetent, stupid and even at some point stating that her requisite knowledge was akin to that of an IRS agent. ZICHER further remarked with great hostility and disdain that in the FDA's previous inspection at Brummel, the

---

[1] There had been a previous consumer complaint in May/June 2021, regarding a Cheetos (Pepsi product).

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Elk Grove Facility, the inspector's report made him look stupid and incompetent as if he did not know anything. Mr. Zicher spent a considerable amount of time ad nauseam maligning and denigrating the inspector.

11.     Madison did not ever hear Mr. Zicher speak about anyone else in such a vehemently vile and animus manner as he did regarding the FDA Inspector, even when he talked about Donna Bjurlin from Nestlé Corporate Quality[2], a non-African-American female. He would refer to her requests as being "picky."

12.     The FDA Inspector issued a notice of inspection--FDA form 482 to Defendant Zicher and began conducting the investigation relative to the Pepsi Cheetos complaint filed in October 2021 with the FDA.

13.     Later that evening, Defendant Zicher instructed Madison not to produce or provide any requested documents to the FDA Inspector. Defendant Zicher stated that he was taught not to produce/provide documents to the inspectors and if they had to be produced only produce them electronically.

14.     On or about September 29, 2022, the FDA inspector returned to the facility and had follow up questions for the team, which included responses to the Pepsi Cheetos complaint, and requests for additional documentation. Defendant Zicher was combative and non-compliant redirecting conversations to a consumer complaint that occurred May/June 2021, at that point, the inspector indicated that she wanted to tour the facility.

---

[2] Donna Bjurlin from Nestlé Corporate Quality held a longstanding biweekly meeting to address the outstanding audit deficiencies.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

15. Defendant Zicher stated that if Madison was accompanying them on the facility tour Madison's jewelry needed to be removed. He also indicated to Madison that she had a dress on. [3]

16. Ms. Knabe intervened and stated that Madison was all right to go, indicating that the company policy stated that one's extremities were to be covered. There was no exposed flesh; Madison's arms and legs were fully covered.

17. To minimize the discussion, Madison informed Defendant Zicher that she had pants in the car and that she would change.

18. Madison was unable to remove one of her screwed-in stud earrings. Per the FDA, jewelry is permissible, if secured.

19. Further the rule is geared towards those that come in direct contact with food, food-contact surfaces, and food-packaging materials (See 21 CFR Subpart B § 117.10 (b)(4)). For the purposes of this tour, Madison would not be in violation of the regulations. Moreover, additionally, hair restraints were also used that covered the ears and caught/restrained any particulate from being introduced into the manufacturing facility.

20. Madison did not pose any safety risk, as Madison was not going to be working on a line or coming into direct contact with any product, surface or packaging material. Thus, it would have been highly unlikely or improbable that any contamination would have occurred.

21. Defendant Zicher now asserts that the embellishments from Madison's prescription eyeglasses would pose a risk.

---

[3] It was Plaintiff's first day at work. She was not aware that she would be making tours of the facility. She was fully aware of dress protocol for the purposes of making tours. The aforementioned was an unexpected event.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

22.     Madison contends that any embellishments from Madison's prescription eyeglasses would not have posed a risk for the same reasons.[4]  Additionally, goggles could have been used to restrain any particulate from being introduced into the manufacturing facility.

23.     Defendant Zicher asserts that Plaintiff had on nail polish. That assertion was patently false since Plaintiff Madison does not wear fingernail polish.

24.     Further, Madison contends that her presence during the inspection was not essential, as Madison had just started and had not ever been to the facility before. Madison had no knowledge about the facility and its operation.  Additionally, the person that Madison was replacing, Ms. Knabe did not accompany them either nor was she invited or required to go on the tour.

25.     On Friday, September 30, 2022, as a follow-up and debriefing of the FDA visit, Mr. Zicher solicited input from Madison, Ms. Knabe and others on how to couch the FDA visit to craft his response and inform other clients of the FDA visit.

26.     Also, about midmorning on September 30, 2022, Madison had a brief conversation with Mr. Schroeder at the espresso machine, where in particular Mr. Schroeder asked about the FDA investigation regarding Pepsi. Mr. Schroeder instructed Madison to ask Mr. Zicher to provide her with the questions that Mr. Schroeder had posed to Mr. Zicher regarding the FDA investigation and visit.  Madison also agreed to share her initial analysis of the requests and observations made by the FDA Inspector. Mr. Schroeder stated that he "wanted to change the culture to be more transparent." He also stated "he hoped that Madison could be of help to the company."

---

[4] Further, even knowing that an inspection was going to take place, there is nothing that could have been done to replace Madison's eyeglasses on such short notice.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

27.      On September 30, 2022, as promised Madison shared the initial analysis of the September 28-29, 2022 FDA investigation and visit.

28.      During the relevant time, Madison had no idea that a number of documents requested did not exist. Nor did Madison understand that the documents that did exist did not meet the requirements of FSMA, in particular 21 CFR 117, and the food defense under the Bioterrorism Act of 2002.

29.      In attempting to remediate outstanding customer audit findings from July of 2022, from the Nestlé audit, Madison discovered that the food safety plans were either inadequate or did not exist in contravention of 21 CFR 117 and other food defense requirements under the Bioterrorism Act of 2002. Additionally, it was also discovered that Creative Works had repeated non-conforming audit findings that still had not been mitigated or remediated since the previous audit in 2021.

30.      Madison communicated to Mr. Zicher these deficiencies and the non-compliances that underscored the audit deficiencies. Madison was told by Mr. Zicher on several occasions that Donna Bjurlin, from Nestlé, was being picky and that he was not inclined to make any changes.

31.      Madison was also instructed by Mr. Zicher not to reference the regulations and standards when corresponding with Donna on behalf of Nestlé.

32.      On October 3, 2022, Madison met Mr. Zicher at yet another Creative Werks facility in Bensenville to meet with a potential new customer Medfast.

33.      While waiting for the potential clients, Mr. Zicher and Madison discussed the FDA audit/inspection. The discussion entailed the consumer complaint. It also entailed how Creative Werks seemed to be aware of the non-conforming/adulterated product that

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

had entered into the stream of commerce and that Creative Werks had not taken any remediation steps to prevent this from occurring. Madison shared with him that a good starting point was to understand what standards needed to comply with based upon the business operations.

34.     Madison also shared with Mr. Zicher that Mr. Schroeder wanted him to share with her the questions that Mr. Schroeder had sent to him regarding the FDA visit on September 28-29, 2022.

35.     Mr. Zicher indicated that Madison did not understand the culture there and that he would not be providing her with the information Mr. Schroeder asked to be shared with Madison. Zicher further stated that he and Ron Sammeth decided what Mr. Schroeder should know.

36.     Among Madison's other responsibilities of attending meetings with customers and potential customers and conducting audits, she continued to conduct root cause analysis and other risk analysis relative to these and other outstanding customer and regulatory compliance issues that had not been remedied and due and owing since 2021.

37. Over the next few weeks, Madison sought information necessary to remediate outstanding issues but was instructed by Mr. Zicher to either provide false and/or misleading information to customers, or instructed to not comply, or provided with inadequate information to perform the job properly.

For example:

    I.     Nestlé

    II.    Wilton Brand

    III.   Blue Diamond Growers

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

38.    On October 4, 2022, Madison was told by Mr. Zicher not to worry about the deficiencies because in his experience "no one reads the documents" and to "use whatever documents that were there."

39.    Mr. Zicher instructed Madison to provide false, inaccurate and misleading information to clients after Madison specifically pointed out deficiencies in the documentation.

40.    On October 6, 2022, the auditor, from Blue Diamond Growers, herein after "BDG," Keira Kaur Dhillon came to perform the audit. The introductions began; Ms. Dhillon went first indicating that one of her previous employers was Kraft Foods. Madison went next and Mr. Zicher went last. Mr. Zicher led by stating to Ms. Dhillon that they had something in common because they both had worked at Kraft. She in turn asked him who was the CEO when he worked there? Mr. Zicher did not and could not answer her question--The room was filled with silence.

41.    To deflect the awkward situation, Mr. Zicher made a mockery of Madison to Ms. Dhillon relative to all the tabs open on Madison's computer regarding the documents requested by BGD for review during the audit.

42.    Madison responded to the effect that since they were kind enough to send over a comprehensive list of what they wanted to review during the audit and in the interest of everyone's time, it seemed prudent to be prepared and not to have to search for documents.

43.    The auditor remarked that the audit exhibited readiness because of the readily available documents.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

44. Unfortunately, there was an issue identified by the auditor in one of the documents Ms. Dhillon reviewed that could have been identified and remediated. This was not the case because Madison had been instructed to ignore the deficiencies identified.

45. In an effort to follow up on the outstanding audit non-compliances relative to Nestlé that had been due and owing since July of 2022, Madison again broached the outstanding issues from the audit along with conversations[5] that Madison had with Donna Bjurlin from Nestlé Corporate Quality with Mr. Zicher. Mr. Zicher stated again that "her expectations were not realistic and that she was being picky."

46. On numerous occasions with numerous clients, Defendant Zicher would instruct Plaintiff to disregard certain deficiencies. Additionally, Madison had been instructed to release material that was being held for non-conformance on several other occasions.

47. Madison had raised issues and complained about violating SQF-company, customer and public policy.

48. Madison had also been in a meeting where Mr. Zicher tried to gaslight and humiliate her about not providing metrics that he was aware of that had not been supplied to Madison because they did not exist.

49. Defendant Creative Works also lacked change control management, an essential function ensuring that various requirements are being met to remain compliant with FSMA and other relevant statutes. Further, change management is directly correlated to preventive controls such as validation, verification and reanalysis relative to 21 CFR 117 §§ 160, 165 & 170. This deficiency was also noted in the July 2022 Nestlé audit CAR # 23.

---

[5] A longstanding biweekly meeting was held by Nestlé to address the outstanding audit deficiencies.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

50.     Prerequisite and requisite programs are required to manage such microbial hazards or any other hazards. These programs were not in place to reduce or mitigate the spread of these causative agents of food-borne diseases.

51.     Defendant Creative Werks, during the relevant time did not have any Standard Operating Procedures relative to microbial hazard management or any other biological, chemical, physical or radiological hazard.

52.     Defendant Creative Werks handles Ready To Eat foods, ("hereinafter RTE") that lack any further processing or kill step to eliminate or reduce hazards. Therefore, it is incumbent that a science risk-based analysis be implemented to manage identifiable and foreseeable risks to prevent food from being adulterated and introduced into the stream of commerce for human consumption (21 CFR 117).

53.     It can easily be inferred that the consumer complaint filed in October of 2022 was a direct result of the lack of proper food safety and hazard analysis (risk management) at Creative Werks. The complaint was tied to cereal; a RTE.

54.     More specifically, it can be reasonably inferred that the root cause of the reported October 2022 illness was due to Creative Werks' reckless and willful failure to adhere to the mandate of food safety laws and regulations relative to ensuring that food is not adulterated when it enters into the stream of commerce (21 CFR 342).

55.     The company and its alter ego, the owner, Mr. Schroeder, touted a mantra of a "see something say something[6]" policy that they continuously reiterated in meetings and by post.

56.     Creative Werks and its alter ego, the owner, also purported to have an open-door policy.

---

[6]  The FDA inspector makes note of this policy and references it in her report See Exhibit 4

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

57.     Mr. Schroeder, the owner, on an ongoing and regular basis, spoke with his employees daily about a myriad of things. He himself espoused transparency among other things and had personally on several occasions stated that he hoped that Madison was helping the company along.

58.     Madison drafted a very high-level risk analysis on October 20, 2022, in an effort to steward the compliance gaps to closure.

59.     On October 21, 2022, prior to speaking with Mr. Schroeder, Madison asked to speak with Ms. Gretchen Le May, VP of People. Ms. LeMay indicated that she was not available until Monday and it was agreed that they would speak on that day.

60.     On Friday afternoon, October 21, 2022, after the company's town hall meeting and luncheon, Madison spoke with Mr. Schroeder, the owner of the company regarding outstanding compliance issues and presented him with the risk analysis dated October 20, 2022.

61.     Madison raised issues with Mr. Steve Schroeder regarding a known set of issues and facts regarding the September 28-29, 2022, FDA investigation of a consumer complaint of a Pepsi-Cheetos product, along with other known gaps and deficiencies of compliance, such as food safety plans.

62.     During the conversation, Mr. Schroeder told Madison that Mr. Zicher told him that he worked at Kraft and he did not understand. As if to say, that Mr. Zicher working at Kraft made him more knowledgeable or the outstanding issues were obviated because Mr. Zicher had worked at Kraft.

63.     Contrarily, by Mr. Zicher's own admission his LinkedIn page does not support that he ever worked at Kraft. (See Attached Exhibit 5). Further, FSMA requires that

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

qualified individuals have the requisite training, experience and education[7] qualifications as defined in (21 CFR 117.3) to function in any capacity of Food Safety (21 CFR 117.4(c)).

64.      Mr. Schroeder also told Madison that if her solution was to hire more people like Mr. Zicher had suggested he did not agree. Madison acknowledged that hiring more people would not fix the issues, but complying with the rules, regulations and statutes would.

65.      Mr. Schroeder also indicated that {Creative Werks} was not as bad as Peanut Corporation of America.

66.      Mr. Schroeder also told Madison that since she had not been there that long she should have been trying to make nice with her boss, instead of speaking with him.

67.      Mr. Schroeder's conduct of telling Madison that she should have been trying to "make nice with her boss" in relation to outstanding business compliance issues is telling of the culture of Creative Werks and Mr. Schroeder.

68.      Madison interpreted Mr. Schroeder's statement to mean that she should have just went along to get along no matter what. Specifically, Madison interpreted Mr. Schroeder's statement to mean that Madison should succumbed to whatever Mr. Zicher said or did because he was a man, a white man, who had allegedly worked at Kraft.

69.      Plaintiff contends that telling someone to "make nice" is condescending, belittling, subservient and degrading. It is the equivalent of telling someone that they should know their place.

---

[7] Mr. Zicher held himself out to be a professionally trained musician and golf pro. Mr. Zicher never represented himself as a scientist or having had any related training in the discipline of science.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

70.        Mr. Schroeder is a well-educated man, holding a MBA from Johns Hopkins. He is the founder of multiple million-dollar businesses. It is unreasonable to assert that Mr. Schroeder does not know or understand proper etiquette or the connotations associated with making such a statement or the social pressures that exist that underscores Madison's takeaways from his demeaning, condescending, belittling, subservient and degrading statement to Madison. That she should have been "making nice with her boss" instead of dealing with the issues that she was hired to do.

71.        Further, Mr. Schroeder knew and understood that Madison was a subject matter expert and that they both had attended Johns Hopkins for graduate school.

72.        Immediately after meeting with Mr. Schroeder, Madison began to be ostracized from meetings and ignored. For example, there was a meeting with Ghirardelli, a client that Madison liaised with; she was excluded from the meeting, after receiving an email about the meeting and despite all other relevant parties being involved in the meeting, including Mr. Zicher. There was also a regulatory issue that arose relative to a salmonella outbreak at the Elk Grove facility. Madison was also excluded from this investigation. Additionally, Ms. Lemay did not meet with her as planned either.

73.        This harassment and ostracizing created a hostile work environment and issues of Madison's competency internally and externally among stakeholders involved in Creative Werks' business operations. This was true especially, in view that Madison liaised with Creative Werks' customers regarding their quality and regulatory compliance.

74.        Madison was retaliated and discriminated against after raising issues relative to the same contextual conversations relative to compliance gaps that Zicher had previously raised with Schroeder and others regarding the FDA investigation of a consumer

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

complaint along with gaps and deficiencies in compliance documents such as food safety plans.

75.         On October 26, 2022, as Madison was leaving to go home, Madison was stopped by Wendy Proulx of HR, who asked Madison to step into the conference room. Ms. LeMay was there in the conference room and it was at that time that Madison was told that she was being suspended with pay for the conversation that was had with Mr. Schroeder. It was also memorialized in the suspension letter that an outside attorney would be conducting an investigation into the matters and allegations raised to Mr. Schroeder (See Attached Exhibit 6).

76.         When Madison pressed Ms. LeMay on what grounds that Madison was being suspended, she stated that Madison's allegations were unfounded. Madison offered supporting evidence of her position. Madison was instructed by Ms. LeMay to save it for the attorney.

77.         At no time after the conversation with Mr. Schroeder did he or anyone else follow up with Madison regarding the report. Nor was Madison involved in any type of investigation prior to being informed of Madison's suspension.

78.         Madison believes that her suspension on October 26, 2022, was for impermissible reasons that included retaliation and discrimination for Madison's having presented the risk analysis to Mr. Schroeder. Madison also contends that she once again engaged in protected activity when Madison provided the risk analysis that detailed violations of the Food Safety Modernization and Bioterrorism Acts.

79.         In further retaliation, Madison was not paid her signing bonus on October 27, 2022 as referenced in Madison's offer letter (See Attached Exhibit 7). Not only did

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Creative Werks retaliate against Madison, it also breached its contractual agreement with Madison. Creative Werks' actions of ostracizing Madison and suspending her not only had an immediate adverse effect upon her, but it also now created a situation that interfered with her ability to be employed within this niche field.

80. After Madison insisted on counsel, she was allowed to have legal counsel. Madison was again aggrieved, as she was only given a day or so to secure legal counsel, when in fact it had taken Creative Werks more than a week to secure the counsel, a firm that had been used on several occasions by Mr. Schroeder and his alter ego, Creative Werks LLC.

81. After Madison requested to have an attorney present at the meeting with Creative Werks outside legal counsel, Madison was further retaliated against when Madison's suspension transitioned from with pay to without pay.

82. Madison was told by Ms. LeMay that Madison did not need an attorney because this was an in-house matter and the counsel would be acting in the capacity of an independent fact finder.

83. Further, Madison also contends that being forced to meet with Ford-Harrison was a term and condition of Madison's employment. Madison also contends that it was an intimidation tactic that was harassive in nature.

84. Madison communicated to Creative Werks the adverse employment actions, which were taken against her, including but not limited to being retaliated against for identifying and raising non-compliance issues to Mr. Schroeder related to violations of FSMA. And that she had been treated differently than others who had raised the same and

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

or similar issues of compliance deficiencies. Madison further addressed the issue of not being afforded an opportunity to be a part of any investigation.

85.     Madison was meeting Respondent's expectations as there is no other evidence to suggest otherwise. Nor had Madison been told otherwise, except for the suspension letter that specifically stated that Madison was being suspended for the conversation that Madison had with Mr. Schroeder regarding the outstanding compliance issues.

86.     Defendant has engaged in a pretext to cover up its retaliatory and discriminating conduct, as well as its adverse employment actions taken against Madison. Further, Defendant did not subject Mr. Zicher to any adverse employment actions when he had conversations with them about compliance gaps or deficiencies.

87.     Madison was treated differently than Mr. Zicher, by Creative Werks and Mr. Schroeder, after engaging in the same contextual conversations relative to compliance gaps. The evidence of the compliance gaps are highlighted by Defendant's need to hire Madison as a Quality Regulatory Manager, as well as, interviewing for a Regulatory Specialist.

88.     Mr. Zicher further supports this contention in his July 2023 declaration in support of Creative Werks position statement to the Department of Labour stating that it hired Madison to write Food Safety Plans, which are compliance documents.

89.     Following interviews and upon completion of the investigation conducted by Ford Harrison, outside counsel retained by Creative Werks, in January of 2023, contacted Madison's legal counsel to discuss settlement. The settlement would be in exchange for Madison waving any claims against Creative Werks--A Quid Pro Quo.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

90.     Further, it is reasonable to contemplate that Creative Werks surmised that Madison would be in a state of vulnerability, since they had retaliated against her by suspending her without pay, and that Madison would be inclined to engage in this Quid Pro Quo because of the adverse employment actions that Creative Werks had taken.

91.     Madison again requested her personnel file again pursuant to the Illinois Personnel Review Act to review the findings of the investigation that allegedly supported their contentions that Madison's assertions were unfounded.

92.     Ford-Harrison, on behalf of Creative Werks declined to provide Madison's personnel file in contravention to the Illinois Personnel Review Act or the results of the investigation. (See Attached Exhibit 8). Ford-Harrison also indicated that there had not been anything added to Madison's personnel file since her request in 2022.

93. Ford-Harrison stated that Creative Werks was claiming privilege to the investigation and its findings and would not be sharing any information based on client-attorney relationship.

94. This explanation for denying Madison access to their findings that should have been contained in Madison's personnel file belies the assertion that the outside counsel from Ford Harrison was acting as an independent fact finder.

95.     In response, through counsel, in January of 2023, Creative Werks was provided with various theories of causes of actions, including but not limited to retaliation, race and sex discrimination amongst other things. It was also contended that Creative Werks conspired to violate Madison's protected rights.

96.     Creative Werks acknowledged that Creative Werks was aware of these theories of causes of actions relative to the series of events that had occurred between Madison and

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Creative Werks. Madison was admonished by Defendant's then legal counsel to make a counteroffer, as they would not increase their offer until such time. Madison made a counteroffer and their communications ceased.

97.    Further, to date Creative Werks has not and cannot point to any non-retaliatory or non-discriminatory reason for suspending Madison. Nor can Creative Werks point to any company or public policy that Madison violated relative to Madison's employment to warrant Madison's suspension and de facto discharge/termination.

98.    In furtherance of the scheme to conspire to engage in pretext and in continued violation of Madison's protected rights, Creative Werks and its alter ego, Mr. Schroeder, hired an expert witness.

99.    Creative Werks' expert witness further gas lighted Madison, impugning and undermining her professional reputation, characterizing her as an extremist and an alarmist. Conversely, Mr. Zicher, white male, had also raised the same contextual conversations relative to compliance gaps with Mr. Schroeder and others was not subject to such characterization nor had he been subject to any adverse employment or disciplinary actions.

100.    Creative Werks' expert witness claimed to be a Food Scientist, but in reality by her own admission on her LinkedIn page is only a microbiologist[8]. (see Attached Exhibit 9)

---

[8] According to the Bureau of Labor and Statistics: Food scientists and technologists use chemistry, biology, and other sciences to study the basic elements of food. They analyze the nutritional content of food, discover new food sources, and research ways to make processed foods safe and healthy. Food technologists generally work in product development, applying findings from food science research to develop new or better ways of selecting, preserving, processing, packaging, and distributing food. Some food scientists use problem-solving techniques from nanotechnology—the science of manipulating matter on an atomic scale—to develop sensors that can detect contaminants in food. Other food scientists enforce government regulations, inspecting food-processing areas to ensure that they are sanitary and meet waste management standards.

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

101. Further, Defendant's expert witness provided an opinion that Defendant was compliant with the Food Safety and Modernization Act. This opinion is in direct contradiction to Mr. Zicher's contention, in his July 2023 declaration, in support of Creative Werks position statement to the Department of Labour stating that it hired Madison to write Food Safety Plans, which are compliance documents.

102. Mr. Zicher's declaration stating that Madison was hired to write food safety plans; is an admission that Defendant was not in compliance.

103. These two (2) competing interests are a dichotomy that squarely supports Defendants engaging in pretext and other unlawful acts.

104. The Defendant's actions were premeditated, calculated, intentional, willful, malicious, and in reckless disregard of Madison's rights to not be further harassed, gas-lighted, or humiliated in furtherance of Defendants' contrived schemes of conspiracy, in using its Legal Counsel as an alleged fact finder and hiring an expert witness, to discriminate against Madison and to continue to violate her federally protected rights. The Defendants' actions are extreme and shocking.

105. What is even more alarming and shocking is that Defendants were knowingly willfully and recklessly operating a business in contravention of the Food Safety Modernization Act and the Bioterrorism Act of 2002. As evidence of this, adulterated food products entered into the stream of commerce resulting in consumer complaints (See

Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, Agricultural and Food Scientists, at Agricultural and Food Scientists : Occupational Outlook Handbook (visited August 3, 2023).

The Bureau of Labor and Statistics defines a Microbiologist as a person who "studies microorganisms such as bacteria, viruses, algae, fungi, and some types of parasites. They try to understand how these organisms live, grow, and interact with their environments."
Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, Microbiologists, at https://www.bls.gov/ooh/life-physical-and-social-science/microbiologists.htm (visited July 26, 2023).

Madison

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Attached Exhibit 10); in addition, to the other outstanding compliance issues, identified by the FDA and other third (3rd) party audits.

106.     Instead of Defendant remediating the non-compliance(s) and public safety issues, risks and hazards, Defendant, as a subterfuge, has focused a considerable amount of time and resources affixed on conspiring, harassing and discriminating against Madison.

107.     Defendants intentionally, willfully and recklessly engaged in unlawful conduct and contravened public policy, by introducing adulterated food products for human consumption into the stream of commerce that created public safety risks and hazards that were harmful to consumers. (See Attached Exhibit 10)

108.     The Defendant's actions were also intentional, willful, and in reckless disregard of public policy and public safety. Public policy mandates adulterated products introduced into the stream of commerce are in contravention of the Food Safety and Modernization Act and the Bioterrorism Act of 2002.

109.     Defendant did not investigate or remedy Madison's complaints but treated her differently from Mr. Zicher by retaliating against her by suspending her, withholding her sign-on bonus and other benefits, and subjecting her to further harassment and other adverse employment actions including a de facto termination.

110.     As a direct result of the Defendants' unlawful actions, Madison suffered emotional distress, humiliation, loss of income and benefits, and damage to her reputation and career.

Madison

16(f) additional relief sought from Court

WHEREFORE, Plaintiff, Mary Madison prays that the Court enter judgment in her favor and against the Defendants, containing the following relief:

1. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

2. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

3. An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative actions as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

4. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, loss of past and future income, wages, compensation, job security and other benefits of employment;

5. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary/or compensatory damages, including but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

Page 1-Madison

16(f) additional relief sought from Court

6.  An award to be determined at trial for any and all other monetary and/or non-monetary losses suffered Plaintiff in an amount to be determined at trial, plus prejudgment interest;

7.  An award of costs that the Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

8.  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

**Exhibit 1**

EOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

## EEOC REC'D 21 AUG 2023

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:
- [ ] FEPA
- [X] EEOC

Agency(ies) Charge No(s):
7024CR0389
440-2023-09356
# 240925.038

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Mary Madison | 7732979569 | 09/26/1968 |

Street Address: 9758 S. Charles

City, State and ZIP Code: Chicago, IL 60643

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Creative Werks, LLC | 500+ | 6308602222 |

Street Address: 1460 Brummel

City, State and ZIP Code: ElkGrove Village, IL 60007

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|

Street Address:

City, State and ZIP Code:

DISCRIMINATION BASED ON (Check appropriate box(es).)

- [X] RACE
- [ ] COLOR
- [X] SEX
- [ ] RELIGION
- [ ] NATIONAL ORIGIN
- [X] RETALIATION
- [ ] AGE
- [ ] DISABILITY
- [ ] GENETIC INFORMATION
- [X] OTHER (Specify) harassment

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 10/26/2022
Latest: 11/08/2022

- [ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was suspended on October 26, 2022 in retaliation for raising violations of the FFDCA as amended by FSMA to the owner of the company on Friday October 21, 2022. My employer provided a letter stating the same.
I was never a part of any investigation.
I was subject to further retaliation and harassment when I was not paid my bonus that was due and owing to me on October 27, 2022.

I was further retaliated against and harassed when my paid suspension was converted to a suspension without pay on November 8, 2022 after telling my employer that they retaliated against me and for asking for legal counsel to attend the mandatory meeting with their outside legal counsel.
I was told by my employer that they were an independent fact finder.
Further, my employer conspired with outside counsel to further violate my protected rights to create a pretext.
I was further harassed when I had to go to their outside legal counsel under the premise of them being an independent fact finder. On December 20, 2022, I spent over 6 hours speaking with their counsel, with over 5+ hours speaking about other issues not related to the issues that I was supposed to be speaking with them about.
On January 18, 2023, the law firm indicated that my assertions were unfounded and that I could not come back to work because _____ could not work with me.
On January 20, 2023, the law firm claimed privilege when I asked for the investigation findings. _____
The firm and my employer refused to share the investigation findings and my personnel file.
On January 23, 2023, I informed my employer that I had been treated differently than others who had violated company and public policy; including _____ a white male.
I am technically still on suspension.

OFFICIAL SEAL
EDWIN WALKER
Notary Public - State of Illinois
My Commission Expires 08/22/2026

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 08/17/2023
Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
8/18/23

DEPT. OF HUMAN RIGHTS
INTAKE DIVISION
09/25/2023
**RECEIVED**
BY: _____



Chicago District Office
230 S. Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

**Exhibit 2**

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 9/5/2023

**To:** Ms. Mary D. Madison
9758 S Charles St
CHICAGO, IL 60643

Charge No: 440-2023-09356

EEOC Representative and email:   NIA MOORE
Investigator
nia.moore@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2023-09356.

On behalf of the Commission,

Digitally Signed By:Diane I. Smason
9/5/2023

Diane I. Smason
Acting District Director

**Cc:** Creative Werks

Please retain this notice for your records.

<<Bates Number MMAD#6#1>>

JB Pritzker, Governor
James L. Bennett, Director

**Exhibit 3**

November 2, 2023

MARY MADISON
9758 S CHARLES
CHICAGO, IL 60643

RE:     Charge No.: 2024CR0389
        Respondent: CREATIVE WERKS, LLC.
Complaint or Civil Action Filing Dates:  **9/5/2024 through 12/3/2024**

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act. IDHR has received a copy of EEOC's determination and your request for the Department to investigate. A copy of the charge has been served on the Respondent. Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge. If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition. If we do not have copies of these documents in your file, we have included copies with this notice.

1)      Verification of Disability.
Please give the Verification of Disability form to your physician for completion. Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)      Consent form.
The consent form allows IDHR to review your physician's documentation. Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge. It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge. IDHR's investigation time may be extended if you and Respondent agree in writing.

555 West Monroe Street, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
524 S. 2nd Street, Suite 300, Springfield, IL 62701, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

<<Bates Number MMAD#6#1>>

circuit court within 90 days after the date of this Notice of Dismissal to begin to count from the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days [or the extended time] plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC: 500 West Madison Street, Suite 2000, Chicago, IL 60661. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

SB1122 IN-6 Non-Med
CR/SR
4/17

<<Bates Number MMAD#6#1>>