**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY MADISON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-16476 |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| CREATIVE WERKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Creative Werks LLC ("Defendant" or "CW"), by its counsel Dickinson Wright PLLC, answers and presents its affirmative defenses to the Complaint filed by Plaintiff, Mary Madison ("Madison"), and presents, as follows:

1. This is an action for employment discrimination.

**Answer:**      Admitted.

2. The plaintiff is Mary Madison of the county of Cook in the state of Illinois.

**Answer:**      Admitted.

3. The defendant is Creative Werks is a corporation organized in Delaware, whose street address is 1460 Brummel, Elk Grove Village, Cook County, Illinois 60007. Defendant's telephone number: (630) 860-2222.

**Answer:**      Admitted.

4. The plaintiff sought employment or was employed by the defendant at 1460 Brummel, Elk Grove Village, Cook County, Illinois 60007.

**Answer:**      Admitted.

5. The plaintiff was employed but is no longer employed by the defendant.

1

**Answer:**      Admitted.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about, October 26, 2022.

**Answer:**      Denied as to allegation in paragraph 6.

7.  (a) The defendant is not a federal governmental agency, and the plaintiff has filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

> i.      The United States Equal Employment Opportunity Commission, on or about August 21, 2023.

> ii.     The Illinois Department of Human Rights, on or about_____.
> *Currently under investigation see attached Exhibit 2.*

**Answer:**      Admitted that Defendant is not a federal governmental agency and that Plaintiff filed charges against Defendant with the Equal Employment Opportunity Commission, which issued a Right to Sue letter attached as Exhibit 3 to the Complaint.

8.  The defendant discriminated against the plaintiff because of the plaintiffs:

> (a)      Age (Age Discrimination Employment Act).

> (b)      Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981).

> (c)      Sex (Title VII of the Civil Rights Act of 1964).

**Answer:**      Denied with respect to the entirety of paragraph 8 and its subparts.

9.  If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin ( 42 U.S.C. § 1983).

**Answer:**      n/a

10. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C.§2000e-5(t)(3); for 42 U.S.C.§1981

and § 1983 by 42 U.S.C. § 1988, for the W. Dist. O. NY 24, U.S.C. § 07; for the Rehabilitation
Act, 29 U.S.C. § 791. 42 U.S.C. § 2000e et Seq., and 42 U.S.C. §1985(3).

**Answer**    Defendant objects to the allegations in paragraph 10 as constituting mere conclusions pursuant to which no answer is required.  If and to the extent an answer is required, denied.

11. The defendant [check only those that apply]

> (b)    terminated the plaintiffs employment.

> (f)    failed to stop harassment;

> (g)    retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

> (h)    other (specify): *See Attached #12(h)*

**Answer:**    Denied with respect to the entirety of paragraph 11 and its subparts.

## 12(h) STATEMENT[1]

12(h)(1).  Defendants conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII The stated reasons for the Defendant's conduct were not the true reasons.but instead were pretext to hide the Defendant'(s) discriminatory animus.

**Answer**:    Denied.

12(h)(2).  As a direct and proximate result of the Defendants unlawful conduct in violation of Title VII, Madison has suffered and continues to suffer monetary and or/economic damages, including  but not limited to, loss of past and future income, compensation and benefits for which she is entitledto an award of monetary damages and other relief.

**Answer**:    Denied.

---

[1] The paragraphs of Plaintiff's 12(h) Statement attached to her Complaint were un-numbered.  The designation of 12(h)(1) – 12(h)(4) were made herein for purposes of answering each paragraph separately.

12(h)(3).  As a direct and proximate result of the Defendants' unlawful conduct in violation of Title VII, Madison has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**Answer**:        Denied.

12(h)(4).   As a direct and proximate result of the Defendants' conduct in violation of Title VII, Madison has suffered damage or injury to her reputation which diminishes her future earning capacity and Madison cannot be made whole without compensation for the lost earnings she would have received absent the Defendants' unlawful discrimination.

**Answer**:        Denied.

12(h)(5).   Defendants unlawful conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Madison, and was done with conscious disregard of Madison's civil rights, entitling her to an award of punitive damages.

**Answer**:        Denied.

12(h)(6).   Defendants have violated Section 1981 by subjecting Madison to disparate treatment on the basis of her race and sex.

**Answer**: Denied.

12(h)(7).   As a direct and proximate  result of the Defendants  unlawful conduct in violation of Section 1981, Madison has suffered and continues to suffer monetary and or/economic  damages,  including  but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

**Answer**:        Denied.

4

Party(s). As a direct and proximate result of the Defendant's unlawful conduct in violation of Section 1981, Madison has suffered and continues to suffer severe mental anguish and emotional distress. including but not limited to, depression, humiliation, embarrassment, s1ress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**Answer**:       Denied

_____

13.      Facts Supporting Plaintiff's claim of discrimination are as follows:[2]

1.  Madison is an African American, female, that began working at Creative Werks on September 27, 2022, and at the relevant time was the only African American, female manager at the corporate office.

**Answer**: Defendant admits the allegations of Paragraph 1 of the Complaint.

2.  Madison's responsibilities entailed compliance with the Food Safety Modernization Act "hereinafter referred to as FSMA" and other regulatory schemes such as the Bioterrorism Act of 2002 (Food Defense) in addition to being a liaison between customers and the company regarding compliance quality, regulatory and customer requirements (See Exhibit 4 FDA report pg. 8).

**Answer**: Defendant admits that Plaintiff was hired as a Quality Regulatory Manager, whose duties related to regulatory compliance, including the FSMA and the Bioterrorism Act of 2002, among others, in addition to communicating with customers regarding various food safety matters. Defendant denies all remaining allegations of Paragraph 2 of the Complaint.

3.  Madison at all relevant times met Defendant's legitimate expectations relative to her role and responsibilities as the Quality Regulatory Manager.

_____

[2] In drafting her Complaint, Plaintiff attached a document restarting with paragraph numbers 1 through 110, which Defendant answers using the same paragraph numbers, although as a result there are two sets of paragraphs numbered 1 – 13.

**Answer**: Defendant denies the allegations of Paragraph 3 of the Complaint.

4.  At all relevant times, Madison possessed the skills, education, experience, and qualifications necessary to work in her employment position and adequately and completely performed all of the functions, duties, and responsibilities of her employment with Defendant Creative Werks.

**Answer**: Defendant denies the allegations of Paragraph 4 of the Complaint.

5.  At all times, Steve Schroeder, ("Schroeder"), a white male, held the position of Founder and President. Mr. Schroeder was in a position of authority to undertake tangible employment decisions and/or control the terms and conditions of Madison's employment with Defendant Creative Werks.

**Answer**: Defendant admits the allegations of Paragraph 5 of the Complaint.

6.  At all relevant times, Schroeder, acting on behalf of himself and his alter ego Creative Werks directed and approved all operational activities, including but not limited to hiring, pay, scheduling, performance management, workflow, and the like.

**Answer**: Defendant objects to this paragraph as vague and overly broad.  Defendant admits that Mr. Schroeder was the President of Creative Werks at all relevant times. Defendant specifically denies that Creative Werks is/was an alter ego of Mr. Schroeder. Defendant denies all remaining allegations of Paragraph 6 of the Complaint.

7.  At all relevant times, Erich Zicher, ("Zicher"), a white male, coordinated regulatory, compliance, and quality activities relative to Creative Werks' operations, including but not limited to hiring, scheduling, workflow, investigations, safety, food defense, and safety plans, as well as, internal, external, federal, state and local compliance audits relative to the Food Drug and Cosmetic Act and other relevant statutes and the like.

**Answer**: Defendant admits that Erich Zicher was part of its operation relating to regulatory compliance and quality activities, including but not limited to hiring, scheduling, workflow, investigations, safety, food defense, and safety plans, as well as, internal, external, federal, state

6

and local compliance audits relative to the Food Drug and Cosmetic Act and other relevant statutes and the like. Defendant further admits that Erich Zicher is a white male. Defendant denies all remaining allegations of Paragraph 7 of the Complaint.

8. Madison was hired for her expertise, as the Quality Regulatory Manager. Madison was hired to manage quality and regulatory issues internally and externally, with customers such as: Nestle, Mondelez, General Mills, Hersey, Ghirardelli, Mars, Ferrara and Ferrero Candy, Tate's, and other snack food and confections companies, as well as, other companies such as Wilton Brands, Blue Diamond Growers among others; in addition to other relevant third (3rd) party stakeholders.

**Answer**: Defendant admits that it hired Plaintiff as a Quality Regulatory Manager, that she was hired to manage quality and regulatory issues, and that clients of Defendant include Nestle, Mondelez, General Mills, Hersey, Ghirardelli, Mars, Ferrara and Ferrero Candy, Tate's, and other snack food and confections companies, as well as other companies such as Wilton Brands, Blue Diamond Growers among others. Defendant objects to the remaining allegations as vague and undefined and therefore, denies same.

9. The FDA inspector initially visited the site on or about September 28, 2022[3], in response to a consumer complaint from October 2021. Present at the visit were Mr. Erich Zicher, who presented himself as the person in charge, Ms. Angela Knabe, Anupam Sharma and Madison. While waiting for the FDA Inspector Mr. Zicher began expressing his wanton disdain for the competency or the lack thereof for the FDA inspector, who turned out to be African American female.

**Answer**: Defendant admits that an FDA inspector visited Defendant's facility on or about September 28, 2022, that Mr. Zicher, Ms. Knabe, Anupan, and Ms. Madison were initially present

---

Footnote 1 of Complaint: There had been a previous consumer complaint in May/June 2021, regarding a Cheetos (Pepsi product). **Answer**: Admitted that there was a consumer complaint regarding a Cheetos/Pepsi product.

complaint. Defendant admits that the FDA inspector was an African American female. Defendant

denies the remaining allegations of Paragraph 9 of the Complaint.

10. Mr. Zicher made continued disparaging remarks in a vile, animus, contemptuous and derogatory manner about the FDA Inspector and in particular her competency; remarking that she was incompetent, stupid and even at some point stating that her requisite knowledge was akin to that of an IRS agent. Mr. Zicher further remarked with great hostility and disdain that in the FDA's previous inspection at Brummel, the Elk Grove Facility, the inspector's report made him look stupid and incompetent as if he did not known anything. Mr. Zicher spent a considerable amount of time ad nauseam maligning and denigrating the inspector.

**Answer**: Defendant denies the allegations of Paragraph 10 of the Complaint.

11. Madison did not ever hear Mr. Zicher speak about anyone else in such a vehemently vile and animus manner as he did regarding the FDA Inspector, even when he talked about Donna Bjurlin from Nestle Corporate Quality[4], a non-African-American female. He would refer to her requests as being "picky."

**Answer**: Defendant admits that Mr. Zicher did not speak to anyone in a vile or animus manner. Defendant denies all remaining allegations of Paragraph 11 of the Complaint.

12. The FDA Inspector issued a notice of inspection - FDA form 482 to Defendant Zicher and began conducting the investigation relative to the Pepsi Cheetos complaint filed in October 2021 with the FDA.

**Answer**: Defendant admits having received a notice of inspection - Form 482 from the FDA and the FDA investigator that day. Defendant denies that that there was ever an FDA inspection arising from any Pepsi Cheetos complaint. Defendant denies having ever received any written notice

---

Footnote 2 of the Complaint: Donna Bjurlin from Nestle Corporate Quality held a longstanding biweekly meeting to address the outstanding audit deficiencies. **Answer**: Admitted that bi-weekly meetings where held with Nestle to maintain best practices. All remaining allegations are denied.

concerning any Pepsi Cheetos complaint from the FDA reflecting same. Defendant denies all remaining allegations of paragraph 12 of the Complaint.

13. Later that evening, Defendant Zicher instructed Madison not to produce or provide any requested documents to the FDA Inspector. Defendant Zicher stated that he was taught not to produce/provide documents to the inspectors and if they had to be produced only produce them electronically.

**Answer**: Plaintiff has not named Mr. Zicher as a defendant in this matter. Defendant denies the allegations of Paragraph 13 of the Complaint.

14. On or about September 29, 2022, the FDA inspector returned to the facility and had follow up questions for the team, which included responses to the Pepsi Cheetos complaint, and requests for additional documentation. Defendant Zicher was combative and non-compliant redirecting conversations to a consumer complaint that occurred May/June 2021, at that point, the inspector indicated that she wanted to tour the facility.

**Answer**: Defendant admits that on or about September 29, 2022, an FDA inspector visited Defendant's facility, that the topic of a Pepsi Cheetos consumer complaint arose tangentially, and that the FDA inspector toured Defendant's facility pursuant to a routine inspection notice. Defendant denies all remaining allegations of Paragraph 14 of the Complaint.

15. Zicher stated that if Madison was accompanying them on the facility tour Madison's jewelry needed to be removed. He also indicated to Madison that she had a dress on.[5]

**Answer**: Defendant admits that Mr. Zicher required Plaintiff to comply with company and regulatory safety guidance regarding the wearing of jewelry and exposed legs in Defendant's food preparation and storage areas. Defendant further admits that Plaintiff was wearing jewelry and a dress when appearing for an FDA inspection. Defendant admits that Plaintiff's failure to comply

---

Footnote 3 of the Complaint: It was Plaintiff's first day at work. She was not aware that she would be making tours of the facility. She was fully aware of dress protocol for the purposes of making tours. The aforementioned was an unexpected event. **Answer**: Admitted that Plaintiff was aware of dress protocols. Defendant denies she was unaware of the tour and denies that the tour was an unexpected event.

with company and regulatory clothing and jewelry safety rules were not to Plaintiff and that she agreed she needed to remove same. Defendant denies the remaining allegations of Paragraph 15 of the Complaint.

16. Ms. Knabe intervened and stated that Madison was all right to go, indicating that the company policy stated that one's extremities were to be covered. There was no exposed flesh; Madison's arms and legs were fully covered.

**Answer**: Defendant denies the allegations of Paragraph 16 of the Complaint.

17. To minimize the discussion, Madison informed Defendant Zicher that she had pants in the car and that she would change.

**Answer**: Plaintiff has not named Mr. Zicher as a defendant in this matter. Defendant admits that Plaintiff agreed that her dress violated applicable safety regulations, and that she indicated she had conforming clothing in her car and that she asserted she would change to conform to the applicable safety regulations. Defendant denies the remaining allegations of Paragraph 17 of the Complaint.

18. Madison was unable to remove one of her screwed-in stud earrings. Per the FDA, jewelry is permissible, if secured.

**Answer**: Paragraph 18 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant admits that Plaintiff was unable to remove her jewelry. Defendant denies the remaining allegations of Paragraph 18 of the Complaint.

19. Further the rule is geared towards those that come in direct contact with food, food-contact surfaces, and food-packaging materials (See 21 CFR Subpart B § 117.10 (b)(4)). For the purposes of this tour, Madison would not be in violation of the regulations. Moreover, additionally, hair restraints were also used that covered the ears and caught/restrained any particulate from being introduced into the manufacturing facility.

**Answer**: Paragraph 19 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining

allegations of Paragraph 19 of the Complaint.

20. Madison did not pose any safety risk, as Madison was not going to be working on a line or coming into direct contact with any product, surface, or packaging material. Thus, it would have been highly unlikely or improbable that any contamination would have occurred.

**Answer**: Paragraph 20 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 20 of the Complaint.

21. Defendant Zicher now asserts that the embellishments from Madison's prescription eyeglasses would pose a risk.

**Answer**: Plaintiff has not named Mr. Zicher as a defendant in this matter. Defendant denies the allegations of Paragraph 21 of the Complaint.

22. Madison contends that any embellishments from Madison's prescription eyeglasses would not have posed a risk for the same reasons.[6] Additionally, goggles could have been used to restrain any particulate from being introduced into the manufacturing facility.

**Answer**: Paragraph 22 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 22 of the Complaint.

23. Defendant Zicher asserts that Plaintiff had on nail polish. That assertion was patently false since Plaintiff Madison does not wear fingernail polish.

**Answer**: Plaintiff has not named Mr. Zicher as a defendant in this matter. Defendant denies the allegations of Paragraph 23 of the Complaint.

24. Further, Madison contends that her presence during the inspection was not essential, as Madison had just started and had not ever been to the facility before. Madison had no

---

Footnote 4 of Complaint: Further, even knowing that an inspection was going to take place, there is nothing that could have been done to replace Madison's eyeglasses on such short notice. **Answer**: Denied as speculative.

knowledge about the facility and its operation. Additionally, the person that Madison was replacing, Ms. Knabe did not accompany them either nor was she invited or required to go on the tour.

**Answer**: Defendant objects to the term "essential" as vague and undefined and therefore denies same. Defendant admits that Ms. Knabe did not accompany the inspector on the tour. Defendant denies the remaining allegations of Paragraph 24 of the Complaint.

25. On Friday, September 30, 2022, as a follow-up and debriefing of the FDA site visit, Mr. Zicher solicited input from Madison, Ms. Knabe and others on how to couch the FDA visit to craft his response and inform other clients of the FDA visit.

**Answer**: Defendant admits that Mr. Zicher communicated with Plaintiff and others concerning the FDA visit, as is customary for Defendant. Defendant denies all remaining allegations of Paragraph 25 of the Complaint.

26. Also, about midmorning on September 30, 2022, Madison had a brief conversation with Mr. Schroeder at the espresso machine, where in particular Mr. Schroeder asked about the FDA investigation regarding Pepsi. Mr. Schroeder instructed Madison to ask Mr. Zicher to provide her with the questions that Mr. Schroeder had posed to Mr. Zicher regarding the FDA investigation and visit. Madison also agreed to share her initial analysis of the requests and observations made by the FDA Inspector. Mr. Schroeder stated that he "wanted to change the culture to be more transparent." He also stated "he hoped that Madison could be of help to the company."

**Answer**: Defendant admits that Mr. Schroeder discussed the FDA site visit with Plaintiff and other individuals, as is customary for Defendant. Defendant denies the remaining allegations of paragraph 26 of the Complaint.

27. On September 30, 2022, as promised Madison shared the initial analysis of the September 28-29, 2022 FDA investigation and visit.

**Answer**: Defendant objects to these allegations as vague. It is unclear who, if anyone, Plaintiff

shared for analysis of the FDA investigation with on September 30, 2022. However, to the extent a response is required, Defendant denies the allegations of Paragraph 27 of the Complaint.

28. During the relevant time, Madison had no idea that a number of documents requested did not exist. Nor did Madison understand that the documents that did exist did not meet the requirements of FSMA, in particular 21 CFR 117, and the food defense under the Bioterrorism Act of 2002.

**Answer**: Defendant objects to this allegation as vague and unclear as to what documents Plaintiff may be referring to as requested and/or not existing and therefore, denies same. Paragraph 28 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 28 of the Complaint.

29. In attempting to remediate outstanding customer audit findings from July of 2022, from the Nestle audit, Madison discovered that the food safety plans were either inadequate or did not exist in contravention of 21 CFR 117 and other food defense requirements under the Bioterrorism Act of 2002. Additionally, it was also discovered that Creative Works had repeated non-conforming audit findings that still had not been mitigated or remediated since the previous audit in 2021.

**Answer**: Defendant objects to this allegation as vague and unclear as to what "outstanding customer audit findings" Plaintiff is referring to and therefore, denies same. Paragraph 29 of the Complaint contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 29 of the Complaint.

30. Madison communicated to Mr. Zicher these deficiencies and the non-compliances that underscored the audit deficiencies. Madison was told by Mr. Zicher on several occasions that Donna Bjurlin, from Nestle, was being picky and that he was not inclined to make any changes.

**Answer**: Defendant admits that Plaintiff communicated with Mr. Zicher about alleged audit

deficiencies. Defendant denies the remaining allegations of Paragraph 30 of the Complaint.

31. Madison was also instructed by Mr. Zicher not to reference the regulations and standards when corresponding with Donna on behalf of Nestle.

**Answer**: Defendant denies the allegations of Paragraph 31 of the Complaint.

32. On October 3, 2022, Madison met Mr. Zicher at yet another Creative Werks facility in Bensenville to meet with a potential new customer Medfast.

**Answer**: Defendant admits the allegations of Paragraph 32 of the Complaint.

33. While waiting for the potential clients, Mr. Zicher and Madison discussed the FDA audit/inspection. The discussion entailed the consumer complaint. It also entailed how Creative Werks seemed to be aware of the non-conforming/adulterated product that had entered into the stream of commerce and that Creative Werks had not taken any remediation steps to prevent this from occurring. Madison shared with him that a good starting point was to understand what standards needed to comply with based upon the business operations.

**Answer**: Defendant denies the allegations of Paragraph 33 of the Complaint.

34. Madison also shared with Mr. Zicher that Mr. Schroeder wanted him to share with her the questions that Mr. Schroeder had sent to him regarding the FDA visit on September 28-29, 2022.

**Answer**: Defendant denies the allegations of Paragraph 34 of the Complaint.

35. Mr. Zicher indicated that Madison did not understand the culture there and that he would not be providing her with the information Mr. Schroeder asked to be shared with Madison. Mr. Zicher further stated that he and Ron Sammeth decided what Mr. Schroeder should know.

**Answer**: Defendant denies the allegations of Paragraph 35 of the Complaint.

36. Among Madison's other responsibilities of attending meetings with customers and potential customers and conducting audits, she continued to conduct root cause analysis and other risk analysis relative to these and other outstanding customer and regulatory compliance issues that had not been remedied and due and owing since 2021.

**Answer**: Defendant denies having outstanding customer and/or regulatory compliance issues that had not been remedied and due and owing since 2021. Defendant is not otherwise aware of Madison having been in engaged in "root cause analysis" of any type and therefore denies same. Defendant denies the remaining allegations of Paragraph 36 of the Complaint.

37. Over the next few weeks, Madison sought information necessary to remediate outstanding issues but was instructed by Mr. Zicher to either provide false and/or misleading information to customers, or instructed to not comply, or provided with inadequate information to perform the job properly.

For example:
  I.     Nestle
  II.    Wilton Brand
  III.   Blue Diamond Growers.

**Answer**: Defendant denies the allegations of Paragraph 37 of the Complaint.

38. On October 4, 2022, Madison was told by Mr. Zicher not to worry about the deficiencies because in his experience "no one reads the documents" and to "use whatever documents that were there."

**Answer**: Defendant denies the allegations of Paragraph 38 of the Complaint.

39. Mr. Zicher instructed Madison to provide false, inaccurate and misleading information to clients after Madison specifically pointed out deficiencies in the documentation.

**Answer**: Defendant denies the allegations of Paragraph 39 of the Complaint.

40. On October 6, 2022, the auditor, from Blue Diamond Growers, herein after "BDG," Keira Kaur Dhillon came to perform the audit. The introductions began; Ms. Dhillon went first indicating that one of her previous employers was Kraft Foods. Madison went next and Mr. Zicher went last. Mr. Zicher led by stating to Ms. Dhillon that they had something in common because they both worked at Kraft. She in turn asked him who was the CEO when he worked there? Mr. Zicher did not and could not answer her question--The room was filled with silence.

**Answer**: Defendant denies the allegations of Paragraph 40 of the Complaint.

41. To deflect the awkward situation, Mr. Zicher made a mockery of Madison's to Ms. Dhillon relative to of the tabs open on Madison's computer regarding the documents requested by BGD for review during the audit.

**Answer**: Defendant denies the allegations of Paragraph 41 of the Complaint.

42. Madison responded to the effect that since they were kind enough to send over a comprehensive list of what they wanted to review during the audit and in the interest of everyone's time, it seemed prudent to be prepared and not to have to search for documents.

**Answer**: Defendant denies the allegations of Paragraph 42 of the Complaint.

43. The auditor remarked that the audit exhibited readiness because of the readily available documents.

**Answer**: Defendant denies the allegations of Paragraph 43 of the Complaint.

44. Unfortunately, there was an issue identified by the auditor in one of the documents Ms. Dhillon reviewed that could have been identified and remediated. This was not the case because Madison had been instructed to ignore the deficiencies identified.

**Answer**: Defendant denies that Madison was instructed to ignore any identified deficiencies, if and to the extent they existed. Defendant denies the remaining allegations of Paragraph 44 of the Complaint

45. In an effort to follow up on the outstanding audit non-compliances relative to Nestle that had been due and owing since July of 2022, Madison again broached the outstanding issues from the audit along with conversations[7] that Madison had with Donna Bhurlin from Nestle Corporate Quality with Mr. Zicher. Mr. Zicher stated again that "her expectations were not realistic and that she was being picky."

**Answer**: Defendant denies the allegations of Paragraph 45 of the Complaint.

46. On numerous occasions with numerous clients, Defendant Zicher would instruct Plaintiff to

---

Footnote 5 of Complaint: A longstanding biweekly meeting was held by Nestle to address the outstanding audit deficiencies. **Answer**: Denied that the bi-weekly meeting were held to address deficiencies.

disregard certain deficiencies. Additionally, Madison had been instructed to release material

that was being held for non-conformance on several other occasions.

**Answer**: Defendant denies that Zicher is a Defendant in this case. Defendant denies all remaining allegations of Paragraph 46 of the Complaint.

47. Madison had raised issues and complained about violating SQF-company, customer and public policy.

**Answer**: Defendant admits that Plaintiff raised alleged issues but specifically denies that there were any violations of policy. Defendant denies the remaining allegations of Paragraph 47 of the Complaint.

48. Madison had also been in a meeting where Mr. Zicher tried to gaslight and humiliate her about not providing metrics that he was aware of that had not been supplied to Madison because they did not exist.

**Answer**: Defendant denies the allegations of Paragraph 48 of the Complaint.

49. Defendant Creative Works also lacked change control management, an essential function ensuring that various requirements are being met to remain compliant with FSMA and other relevant statutes. Further, change management is directly correlated to preventive controls such as validation, verification and reanalysis relative to 21 CPR 117 §§ 160, 165 & 170. This deficiency was also noted in the July 2022 Nestle audit CAR #

**Answer**: Paragraph 49 contains legal conclusions to which no response is required. Defendant denies the remaining allegations of paragraph 49 of the Complaint.

50. Prerequisite and requisite programs are required to manage such microbial hazards or any other hazards. These programs were not in place to reduce or mitigate the spread of these causative agents of food-borne diseases.

**Answer**: Paragraph 50 contains legal conclusions to which no response is required. Defendant denies the remaining allegations of Paragraph 50 of the Complaint.

51. Defendant Creative Werks, during the relevant time did not have any Standard Operating

17

Procedures relative to Intentional hazard management or any other biological, chemical, physical or radiological hazard.

**Answer**: Defendant denies the allegations of Paragraph 51 of the Complaint.

52. Defendant Creative Werks handles Ready To Eat foods, ("hereinafter RTE") that lack any further processing or kill step to eliminate or reduce hazards. Therefore, it is incumbent that a science risk-based analysis be implemented to manage identifiable and foreseeable risks to prevent food from being adulterated and introduced into the stream of commerce for human consumption (21 CFR 1 17).

**Answer**: Defendant admits that it handles Ready to Eat Foods. Paragraph 52 contains legal conclusions to which no response is required. Defendant denies the remaining allegations of Paragraph 52 of the Complaint.

53. It can easily be inferred that the consumer complaint filed in October of 2022 was a direct result of the lack of proper food safety and hazard analysis (risk management) at Creative Werks. The complaint was tied to cereal; a RTE.

**Answer**: Defendant denies the allegations of Paragraph 53 of the Complaint.

54. More specifically, it can be reasonably inferred that the root cause of the reported October 2022 illness was due to Creative Werks' reckless and willful failure to adhere to the mandate of food safety laws and regulations relative to ensuring that food is not adulterated when it enters into the stream of commerce (21 CFR 342).

**Answer**: Paragraph 54 of the Complaint contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 54 of the Complaint.

55. The company and its alter ego, the owner, Mr. Schroeder, touted a mantra of a "see something say something"[8] policy that they continuously reiterated in meetings and by post.

---

Footnote number 6 of the Complaint: The FDA inspector makes note of this policy and references it in her report See Exhibit 4. **Answer**: Admitted.

**Answer**: Defendant admits it encourages all employees to report on anything that can be improved upon. Defendant specifically denies that Creative Werks is an alter ego of Mr. Schroeder and that Mr. Schroeder is an alter ego of Creative Werks. Defendant denies all remaining allegations of Paragraph 55 of the Complaint.

56. Creative Werks and its alter ego, the owner, also purported to have an open-door policy.

**Answer**: Defendant admits it encourages all employees to report on anything that can be improved upon. Defendant specifically denies that Creative Werks is an alter ego of Mr. Schroeder and/or that Mr. Schroeder is an alter ego of Creative Werks Defendant denies the remaining allegations of Paragraph 56 of the Complaint.

57. Mr. Schroeder, the owner, on an ongoing and regular basis, spoke with his employees daily about a myriad of things. He himself espoused transparency among other things and had personally on several occasions stated that he hoped that Madison was helping the company along.

**Answer**: Defendant admits it encourages all employees to report on anything that can be improved upon. Defendant denies the remaining allegations of Paragraph 57 of the Complaint.

58. Madison drafted a very high-level risk analysis on October 20, 2022, in an effort to steward the compliance gaps to closure.

**Answer**: Defendant admits that Madison tendered a document titled Risk Analysis Report on or about October 20, 2022. Defendant denies the remaining allegations of Paragraph 58 of the Complaint.

59. On October 21, 2022, prior to speaking with Mr. Schroeder, Madison asked to speak with Ms. Gretchen Le May, VP of People. Ms. LeMay indicated that she was not available until Monday and it was agreed that they would speak on that day.

**Answer**: Defendant admits the allegations of Paragraph 59 of the Complaint but denies that Madison ever scheduled a time to meet with Ms. LeMay.

60. On Friday afternoon, October 21, 2022, after the company's town hall meeting and luncheon,

Madison spoke with Mr. Schroeder, the owner of the company, regarding outstanding

compliance issues and presented him with the risk analysis dated October 20, 2022.

**Answer**: Defendant admits that Plaintiff discussed the October 20, 2022 document with Mr.

Schroeder on October 21, 2022. Defendant denies all remaining allegations of Paragraph 60 of the

Complaint.

61. Madison raised issues with Mr. Steve Schroeder regarding a known set of issues and facts

regarding the September 28-29, 2022, FDA investigation of a consumer complaint of a Pepsi-

Cheetos product, along with other known gaps and deficiencies of compliance, such as food

safety plans.

**Answer**: Defendant admits that during the conversation between Mr. Schroeder and Plaintiff,

Plaintiff made certain accusations of compliance failures. Defendant denies the remaining

allegations of Paragraph 61 of the Complaint.

62. During the conversation, Mr. Schroeder told Madison that Mr. Zicher told him that he worked

at Kraft and he did not understand. As if to say, that Mr. Zicher working at Kraft made him

more knowledgeable or the outstanding issues were obviated because Mr. Zicher had worked

at Kraft.

**Answer**: Defendant denies that Zicher worked for Kraft, denies that Zicher represented to have

been an employee of Kraft, and denies that Mr. Schroeder ever believed or asserted otherwise.

Defendant denies all remaining allegations of Paragraph 62 of the Complaint.

63. Contrarily, by Mr. Zicher's own admission his LinkedIn page does not support that he ever

worked at Kraft. (See Attached Exhibit 5). Further, FSMA requires that qualified individuals

have the requisite training, experience and education qualifications as defined in (21 CFR

117.3) to function in any capacity of Food Safety (21 CFR 117.4(c)).

**Answer**: Defendant admits that Mr. Zicher's LinkedIn page does not reflect that he worked at

Kraft.  Paragraph 63 of the Complaint contains legal conclusions to which no response is required.

Defendant denies all remaining allegations of Paragraph 63 of the Complaint.

64. Mr. Schroeder also told Madison that if her solution was to hire more people like Mr. Zicher had suggested he did not agree. Madison acknowledged that hiring more people would not fix the issues, but complying with the rules, regulations and statutes would.

**Answer**: Defendant denies the allegations of Paragraph 64 of the Complaint.

65. Mr. Schroeder also indicated that Creative Werks was not as bad as Peanut Corporation of America.

**Answer**: Defendant denies the allegations of Paragraph 65 of the Complaint.

66. Mr. Schroeder also told Madison that since she had not been there that long she should have been trying to make nice with her boss, instead of speaking with him.

**Answer**: Defendant denies the allegations of Paragraph 66 of the Complaint.

67. Mr. Schroeder's conduct of telling Madison that she should have been trying to "make nice with her boss" in relation to outstanding business compliance issues is telling of the culture of Creative Werks and Mr. Schroeder.

**Answer**: Defendant denies the allegations of Paragraph 67 of the Complaint.

68. Madison interpreted Mr. Schroeder's statement to mean that she should have just went along to get along no matter what. Specifically, Madison interpreted Mr. Schroeder's statement to mean that Madison should succumbed to whatever Mr. Zicher said or did because he was a man, a white man, who had allegedly worked at Kraft.

**Answer**: Defendant lacks the knowledge or information to admit or deny what Plaintiff's interpretations were; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 68 of the Complaint.

69. Plaintiff contends that telling someone to "make nice" is condescending, belittling, subservient and degrading. It is the equivalent of telling someone that they should know their place.

**Answer**: Defendant lacks the knowledge or information to admit or deny what Plaintiff's interpretations were; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 69 of the Complaint

21

70. Mr. Schroeder is a well-educated man, holding a MBA from John Hopkins. He is the founder of multiple million-dollar businesses. It is unreasonable to assert that Mr. Schroeder does not know or understand proper etiquette or the connotations associated with making such a statement or the social pressures that exist that underscores Madison's takeaways from his demeaning, condescending, belittling, subservient and degrading statement to Madison. That she should have been "making nice with her boss" instead of dealing with the issues that she was hired to do.

**Answer**: Defendant admits that Mr. Schroeder has a Master of Arts from the John Hopkin's School of Advanced International Studies, and could be described as a well-educated male who formed a successful businesses. Defendant denies the remaining allegations of Paragraph 70 of the Complaint.

71. Further, Mr. Schroeder knew and understood that Madison was a subject matter expert and that they both had attended Johns Hopkins for graduate school.

**Answer**: Defendant admits that Mr. Schroeder attended Johns Hopkins and that Plaintiff alleged that she attended John Hopkins. Defendant further admits that it hired Plaintiff based upon her alleged subject matter knowledge. Defendant denies the remaining allegations of Paragraph 71 of the Complaint.

72. Immediately after meeting with Mr. Schroeder, Madison began to be ostracized from meetings and ignored. For example, there was a meeting with Ghirardelli, a client that Madison liaised with; she was excluded from the meeting, after receiving an email about the meeting and despite all other relevant parties being involved in the meeting, including Mr. Zicher. There was also a regulatory issue that arose relative to a salmonella outbreak at the Elk Grove facility. Madison was also excluded from this investigation. Additionally, Ms. Lemay did not meet with her as planned either.

**Answer**: Defendant admits that there was a meeting with its client, Ghirardelli, around this time. Defendant denies all other allegations within Paragraph 72 of the Complaint.

73. The harassment and ostracizing created a hostile work environment and issues of Madison's competency internally and externally among stakeholders involved in Creative Werks' business operations. This was true especially, in view that Madison liaised with Creative Werks' customers regarding their quality and regulatory compliance.

**Answer**: Defendant denies the allegations of Paragraph 73 of the Complaint.

74. Madison was retaliated and discriminated against after raising issues relative to the same contextual conversations relative to compliance gaps that Zicher had previously raised with Schroeder and others regarding the FDA investigation of a consumer complaint along with gaps and deficiencies in compliance documents such as food safety plans.

**Answer**: Defendant denies the allegations of Paragraph 74 of the Complaint.

75. On October 26, 2022, as Madison was leaving to go home, Madison was stopped by Wendy Proulx of HR, who asked Madison to step into the conference room. Ms. LeMay was there in the conference room and it was at that time that Madison was told that she was being suspended with pay for the conversation that was had with Mr. Schroeder. It was also memorialized in the suspension letter that an outside attorney would be conducting an investigation into the matters and allegations raised to Mr. Schroeder.

**Answer**: Defendant admits that Plaintiff was suspended on October 26, 2022 and that it was communicated that an investigation would be conducted with an outside attorney to investigate Plaintiff's actions. Defendant further admits that Plaintiff was given written notice of the investigation. Defendant further admits that Ms. Proulx and Ms. LeMay of Defendant's HR department, notified Plaintiff of her suspension. Defendant denies all remaining allegations of Paragraph 75 of the Complaint.

76. When Madison pressed Ms. LeMay on what grounds that Madison was being suspended, she stated that Madison's allegations were unfounded. Madison offered supporting evidence of her position. Madison was instructed by Ms. LeMay to save it for the attorney.

**Answer**: Defendant admits that Plaintiff made unfounded allegations regarding Defendant, and

Defendant further admits that Plaintiff denied making amended allegations. Defendant denies

the remaining allegations of Paragraph 76 of the Complaint.

77. At no time after the conversation with Mr. Schroeder did he or anyone else follow up with

Madison regarding the report. Nor was Madison involved in any type of investigation prior to

being informed of Madison's suspension.

**Answer**: Defendant admits that Plaintiff did not participate in any investigation prior to being

informed of her suspension. Defendant denies the remaining allegations of Paragraph 77 of the

Complaint.

78. Madison believes that her suspension on October 26, 2022, was for impermissible reasons that

included retaliation and discrimination for Madison's having presented the risk analysis to Mr.

Schroeder. Madison also contends that she once again engaged in protected activity when

Madison provided the risk analysis that detailed violations of the Food Safety Modernization

and Bioterrorism Acts.

**Answer**: Paragraph 78 contains legal conclusions to which no response is required; however, to

the extent a response is required, Defendant denies the same. Defendant admits that Plaintiff's

alleged risk analysis asserted exaggerated and/or false violations of the Food Safety Modernization

and Bioterrorism Acts. Defendant denies the remaining allegations of Paragraph 78 of the

Complaint.

79. In further retaliation, Madison was not paid her signing bonus on October 27, 2022 as

referenced in Madison's offer letter (See Attached Exhibit 7). Not only did Creative Werks

retaliate against Madison, it also breached its contractual agreement with Madison. Creative

Werks' actions of ostracizing Madison and suspending her not only had an immediate adverse

effect upon her, but it also now created a situation that interfered with her ability to be

employed within this niche field.

**Answer**: Defendant denies that Plaintiff was entitled to a signing bonus per the terms of her offer

letter (reflected in Exhibit 7 of her Complaint), due to that date of her suspension and termination.

Defendant denies the remaining allegations of Paragraph 79 of the Complaint.

80. After Madison insisted on counsel, she was allowed to have legal counsel. Madison was again aggrieved, as she was only given a day or so to secure legal counsel, when in fact it had taken Creative Werks more than a week to secure the counsel, a firm that had been used on several occasions by Mr. Schroeder and his alter ego, Creative Werks LLC.

**Answer**: Defendant denies that Plaintiff was given only one day to secure legal counsel. Defendant denies further that Creative Werks is an alter ego of Mr. Schroeder. Defendant denies the remaining allegations of Paragraph 80 of the Complaint.

81. After Madison requested to have an attorney present at the meeting with Creative Werks outside legal counsel, Madison was further retaliated against when Madison's suspension transitioned from with pay to without pay.

**Answer**: Defendant admits that Plaintiff requested to have an attorney present at the meeting with Defendant's outside legal counsel. Defendant denies all remaining allegations of Paragraph 81 of the Complaint.

82. Madison was told by Ms. LeMay that Madison did not need an attorney because this was an in-house matter and the counsel would be acting in the capacity of an independent fact finder.

**Answer**: Defendant admits that Ms. LeMay informed Plaintiff that she was not required to have an attorney present and that Ms. Madison did have an attorney present. Defendant denies the remaining allegations of Paragraph 82 of the Complaint.

83. Further, Madison also contends that being forced to meet with Ford-Harrison was a term and condition of Madison's employment. Madison also contends that it was an intimidation tactic that was harassive in nature.

**Answer**: Paragraph 83 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 83 of the Complaint.

84. Madison communicated to Creative Werks the adverse employment actions, which were taken

against her, including but not limited to being retaliated against or identifying and raising non-compliance issues to Mr. Schroeder related to violations of FSMA. And that she had been treated differently than others who had raised the same and/or similar issues of compliance deficiencies. Madison further addressed the issue of not being afforded an opportunity to be a part of any investigation.

**Answer**: Paragraph 84 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant admits that by and through Plaintiff's Complaint, she asserts that adverse employment actions were taken against her and that she had been treated differently than others who had raised the same or similar issues of compliance deficiencies. Defendant denies the truth of Plaintiff's allegations. Defendant denies the remaining allegations of Paragraph 84 of the Complaint.

85. Madison was meeting Respondent's expectations as there is no other evidence to suggest otherwise. Nor had Madison been told otherwise, except for the suspension letter that specifically stated that Madison was being suspended for the conversation that Madison had with Mr. Schroeder regarding the outstanding compliance issues.

**Answer**: Defendant denies the allegations of Paragraph 85 of the Complaint.

86. Defendant has engaged in a pretext to cover up its retaliatory and discriminating conduct, as well as its adverse employment actions taken against Madison. Further, Defendant did not subject Mr. Zicher to any adverse employment actions when he had conversations with them about compliance gaps or deficiencies.

**Answer**: Defendant admits that Mr. Zicher has not been subject to adverse employment actions related to Plaintiff's allegations of compliance gaps or deficiencies. Defendant denies the remaining allegations of Paragraph 86 of the Complaint.

87. Madison was treated differently than Mr. Zicher, by Creative Werks and Mr. Schroeder, after engaging in the same contextual conversations relative to compliance gaps. The evidence of the compliance gaps are highlighted by Defendant's need to hire Madison as a Quality

26

Regulatory Manager, as well as interviewing for a Regulatory Specialist.

**Answer**: Defendant denies the allegations of Paragraph 87 of the Complaint.

88. Mr. Zicher further supports this contention in his July 2023 declaration in support of Creative Werks position statement to the Department of Labor stating that it hired Madison to write Food Safety Plans, which are compliance documents.

**Answer**: Defendant admits that Mr. Zicher's July 2023 declaration attached to Defendant's position statement to the Department of Labor speaks for itself and denies the allegations of Paragraph 88 of the Complaint to the extent the allegations do not comport with or provide an accurate representation of Mr. Zicher's July 2023 declaration. Defendant denies the remaining allegations of Paragraph 88 of the Complaint.

89. Following interviews and upon completion of the investigation conducted by Ford Harrison, outside counsel retained by Creative Werks, in January of 2023, contacted Madison's legal counsel to discuss settlement. The settlement would be in exchange for Madison waving any claims against Creative Werks--A Quid Pro Quo.

**Answer**: Defendant admits that Defendant's counsel had communications with Plaintiff's counsel prior to Plaintiff's filing of this Complaint. Defendant objects to Plaintiff's allegations concerning any alleged settlement negotiations; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 89 of the Complaint.

90. Further, it is reasonable to contemplate that Creative Werks surmised that Madison would be in a state of vulnerability, since they bad retaliated against her by suspending her without pay, and that Madison would be inclined to engage in this Quid Pro Quo because of the adverse employment actions that Creative Werks had taken.

**Answer**: Defendant objects to Plaintiff's allegations concerning any alleged settlement negotiations; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 90 of the Complaint.

91. Madison again requested her personnel file again pursuant to the Illinois Personnel Review

27

Act to review the findings of the investigation that allegedly supported their contentions that Madison's assertions were unfounded.

**Answer**: Defendant admits that Plaintiff requested her personnel file. Defendant denies the remaining allegations of Paragraph 91 of the Complaint.

92. Ford-Harrison, on behalf of Creative Werks declined to provide Madison's personnel file in contravention to the Illinois Personnel Review Act or the results of the investigation. (See Attached Exhibit 8). Ford-Harrison also indicated that there had not been anything added to Madison's personnel file since her request in 2022.

**Answer**: Paragraph 92 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant specifically denies that Plaintiff was denied a copy of her personnel file and specifically denies that any personnel records in her file were withheld. Defendant denies the remaining allegations of paragraph 92 of Plaintiff's Complaint.

93. Ford-Harrison stated that Creative Werks was claiming privilege to the investigation and its findings and would not be sharing any information based on client-attorney relationship.

**Answer**: Defendant admits that it asserted privilege with respect to attorney-client communication and/or work product between Defendant and its legal counsel. Defendant denies the remaining allegations of Paragraph 93 of the Complaint.

94. This explanation for denying Madison access to their findings that should have been contained in Madison's personnel file belies the assertion that the outside counsel from Ford Harrison was acting as an independent fact finder.

**Answer**: Paragraph 94 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 94 of the Complaint.

95. In response, through counsel, in January of 2023, Creative Werks was provided with various theories of causes of actions, including but not limited to retaliation, race and sex

discrimination amongst other things. It was also contended that Creative Werks conspired to violate Madison's protected rights.

**Answer**: Defendant admits that Plaintiff prior to this Complaint provided Defendant with a document containing various allegations and alleged causes of action. Defendant further admits that Plaintiff's Complaint asserts several allegations and causes of action, including retaliation and sexual discrimination. Defendant denies the remaining allegations of Paragraph 95 of the Complaint.

96. Creative Werks acknowledged that Creative Werks was aware of these theories of causes of actions relative to the series of events that had occurred between Madison and Creative Werks. Madison was admonished by Defendant's then legal counsel to make a counteroffer, as they would not increase their offer until such time. Madison made a counteroffer and their communications ceased.

**Answer**: Defendant admits that Defendant's counsel had communications with Plaintiff's counsel prior to Plaintiff's filing of this Complaint. Defendant objects to Plaintiff's allegations concerning any alleged settlement negotiations; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 96 of the Complaint.

97. Further, to date Creative Werks has not and cannot point to any non-retaliatory or non-discriminatory reason for suspending Madison. Nor can Creative Werks point to any company or public policy that Madison violated relative to Madison's employment to warrant Madison's suspension and de facto discharge/termination.

**Answer**: Defendant denies the allegations of Paragraph 97 of the Complaint.

98. In furtherance of the scheme to conspire to engage in pretext and in continued violation of Madison's protected rights, Creative Werks and its alter ego, Mr. Schroeder, hired an expert witness.

**Answer**: Defendant admits that it retained an expert witness in support of its Department of Labor Position Statement in response to Plaintiff's Department of Labor Complaint. Defendant further

denies that Creative Werks is an alter ego of Mr. Schroeder. Defendant denies all remaining allegations of Paragraph 98 of the Complaint.

99. Creative Werks' expert witness further gas lighted Madison, impugning and undermining her professional reputation, characterizing her as an extremist and an alarmist. Conversely, Mr. Zicher, white male, had also raised the same contextual conversations relative to compliance gaps with Mr. Schroeder and others was not subject to such characterization nor had he been subject to any adverse employment or disciplinary actions.

**Answer**: Defendant admits the Mr. Zicher is a white male and that Mr. Zicher was not the subject of any adverse employment or disciplinary actions arising from or related to Plaintiff's allegations. Defendant denies the remaining allegations of Paragraph 99 of the Complaint. [9]

100. Creative Werks' expert witness claimed to be a Food Scientist, but in reality by her own admission on her Linkedln page is only a microbiologist (see Attached Exhibit 9).

**Answer**: Paragraph 100 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant admits that a purported copy of Ms. Knutson's LinkedIn page description is attached as Exhibit 9 to the Complaint. Defendant objects to the extent that Defendant has not yet named any expert in this instant case, and thus, it is improper to refer to Ms. Knutson as an expert witness at this time. Defendant denies the remaining allegations of Paragraph 100 of the Complaint.

101. Further, Defendant's expert witness provided an opinion that Defendant was compliant

---

Footnote number 8 of the Complaint: According to the Bureau of Labor and Statistics: Food scientists and technologists use chemistry, biology, and other sciences to study the basic elements of food. They analyze the nutritional content of food, discover new food sources, and research ways to make processed foods safe and healthy. Food technologists generally work in product development, applying findings from food science research to develop new or better ways of selecting, preserving, processing, packaging, and distributing food. Some food scientists use problem-solving techniques from nanotechnology-the science of manipulating matter on an atomic scale- to develop sensors that can detect contaminants in food. Other food scientists enforce government regulations, inspecting food-processing areas to ensure that they are sanitary and meet waste management standards. **Answer**: Defendant objects to this as asserted definition as uncited and thus not capable of being confirmed or denied. Defendant further objects to this as a legal argument as to what constitutes an expert, pursuant to which no answer is required. If and to the extent an answer is required, denied.

with the Food Safety and Modernization Act. This opinion is in direct contradiction to Mr. Zicher's contention, in his July 2023 declaration, in support of Creative Werks position statement to the Department of Labor stating that it hired Madison to write Food Safety Plans, which are compliance documents.

**Answer**: Defendant admits that Ms. Knutson provided an opinion referenced in Defendant's Department of Labor Position Statement. Defendant admits that Ms. Knutson's opinion speaks for itself and denies Plaintiff's allegation to the extent only that it fails to confirm or misrepresents the contents of Ms. Knutson's opinion. Defendant denies the remaining allegations of Paragraph 101 of the Complaint.

102.    Mr. Zicher's declaration stating that Madison was hired to write food safety plan is an admission that Defendant was not in compliance.

**Answer**: Defendant denies the allegations of Paragraph 102 of the Complaint.

103.    These two (2) competing interests are a dichotomy that squarely supports Defendants engaging in pretext and other unlawful acts.

**Answer**: Defendant denies the allegations of Paragraph 103 of the Complaint.

104.    The Defendant's actions were premeditated, calculated, intentional, willful, malicious, and in reckless disregard of Madison's rights to not be further harassed, gas- lighted, or humiliated in furtherance of Defendants' contrived schemes of conspiracy, in using its Legal Counsel as an alleged fact finder and hiring an expert witness, to discriminate against Madison and to continue to violate her federally protected rights. The Defendants' actions are extreme and shocking.

**Answer**: Paragraph 104 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies the remaining allegations of Paragraph 104 of the Complaint.

105.    What is even more alarming and shocking is that Defendants were knowingly willfully and recklessly operating a business in contravention of the Food Safety Modernization Act and the Bioterrorism Act of 2002. As evidence of this, adulterated food products entered into the stream

of commerce resulting in consumer complaints (See Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, Agricultural and Food Scientists, at Agricultural and Food Scientists: Occupational Outlook Handbook (visited August 3, 2023). Attached Exhibit 10); in addition, to the other outstanding compliance issues, identified by the FDA and other third (3rd) party audits.

**Answer**: Defendant denies the allegations of Paragraph 105 of the Complaint.

106.    Instead of Defendant remediating the non-compliance(s) and public safety issues, risks and hazards, Defendant, as a subterfuge, has focused a considerable amount of time and resources affixed on conspiring, harassing and discriminating against Madison.

**Answer**: Defendant denies the allegations of Paragraph 106 of the Complaint.

107.    Defendants intentionally, willfully and recklessly engaged in unlawful conduct and contravened public policy, by introducing adulterated food products for human consumption into the stream of commerce that created public safety risks and hazards that were harmful to consumers. (See Attached Exhibit 10)

**Answer**: Paragraph 107 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 107 of the Complaint.

108.    The Defendant's actions were also intentional, willful, and in reckless disregard of public policy and public safety. Public policy mandates adulterated products introduced into the stream of commerce are in contravention of the Food Safety and Modernization Act and the Bioterrorism Act of 2002.

**Answer**: Paragraph 108 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 108 of the Complaint.

109.    Defendant did not investigate or remedy Madison's complaints but treated her differently from Mr. Zicher by retaliating against her by suspending her, withholding her sign-on bonus and

other benefits and subjecting her to further harassment and other adverse employment actions including a de facto termination.

**Answer**: Paragraph 109 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 109 of the Complaint.

110.     As a direct result of the Defendants' unlawful actions, Madison suffered emotional distress, humiliation, loss of income and benefits, and damage to her reputation and career.

**Answer**: Paragraph 110 contains legal conclusions to which no response is required; however, to the extent a response is required, Defendant denies the same. Defendant denies all remaining allegations of Paragraph 110 of the Complaint.

**WHEREFORE**, for all of the above reasons, it is requested that Plaintiff, Mary Madison take nothing by way of her Complaint and that all of her requests for relief be denied in their entirety.

<u>**AFFIRMATIVE DEFENSES**</u>

**1st Affirmative Defense – Same Actor Inference**

1.     To the extent the persons involved in Plaintiff's hiring decision within Creative Werks were involved in the decision to terminate Plaintiff, Defendant is entitled to have the jury or finder of fact determine that any adverse employment action was not discriminatory.

**2nd Affirmative Defense – After Acquired Evidence of Conduct**

2.     Subsequent to the termination of Ms. Madison, Creative Werks learned that Ms. Madison had a propensity to lie, even when under oath in a Federal case in this District.

3.     The Plaintiff's suspension and subsequent termination was based on legitimate, non-discriminatory reasons, arising out of failing to follow corporate formalities, including chain of command, and drafting a report that was unprofessional, unreasonably alarmist, full of errors, misstating facts, and otherwise reflecting poor reasoning, and reflecting a lack of proper research.

**4th Affirmative Defense Plead Alternatively - Alternatively Mixed Motive**

4.     If and to the extent there would be any finding this case that adverse employment action occurred as a result, in part, of discriminatory animus, damages (if any) should be limited to the extent that Defendant had other legitimate non-discriminatory bases to terminate Plaintiff.

**5th Affirmative Defense – Failure to Plead**

5.     Plaintiff's Complaint is, based in part upon retaliation with respect to Title VII. Plaintiff pleads no allegations alleging that she engaged in any statutorily protected activity nor any adverse job action causally connect to any such statutorily protected activity

Respectfully Submitted,

**Creative Werks LLC**

/s/ Jon D. Cohen

Dickinson Wright PLLC
55 W. Monroe St., Suite 1200
Chicago, IL 60603
(312) 641-0060
jcohen@dickinsonwright.com

.