UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY MADISON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-16476 |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| CREATIVE WERKS LLC, | ) | |
| and STEVE SCHROEDER, Individually | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO QUASH SUBPOENA**

Defendants, Creative Werks LLC ("CW") and Steve Schroeder, by their counsel Dickinson Wright PLLC, submit this Response to Plaintiff's Motion to Quash Subpoena as follows:

**Introduction**

Defendants filed a Notice of Intent to Serve Subpoena to Plaintiff with respect to certain records from her current employer. (See Exhibit A).[1] Based on defenses sought to be explored and raised by Defendants to-date, the aforementioned subpoenas are consistent with Federal Rules of Civil Procedure 26 and 45. There is no undue burden or expense upon the parties subject to the subpoenas, there was an adequate time for Plaintiff to seek a motion to quash, and there is no protected or privileged materials being sought. (*See generally* FRCP 45.) The materials requested by Defendants are further directly relevant to defenses raised by Defendants.

---

[1] Subsequently, Defendants also sent notice of a second subpoena to be later served on a prior employer, but that subpoena is not yet the subject of a motion to quash. (See Exhibit B.) This is noted because the subpoenas are nearly identical in scope, and Defendants would have no objection if Plaintiff sought to address the same through her expected Reply in Support of her Motion to Quash.

1

**Relevant Facts & Allegations**

Plaintiff asserts actions in this forum under Title VII of the Civil Rights Act of 1964 (as it related to Creative Werks) and 42 U.S.C. § 1981 (against both Defendants). Plaintiff previously filed a charge of race and sex discrimination and retaliation with the Equal Employment Opportunity Commission in August 2023 and requested continued investigation by the IDHR. Concurrently too, in a separately filed Department of Labor ("DOL") action pending, Plaintiff alleges that she was retaliated against for raising purported violations of the Federal Food, Drug, and Cosmetic Act (the "FDA") to Creative Werks' CEO.

In the present action, Plaintiff is seeking significant purported damages for mental anguish and emotional distress, loss of self-esteem, damage to her reputation, as well as loss of past and future income and punitive damages. (*See* Complaint, pars. 12(h)(3)- 12(h)(7) , Docket No. 1.)

In response, Defendants raised several affirmative defenses, including but not limited to:

Affirmative Defense 1.  To the extent the persons involved in Plaintiff's hiring decision within the Creative Werks company were involved in the decision to terminate Plaintiff, Defendants are entitled to have the jury or finder of fact that any adverse employment action was not discriminatory.

Affirmative Defense 3. The Plaintiff's suspension and subsequent termination was based on a legitimate, non-discriminatory reasons, arising out of failing to follow corporate formalities, including chain of command, and drafting a report that was extremely unprofessional, unreasonably alarmist, full of errors, misstating facts, and otherwise reflecting poor reasoning, and reflecting a lack of proper research.

(Answer and Affirmative Defenses, Docket No. 53)

By way of additional context, Plaintiff was hired for the express purpose of improving and reporting on Creative Werks' Food Safety Modernization Act ("FSMA")/FDA compliance.

Plaintiff's direct supervisor was Erich Zicher, who was Creative Werks' Director of Food Safety. Ms. Madison was tasked with many activities relating to her role, which was largely comprised with certain discrete projects assigned to her. Out of the blue, however, only a few weeks into her employment, Plaintiff initiated contact with Creative Werks' CEO and gave him a document that she drafted and titled "Legal Analysis of Regulatory Business Problem." The "Abstract" on the cover of the Legal Analysis stated "Creative Werks LLC's non-compliance to the relevant statutes, standard and regulations under FSMA is an inherent systematic and systemic issue throughout the organization *that created irreparable harms for all stakeholders*." (Emphasis added.).

Ms. Madison did not present the report to her supervisor, Mr. Zicher, at any time. Defendants will seek to demonstrate that Plaintiff's report was not a legitimate attempt to identify and/or correct regulatory deficiencies. Rather, Defendants will argue that her report: (a) consisted of wild and unsupported conclusions and manifestly unprofessional statements; (b) contained intentional distortions of objective data along with unsupported, alarmist and irrational findings; (c) reflected a failure to consider exculpatory documentary evidence at her disposal; (d) was rife with gross misstatements of the law; (e) demonstrated an overt attempt to distort facts to reach unsupportable/wild conclusions; (f) failed to take into account Creative Werks' existing and robust food safety processes; (g) was replete with false allegations objectively disputable and known to be false by Complainant; (h) otherwise consisted of poor "work product" demonstrating a lack of necessary critical thought processes and; (i) demonstrated a lack of the skills and knowledge needed for her job. Additionally, ignoring her chain of command was also a basis for her termination. It may even be the case that Plaintiff intended the report to act as a job anchor….to point to in the event she was terminated for performance issues.

Since the filing of Plaintiff's Complaint, it has been discovered that Plaintiff previously brought a similar complaint in the Central District Court of Illinois, alleging similar allegations to the instant case, which was dismissed in its entirety when the Court found she had engaged in substantial perjury in that matter. (*See Madison v. Kenco Logistic Services*, 2017 WL 4532248 *1 (C.D. Ill, Sept. 22, 2017). This, by itself, raises significant credibility issues associated with Plaintiff that Defendants are entitled to explore for their defense through discovery and which relate to the materials sought by Defendants in the subpoena at issue.

In yet *another* related DOL case that Plaintiff had filed against a prior employer, Kenco Logistics, the DOL granted summary judgement in favor of the defendant/employer. That DOL matter bears striking similarities to this case, which also notably relates to discovery now sought. (See DOL Decision attached as Exhibit C hereto.) In that DOL matter, Plaintiff asserted violations of employment protection provisions under the FDA arising out of alleged whistleblowing. (Ex. C, pg. 1. ) As reflected therein, Plaintiff worked for a company that serviced a food based client and was responsible for FDA compliance issues (Ex. C, pgs. 3 & 5). Plaintiff was terminated approximately three (3) month into her employment. (*Id*. at 3). Her employer alleged that Plaintiff was terminated for having an uncooperative attitude and "consistent problems with her work performance." (*Id*.) Much like here, prior to being terminated, Plaintiff made outrageous, exaggerated and alarmist statements that led to her employer losing confidence in her abilities.

In particular, as reflected in the DOL case dismissal, Plaintiff complained about bathroom cleanliness being maintained by a third party vendor. (Ex. C, pg. 2.) In dealing with the vendor who cleaned the bathroom, Plaintiff sent heated, vitriolic communications to the vendor on multiple occasions acting in an unprofessional manner. (Ex. C, pgs. 2, 7, 8 & 10.) When her employer learned of these unauthorized and heavy-handed actions, Plaintiff was told not to write

4

any more such letters to the vendor without having them reviewed by a supervisor. (Ex. C, pg. 10.) Notwithstanding, she wrote *another* letter and sent it to the vendor without having it approved, stating "As the goodwill and business reputation of Kenco/Marc can be adversely affected and damaged but not fulfilling the current quality mandates than can result in serious illness and *even death, therefore prompting unwarranted litigious exchanges*." (*Id.,* emphasis added.) Plaintiff also asserted in that DOL case (although disputed by her supervisor), that she was told to "relax her standards." (Ex. C, pg. 9) She has engaged in similar allegations against her supervisor in this case…a disputed fact. (See e.g., Pl. Complaint, par. 37). Plaintiff was subsequently terminated by the employer after she failed to improve after a "30 day PIP" with the employer who asserted in the DOL action that Plaintiff was not following job priorities, not working collaboratively with site managers, had poor communication with management, and was working outside of outlined job responsivities as well as lacking effective communication skills and interpersonal skills. (Ex. C. at pg. 13.) These are very similar to the reasons for Plaintiff's termination from Creative Werks.

Here, Plaintiff asserts that Creative Werks' stated basis for dismissal were pre-textual. (Pl. Complaint par. 86.) Defendants allege otherwise and believe that in examining her work history at one or more other employers, Plaintiff's inherent gross professional deficiencies can be further demonstrated, in addition to reflecting Plaintiff's intent with employers to report hyperbolic, alarmist and inappropriate information, that Plaintiff intentionally ignores her chain of command with respect to her employers, that she intentionally and/or has a pattern of failing to submit her work for review before utilization, that she lacks appropriate tools of communication and lacks interpersonal skills. In short, such evidence will tend to support that Defendant's actions were not pre-textual and that Plaintiff did not have the skill-set or level of professionalism to do her job. It may also show her bad faith intent with respect to bringing the instant suit.

In the above noted context, and with Plaintiff currently working in the FDA regulatory space for a new employer (starting only weeks after being terminated by Creative Werks), Defendants seek the following through the subpoenas at issue from her current (Now Health Group, Inc.) and presumably previous (Brown Sugary Bakery) employers:

1. A copy of Mary Madison's personnel file.

2. Any and all disciplinary reports (if any) relating to Mary Madison.

3. Any and all employee reviews, performance appraisals, performance reviews, assessments and/or performance improvement plans relating or referring to Mary Madison.

4. Any and all complaints filed by Mary Madison with respect to any other employees.

5. Any legal complaints filed by Mary Madison against Now Health Group, Inc., with any State or Federal Agency.

6. Documents reflecting all wages and benefits received by Mary Madison from the start of her employment to the present date, including but not limited to any bonuses, tuition reimbursements, 401(k) matching and /or insurance from January 1, 2018 to the present.

7. A copy of any and all information provided by Mary Madison to Brown Sugar Bakery (and any predecessors) , associated with her hiring by Brown Sugar Bakery (and any predecessors), including but not limited to, applications for employment, resumes, curriculum vitae, work history and/or hiring related correspondence from January 1, 2018 to the present.

8. Any and all other records (other than health records) otherwise maintained by the Human Resources Department relating or referring to Mary Madison from January 1, 2018 to the present.

See Exs. A and B, Appendix.

These requests are narrowly tailored to obtain relevant information, including: (a) Madison's efforts to mitigate her damages; (b) to obtain the level of monetary benefits that Plaintiff

is receiving with her new employer;[2] (c) reviewing any information provided by Ms. Madison or understood by her new employer to determine if there was any impact on her hiring and/or reputation; (d) determining if her new employer knew about Madison's termination from Creative Werks prior to hiring her; (e) obtaining disciplinary actions and/or work reviews reflecting Plaintiff making alarmist comments and allegations or her otherwise unprofessional work product; (f) whether she has an intentional practice of failing to follow a chain of corporate command; (f) whether she has made similar false or suspect claims about supervisors telling her to "relax "any rules or regulations; (g) seeking evidence as to false statements she provided to her employer or otherwise evidence reflecting her propensity to not tell the truth and/or other relevant character evidence; (h) whether there is any evidence through her work that Plaintiff is suffering from any disabilities or mental anguish impacting her work; and/or (i) whether there is any other evidence relating to her character consistent with alleged allegations she has made in this case and/or if she has a pattern of filing false claims against employers and/or co-workers.

Moreover, Defendants do not wish to and cannot rely solely on Plaintiff for this information, as she has demonstrated her willingness to commit perjury and obstruct discovery in at least one other federal case. Indeed, upon information and belief, Ms. Madison appears to be taking active measures on her existing LinkedIn page to post false information about who her current employer is and her employment history.  It may be likely too, that her employer has better records of all communications leading up to Ms. Madison being hired with her current employer.

---

[2] To-date, Madison has not admitted where she currently works, even going so far as to leaving this information off of her Linked-In page and apparently false information about her work history.  Defendants only learned of her employer through information sifting.

**Legal Standard**

Under Federal Rule of Civil Procedure 45(a), a party may issue a subpoena to command production of documents or other tangible material in a person's possession or control. Fed. R. Civ. P. 45(a). Upon a timely motion, Rule 45(d) allows the court to quash or modify a subpoena if the subpoena "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies. *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083, at *1 (N.D. Ill. Apr. 17, 2023) *citing* Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). It is the burden of the moving party to establish the impropriety of the subpoena. *See generally*, *Simon v. Nw. Univ.*, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017); *Bicycle Peddler, LLC v. Does 1-99*, No. 13 C 2375, 2013 WL 4080196, at *2 (N.D. Ill. Aug. 13, 2013). In determining whether a subpoena "imposes an undue burden, the court asks whether the burden of compliance with the subpoena would exceed the benefit of production of the material sought by it. *Simon*, 2017 WL 66818 at 2.

With regard to third party subpoenas, the Court may further consider if a subpoena properly seeks information within the bounds of Rule 26(b). Parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See generally FireBlok IP Holdings, LLC. v. Hilti, Inc.*, No. 19 CV 50122, 2021 WL 5283946, at *2 (N.D. Ill. Aug. 10, 2021); *Architectural Iron Workers' Loc. No. 63 Welfare Fund*, 2023 WL 2974083, at *3.

**Argument**

Here, Plaintiff argues in a conclusory manner, that the subpoena: (1) subjects her current employer to an undue burden; (2) seeks information that is not relevant to this case. (See Pl. Motion to Quash, Docket No. 55.)

**Relevance**

Relevance in the discovery phase, is a low bar to meet. *Architectural Iron Workers' Loc. No. 63 Welfare Fund*, 2023 WL 2974083, at *4. Evidence is relevant, per the Federal Rules, if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." *See e.g., Elm Energy & Recycling (U.K.) Ltd. v. Basic*, No. 96 C 1220, 1996 WL 596456, at *10 (N.D. Ill. Oct. 9, 1996) ("if there is a possibility that the discovery sought may lead to information relevant to the subject matter of the action, then the discovery should generally be allowed); Fed. R. Evid. 401(a)-(b). Moreover, in determining the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure, relevance is construed broadly. *Jackson v. Parker*, No. 08 C 1958, 2008 WL 4844747, at *1 (N.D. Ill. Nov. 7, 2008); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)

The *Jackson case is* instructive, where that Court addressed whether personnel files from another employer should be the subject of a third party subpoena in a discrimination claim. *Jackson*, 2008 WL 484474 at *1-2. After noting the broad right of a defendant to seek any relevant discovery under Rule 26(b)(1), the Court ruled that the information sought in the subpoena being challenged was relevant, in part, because the Plaintiff was pleading emotional damage and suffering (as is the instant Plaintiff here). Accordingly, the Court found it relevant for the employer defendant to seek his emotional behavior prior to the incident at issue. Importantly too, the *Jackson*

court also denied plaintiff's motion to quash, finding that "the files could contain information that bears upon [Plaintiff's] credibility"…an issue very central in this case.

Another relevant case is *Cornell v. Jim Hawk Truck Trailer, Inc.,* 298 F.R.D. 403, 406–07 (N.D. Iowa 2014), which, while decided in the Northern District of Iowa, is helpful too as it is predicated upon the same interpretation of Rule 26 in this district and because it involved similar facts, procedural status and issues. In *Cornell*, the defendant/employer sought all of Plaintiff's personnel records from both her subsequent and prior employers. (*Id.*) In that case, defendants contended that performance evaluations and disciplinary reports from other employers were relevant because it was their position that the Plaintiff was discharged due to similar performance issues, and they wanted the chance to see if Plaintiff had similar job performance deficiencies with other employers. (Id.). The court held that such discovery in a subpoena had enough potential relevance to be properly discoverable, and such evidence might demonstrate performance concerns similar to those asserted by the defendant. (Id.) The Court went on to agree that wage and benefit data, in the context of any disciplinary measures, were also relevant as to damages. (*Id.*)

Accordingly, under the broad standard of relevance applicable here, given the nature of the Plaintiff's Complaint, its particular allegations and the defenses sought to be raised by Defendants, the information and documents sought through the subpoena at issue are relevant, notwithstanding Plaintiff's conclusory assertions to the contrary.

**Undue Burden**

Plaintiff asserts that compliance with the subpoena was constitute an undue burden, without recitation to any basis for that conclusion. Firstly, it should be noted that Plaintiff does not have standing to assert undue burden if the discovery is not directed to her, but to a third party. See e.g., *Bicycle Peddler, LLC,* 2013 WL 4080196, at *4; *Malibu Media, LLC v. John Does 1-6,* 291

F.R.D. 191, 196 (N.D. Ill. 2013). However, even if the Court were to view this issue through the lens of the third party at issue (Plaintiff's current employer), it is hard to understand why or how compliance with the subpoena at issue is burdensome. As noted above herein, in determining whether a subpoena imposes an undue burden, the court asks whether the burden of compliance with the subpoena would exceed the benefit of production of the material sought by it. *Simon*, 2017 WL 66818 at 2. As Plaintiff only started her employment with her new employer in 2023, it should not be difficult, time consuming or labor intensive for her employer to provide records that they surely keep in the ordinary course, over a short period of time, most of which is likely directly assessable by its human resources department. The subpoena, moreover, seeks pertinent records only with respect to one (1) employee. On the other side of the equation, Defendants may get material benefits from review of the subpoena, which may be very relevant to the defenses sought to be set forth by Defendants in this case and there may be no other reliable sources for such potential evidence.

## **Conclusion**

Wherefore, for all of the reasons set forth herein, Defendants respectfully request that this Court deny Plaintiff Mary Madison's Motion to Quash Subpoena and for all other relief, that this Court deems is just and appropriate.

        Respectfully Submitted,

        **Creative Werks LLC and**
        **Steve Schroeder**


        _s / Jon D. Cohen_
        One of their Attorneys


Jon D. Cohen
Dickinson Wright PLLC
55 W. Monroe St., Suite 1200
Chicago, IL 60603
(312) 641-0060
jcohen@dickinsonwright.com