UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY MADISON | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23CV16476 |
| | ) | |
| | ) | Hon. Honorable Manish S. Shah |
| CREATIVE WERKS, LLC & | ) | |
| STEVEN SCHROEDER, Individually | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Creative Works LLC ("Creative Werks") and Steve Schroeder ("Schroeder"), by their attorneys, Dickinson Wright, PLLC submit their Memorandum of Law in Support of Its Motion for Summary Judgment, and in conjunction with the Defendants' Statement of Undisputed Facts, state as follows:

**INTRODUCTION**

Plaintiff, Mary Madison ("Plaintiff" or "Madison") raises claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, against her former employer, Creative Werks. Plaintiff asserts that she was discriminated based on her sex and her race and that she was retaliated against for engaging in protected activities.

Summary judgment is proper in favor of the Defendants because Plaintiff cannot prove all of the necessary *prima facie* elements of the statutes in question. In particular, (a) Plaintiff asserts there to be *indirect* evidence of discrimination by virtue of her being treated differently than a different (allegedly similarly situated) employee, her supervisor, but Plaintiff cannot prove that element; and (b) she asserts adverse employment action for protected actions, but cannot not establish she engaged in any protected actions prior to the adverse employment actions at issue.

1

I.      **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(c), a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) does not require the moving party negate the opponent's entire claim, but rather mandates entry of a summary judgment against a party if it "fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990); *Celotex*, 477 U.S. at 322. A mere scintilla of evidence in support of a non-movant's position or evidence that is merely colorable, does not preclude summary judgment, rather there must be "significantly probative" evidence to support each *prima facie* element.. *Anderson v. Liberty Lobby*, 7 U.S. 242, 248 (1986). The moving party may satisfy its burden by showing the court there is an absence of evidence on an issue on which the non-movant has the burden of proof. *Id.*

II.     **ELEMENTS OF TITLE VII AND §1981**

Title VII prohibits discrimination "against any individual….because of such individual's race . . ." 42 U.S.C. §2000e-2. To establish a prima facie case of discrimination under Title VII, a plaintiff must offer evidence that: (1) she is a member of a protected class, (2) her job performance met the employer's legitimate expectations, (3) she suffered adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably. Civil Rights Act of 1964, S 701, 42 U.S.C.A. S 2000e; *Gates v. Caterpillar, In*c., 513 F.3d 680, 690 (7th Cir. 2008); *Bratton v. Roadway Package System, Inc.,* 77 F.3d 168, 176 (7th Cir. 1996).

Similarly under 42 U.S.C. §1981, in order to prevail a retaliation claim, Plaintiff has the burden of proving that: (a) she engaged in an activity protected by the statute; (b) she suffered an

2

adverse employment action; and (3) there is a casual link between the protected activity and the adverse employment action. *Glese v. City of Kankakee,* 71 F.4th 582, 590 (7th Cir. 2023). The filing of an official complaint with an employer may constitute statutorily protected authority under Title VII. *See e.g., Anderson v. Off. of Chief Judge Cook Cnty.*, Illinois, 66 F. Supp. 3d 1054, 1067 (N.D. Ill. 2014).

Here, the operative facts alleged by Plaintiff are identical for each statute, and the elements of her claims and the methods of proof are essentially identical under Title VII and §1981. *See* e.g, *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 176 (7th Cir. 1996); *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir. 1993). Under either statutory scheme, if plaintiff alleges a *prima facie case*, an employer may produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action (i.e. not pretextual). *Anderson v. Street*, 109 F.4th, 646,653 (7th 2024) *citing Glese*, 71 F.4th at 590; *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1992).

If A plaintiff can make out a *prima facie* case on these factors, the burden shifts to the defendant to offer a permissible, nondiscriminatory reason for the adverse employment action. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (an employer's reasons for an adverse employment action need not be wise or correct.); *McDonnell Douglas*, 411 U.S. 792, 802–03 (1973). The *McDonald Douglas* analysis applies equally to Plaintiff's claims under Title VII and §1981. *Montgomery*, 626 F.3d at 389.; *McGowan*, 581 F.3d at 579; *Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 591-92* (7th Cir. 2008); *Herron v. DaimlerChrysler,* 388 F.3d 293, 299 (7th Cir. 2004). The pretext analysis focuses on whether the reason was honest, not whether it was accurate or wise. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007); *Jackson v. E.J Brach Corp.,* 176 F.3d 971, 82-83 (7th Cir. 1999) (the focus on pretextual inquiry is whether the employer's stated reason

3

was honest, even if it was foolish or trivial). Notwithstanding the shifting burdens, Plaintiff bears the ultimate burden of establishing that the Defendant intentionally discriminated against her on the basis of her race or sex. *McGowan*, 581 F.3d at 579-80.

With respect to Plaintiff's burden of proving discrimination, there are two means: direct or indirect evidence. *McDonald Douglas Corp*, 411 U.S. at 804 (*the "indirect method"*); *Chaib v. Ind.*, 744 F.3d 974, 981-82 (7th Cir. 2014) (direct evidence example would be an admission by Defendant); *Montgomery*, 626 F.3d, at 393. Under the indirect method (as pled in this case), Plaintiff must establish that she was treated different than a similarly situated employees who engaged in similar actions, who are not in her protected class…however similarly situated individuals must be very similar indeed. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("similarly situated," comparators must be "prima facie identical in all relevant respects"). To prove that other employees are similarly situated, Plaintiff is required to point to individuals who have dealt with the same supervisor, haven been subject to the same standard, and *engaged in the same conduct* without any mitigating or distinguishing circumstances. *Anderson v. St.*, 104 F.4th 646, 653 (7th Cir. 2024). The allegedly comparable employee must have engaged in *materially similar condu*ct without mitigating circumstances, yet treated differently. *Herron*, 388 F.3d at 301 (plaintiff's case cannot be proved if comparable did not engage in the same actions as plaintiff.). If an alleged comparable employee *did not engage in similar conduct* to the Plaintiff, then they cannot satisfy the "similarly situated" employee method of proof. *See e.g., Ineichen v. Ameritech,* 410 F.3d 956, 961 (7th Cir. 2005); *Williams v. Gen. Mills, Inc.*, 926 F. Supp. 1367, 1377–78 (N.D. Ill. 1996) *citing Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996). Without a similarly situated employee, Plaintiff cannot present a *prima facie* case and her claim must fail."*Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009); *Gates v. Caterpillar, In*c., 513 F.3d 680, 690 (7th Cir. 2008) (conduct of comparable must be "functionally

equivalent").

## III. RELEVANT UNDISPUTED MATERIAL FACTS

Defendants do not dispute that Plaintiff belongs to protected classes, as her race is black and Plaintiff is female. Defendants further do not dispute that Plaintiff's suspension and/or subsequent termination constitute adverse employment actions. Defendants dispute the remaining *prima facie* allegations, and argue that Plaintiff cannot prove them here.

On September 27, 2022, Creative Werks hired Plaintiff to augment its food safety staff (SMF 1)[1]. Plaintiff's direct supervisor was Erich Zicher, a white male. (SMF 3 & 4). Upon Madison's start of employment, Plaintiff was given several assignments by her supervisor, Zicher, including but not limited to, revising existing food safety plans as part of an improvement process and participating in food safety audits. (SMF 5 & 22) Mr. Zicher, in turn, was supervised by Ron Sammeth, who held the title of COO, and Mr. Sammeth, in turn, reported to Steve Schroeder, Creative Werks' President. (SMF 2 & 4; Complaint ¶5)

Shortly after being hired, Plaintiff participated in an inspection that was noticed up by the FDA to be a "routine" inspection of its Bartlett site. (SMF 5-6). During the FDA inspection, which lasted two days, the FDA inspector notified Creative Werks of a customer complaint relating to a "Cheeto" product that had some discoloration. (SMF 22). The customer complaint shared by the FDA was over a year old, and related to a product that had previously been discontinued due to packaging costs. (SMF 7-9). Creative Werks, moreover, shared with the FDA inspector information about a similar complaint and showed an electronic file to the FDA inspector describing the remediation engaged in by Creative Werks to fix the issue in the past. (SMF 7).

---

[1] SMF refers to the Rule 56.1 Statement of Undisputed Facts filed contemporaneously with this Memorandum.

5

Madison, also participated in a routine customer safety audit/inspection, pursuant to which the customer audit result was "satisfactory" and with any follow up remediation completed and signed off by said client. (SMF 20-21). Additionally, Plaintiff was provided one of Creative Werks' Food Safety Plans, and requested to update three (3) other Food Safety Plans that were being utilized to improve them. (SMF 22).

## CREATIVE WERKS' SAFETY AND REGULATORY AUDIT HISTORY

Creative Werks has been a food packer/co-packer for more than 25 years, and is subject to several regulatory schemes relating to food safety. (SMF 11; Complaint at ¶¶ 3 & 8). In or around September of 2022, when Plaintiff was hired, Creative Werks employed approximately 260 workers, with an entire department consisting of approximately 41 employees devoted to its food safety regulatory compliance. (SMF 10 (a)-(c)). Creative Werks is/was subject to a litany of external inspections and audits, including but not limited to, SQF audits ("Safe Quality Food" audits), regulatory inspections/audits by the FDA and its designated representatives, as well as customer inspections/audits from the customers providing the food items packed by Creative Werks. (SMF 10-13). These overlapping third party audits and inspections occur throughout each year, covering Creative Werks' compliance with all food regulatory matters as well as particular customer requirements set forth in various contracts. (Id). By way of example, in 2022, prior to Madison's start of employment, Creative Werks had fourteen (14) independent/third party food safety audits, two (2) FDA audits and an SQF audit. (SMF 17-19), all of which reflected material compliance with all applicable regulatory schemes and client needs. (SMF 14, 15, 17, 19 & 20). In this respect, the FDA can issue 483 Notices in response to audits/inspection, connoting serious violations or material regulatory non-compliance issue. (SMF 11, 15). However, Creative Werks has never received a 483 Notice from any FDA inspection or audit. (Id.)

6

Creative Werks further deployed structured programs and training that develop employees' technical skills, increase awareness, manage risk, and drive increasing levels of excellence within the quality department's operation. (SMF 10 ). Additionally, Creative Werks participates in programs, including some in conjunction with its clients, for continuing improvement programs often leading to bi-weekly third party meetings and client agreements on any required remediations. (SMF 20 & 46). In short, Creative Werks has/had extremely sophisticated customers (some of whom are the largest confectionaries and food manufacturers in the World), who rely on Creative Werks to meet all food safety regulations, but who also require third party verifications (such as SQF audits), in addition to client audits and access to FDA audit inspection results. To its knowledge, Creative Werks has never lost any business or business opportunities due to any failure to meet applicable safety regulations or operations. (SMF 36, 39-40).

**Plaintiff's Alarmist and Unsupported Legal Analysis**

After working for Creative Werks for only a few weeks, and without being tasked by her supervisor Plaintiff initiated contact directly with the President of Creative Werks with a scathing attack on Creative Werks' *entire* regulatory compliance systems and efforts, its understanding of its regulatory compliance, its safety plans and operations, its manner of conducting business, and essentially asserting a complete failure to meet its customer needs…with the assertion of dire consequences due to these alleged failures. (SMF 23). In particular, on October 21, 2022, Plaintiff intercepted the Creative Werks' President, provided him a copy of a document that she authored entitled "Regulatory Business Problem" (hereinafter "Legal Analysis") and provided additional oral statements relating to and augmenting the assertions in the Legal Analysis. (Id and see Ex. 8). The Legal Analysis "Abstract" on its cover stated "*Creative Werks LLC's non-compliance to the relevant statutes, standard and regulations under FSMA is an inherent systematic and systemic issue throughout the organization that created irreparable harms for all stakeholders*." (Ex. 8, pg. 1).

7

Prior to giving the Legal Analysis to Creative Werks' President, Plaintiff failed to show or discuss the Legal Analysis to any her supervisors, including but not limited to Mr. Zicher. (SMF 24 & 26).

Upon first review, Madison's Legal Analysis and accompanying oral statements were materially irreconcilable with respect to first-hand information and beliefs held by Creative Werks' management team, and the purported risk issues raised by Madison were wholly inconsistent with Creative Werks' history, culture, understanding of regulations, and reflected Madison's wholesale disregard for objectively verifiable data. (Schroeder Aff., ¶ 36). Creative Werks did not view the Legal Analysis and accompanying oral statements to the President to be a legitimate attempt to report on and/or to correct any real regulatory or safety compliance issues. Rather, in the estimation of Creative Werks, it demonstrated an irrational, alarmist, un-researched, unprofessional "hit" piece not in any way accurately reflecting the culture, operations, regulatory compliance or safety standards long and well implemented at Creative Werks. (See generally SMF 31-47). By way of example, the purported Legal Analysis and Plaintiff's oral statements:

(a) made sweeping conclusions about a total failure of regulatory compliance that Creative Werks knew to be false and misleading (SMF 31, 35, 36, 37, 39 & 46);

(b) contained conclusions about prior loss of a material customer due to regulatory compliance that was untrue and un-researched (SMF 36-38);

(c) contained exaggerated and alarmist "purported" impacts from a minor and past packaging discoloration issue where no parties even sought medical attention (i.e. the "Pepsi Cheeto" product) (SMF 32, 37, 42 – 44);

(d) wholly ignored and contradicted the results of dozens of third party food safety audits and inspections when assessing Creative Werks' regulatory compliance (SMF 13-14, 17-19, 20, 35, 39, 46, 48 & 53)

(e) raising a specter of criminal liability without any reasonable or rational context for that

8

issue to be raised (SMF 44)

(f) asserting the existence of breaches of contractual liabilities based on shoddy research, a lack of any contract reviews, and by grossly misrepresenting the outcome of a client audit (which was deemed "satisfactory" by the client; (SMF 33 & 46)

(g) asserting legal theories such as fiduciary duties and legal statements about statues of limitations that were not contextually relevant and otherwise incorrect statements of the law; (SMF 34);

(h) drawing conclusions and criticizing Creative Werks' food safety plan, when Madison reviewed only one (1) out of four (4) safety plans that Creative Werks had in place (SMF 47);

(i) asserting that food safety audits conducted by the FDA and other third party auditors could not be relied upon and that "they do not necessarily know what they are doing" and that only Madison was capable of making such determinations (SMF 48-49);

(j) asserting that she could not rely on FDA inspections because "[She] did not know what was being written down" even though Creative Werks (and other subjects of FDA investigations) are given detailed findings by the FDA inspectors (SMF 53);

(k) arguing that Creative Werks should not/cannot rely on representations made by Creative Werks' customers regarding the foods prior supply chain even though Creative Werks disagreed with that regulatory conclusion (SMF 52);

(l) making statements about the food safety culture, philosophy and regulatory compliance by Creative Werks that were deemed materially false, irrational and alarmist (SMF 31);

(m) raised the specter of potential deaths, loss of employment and economic stability of the company with no context, analysis or basis to assert such risks (SMF 32);

(n) grossly mischaracterizing the results of an FDA audit and a client audit (SMF 33, 44, 46 & 53);

(o) opining upon potential civil liabilities with respect to a product that had been discontinued prior to Madison's employment with Creative Werks and which had never been the subject of any complaint where medical attention was sought nor reason to believe there was any danger to any customer of same (SMF 41-42);

(p) asserting that her supervisor, Zicher, "provided too much information to the FDA" which is contrary to other assertions of lack of transparency made by Maddison (SMF 52);

(q) recommending a corporate restructuring with an ostensible purpose of limiting client liability with its customers, reflecting an area outside of Madison's expertise and without review of any contracts with Creative Werks customers to explore if that would be antithetical to customer contracting requirements (SMF 45);

(r) raising un-researched and unsubstantiated assertions of an x-ray detector used on a food packing line, having no background with respect to same, having engage in no research with respect to the particular equipment at issue, not being aware of the Company's following the manufacturer's recommended maintenance, and other written policies in place with respect to same, and concluding without reasoning that its "Generally Recognized As Safe" risk designation utilized by Creative Werks was wrong. (SMF 54); and

(s) failing to provide the Legal Analysis to her supervisors for vetting, chain of command and fact-checking prior to leap-frogging the report to the President (SMF 26 &50).

Based on the unprofessional Legal Analysis and oral statements made to Schroeder, Plaintiff was initially suspended with pay on October 26, 2022 (SMF 27). Madison was subsequently interviewed about her Legal Analysis and oral statements, with her lawyer in her presence, on November 8, 2022, after which her suspension was changed to 'without pay.' (SMF 28). Plaintiff was subsequently terminated on January 17, 2023, through communications to her attorney. (SMF

28). Creative Werks denies that Madison's suspension and/or termination were in any way related to her sex or race, nor was it retaliatory for any protection actions. (SMF 73).

*After* she had already been terminated, Plaintiff sent a written communication to Creative Werks seeking to justify her Legal Analysis, and in closing, *asserted for the first time*, that she believed that Creative Works was discriminating and retaliating against her. (SMF 29). Subsequently, Madison filed an EEOC action and the instant action. (Complaint at 7(a)(i).)

### Defendants Have Articulated A Legitimate Basis for Plaintiff's Suspension and/or Termination

For the reasons set forth by Defendants, Madison's actions (arising out of her Legal Analysis and associated oral statements) were reckless, unprofessional, demonstrative of an employee failing to conduct research to support material and serious allegations, reflected work product rife with errors, and seemingly inconsistent with the skill set required by an employee holding her role. (See general Zicher Aff. 28-41; Schroeder Aff. 10-31). Madison was told that the statements in her Legal Conclusion and oral statements to Schroeder was the basis of her adverse employment actions before being terminated. (Ex. 10). Having articulated a legitimate, non-discriminatory reason for the challenged employment action, Madison has the burden to demonstrate that the purported basis of the adverse employment action was pretextual. *Gates,* 513 F.3d at 690; *McDonnell Douglas*, 411 U.S. at 802–03; *Montgomery*, 626 F.3d at 389.

Madison likely does not, nor does she need to agree with Creative Werks' interpretation of her Legal Analysis and related oral comments, as to whether they served as a valid basis upon which to suspend or terminate her. Her belief that she was performing satisfactorily does not create a material issue of fact for a jury to consider. *See Lauth v. Covance, In*c., 863 F.3d 708, 715–16 (7th Cir. 2017) (plaintiff's belief that she was performing job adequately is not relevant to the question of whether employer believed it had a legitimate, non-discriminatory basis to terminate

11

employee). Rather, the analysis of this issue focuses on whether the reason set forth by Defendants was wholly pretextual (i.e. a lie) and it does not focus on whether the pretextual reason was wise or accurate. See e.g., *McGowan,* 581 F.3d at 579; *Jackson,* 176 F.3d at 82-83 (employer's stated reason can even be foolish or trivial, if honest). Here, Plaintiff has no direct evidence (other than her own belief) that Defendants are lying about the basis of her suspension or termination.

### Madison Cannot Otherwise Prove Discrimination Through Indirect Evidence

Madison did not plead nor can she prove any *direct* evidence of discrimination. Rather, she relies upon the *indirect* method of proof, asser*ting that a single* Creative Werks employee was treated more favorably than her. (SMF 55; Compl. at ¶87 & 109); see *McDonald,* 371 F.3d at 1002; *Anderson,* 104 F.4th at 653; *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Specifically, Plaintiff would argue that her supervisor, Zicher was the *sole* employee comparator, ostensibly engaged in similar activities and was treated differently. (Id.) Madison has no means of proving these allegations.

Here, the actions of Plaintiff at issue were her drafting and presentation of a Legal Analysis and oral statements to Creative Werks' President (see Complaint at ¶87 & ¶109)—which was an ostensible comprehensive analysis of Creative Werks' regulatory compliance and associated risks….which, as noted above herein, consisted of a series of alarmist assertions and unprofessional work product. Plaintiff has no evidence or knowledge of any such written reports or oral reports prepared by Zicher to Schroeder and/or the Company in any way similar to what Madison drafted and tendered. (SMF 56-70).[2] Indeed, Madison is not aware of *any* instances where Zicher made oral

---

[2] Madison is not aware of any written reports prepared by Zicher and given to Schroeder or the Company. (Madison Dep. 127: 16-25, 128: 1- 6). Rather, Madison can only testify as to oral statements made by Zicher to her or to the FDA investigator and a single email relating to the FDA inspection (SMF 56 & Ex. 3). Zicher's email is a mere factual recount of events occurring at the September 2022 FDA audit, that were not remarkable, and he draws no conclusions about a myriad of Company-wide safety issue, failures to follow the law, possibility of any criminal sanctions,

12

or written comments to the Company or Schroeder about any potential criminal liabilities of the Company with respect to failure to follow FDA regulations (SMF 57); nor assertions reflecting any systematic failure of the Company to comply with FSMA (SMF 65-67); nor reporting of any breaches of fiduciary duties to customers (SMF 59 ); nor expressing concerns about the x-ray machine and the need to exceed manufacturer recommended maintenance (SMF 60); nor expressing a belief that the Company lacked any satisfactory food safety plan and lacked any cognitive recognition of same (SMF 62); nor alleging the Company had never interpreted, analyzed and/or applied relevant food safety statutes (SMF 58, 63); nor asserting that the Company encouraged a disregard for the law (SMF 64); nor asserting that Creative Werks had a culture opposed to regulatory transparency (SMF 68); nor implying that Creative Werks and its officers were facing any liability for criminal liability in association with its operations, including with respect to a minor food discoloration issue where no medical attention was sought and where the FDA accepted Creative Werks remediation of same (SMF 57). Indeed, Madison is not aware of any written or oral reports by and between Zicher and Schroeder or the Company other an banal communications, like reporting a summary of the September 2022 FDA inspection.

  Here, Plaintiff is unable to establish that Zicher was similarly situated to her, as there is nothing similar about her actions and his actions (or lack thereof). See *McDonald,* 371 F.3d at 1002 ("similarly situated," comparators must be "prima facie identical in all relevant respects"). In this respect, Plaintiff cannot demonstrate or prove that Zicher ever engaged in the same "conduct" that led to her suspension/termination. See e.g., *Anderson,* F.4th at 653; *Herron*, 388 F.3d at 301 (plaintiff's case cannot be proved if comparable did not engage in *the same actions* as plaintiff.);

---

breaches of contracts, breaches of fiduciary duties, potential or actual loss of business, or anything related to the Legal Analysis of Madison. (See Ex. 3 and Ex. 8). Moreover, Zicher never made any statements of the nature that Madison made in her Legal Analysis. (SMF 56).

13

*Ineichen,* 410 F.3d at 961 (if an alleged comparable employee did not engage in *similar conduct* to the Plaintiff, then they cannot satisfy the "similarly situated" employee method of proof); *Williams;* 926 F. Supp. at 377–78 (N.D. Ill. 1996). Without a similarly situated employee, Madison cannot present a *prima facie* case and her claim must fail." *Antonetti,* 563 F.3d at 592 (7th Cir. 2009).

Accordingly, Plaintiffs Title VII discrimination claims must be dismissed upon this request for summary judgment.

### Madison Cannot Proof Retaliation for Any Protected Activities

"Title VII protects employees 'from retaliation for complaining about the types of discrimination it prohibits.'" *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009); 42 U.S.C. §2000e-3(a). In relevant part, Title VII renders unlawful the discrimination against any employee for opposing an unlawful employment practice; i.e. a protected activity. 42 U.S.C. § 2000e–3a; *Gates,* 513 F.3d at 686.

Here, the only protected activity specifically raised by Madison in her Complaint, is an allegation that after Creative Werks received Madison's Legal Analysis and conducted its own internal investigation regarding same, that Madison was allegedly engaged in protected activities by virtue of having her lawyer present when she participated in that investigation. (Compliant ¶81).[3] However, the Seventh Circuit held that participation in a purely *internal* investigation does not qualify as protected activity under Title VII unless the investigation is connected to or pursuant to a pending EEOC investigation. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 745 (2010) (moreover, "investigation" which "section 2000-e-3 refers does not include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII.").

---

[3] Plaintiff also asserts that her tendering of the Legal Analysis was also a protected activity pursuant to which she was allegedly retaliated against. (Complaint at 78). However, there is no reference or inference to any discrimination claims or threats of claims by Madison, in any respect, let alone based on sex or race. (Ex. 8). Thus, her Legal Analysis cannot serve as a protected activity as it relates to any Title VII or Section 1981 actions.

Accordingly, the specific protected activity alleged by Plaintiff in her complaint is not sufficient to assert a retaliation claim.

Notwithstanding, there is one instance of Plaintiff, at least asserting there to have been discrimination and/or retaliation of her, prior to filling her EEOC action, however, that is reflected in a letter directed to Creative Werks six (6) days after Madison has already been terminated and approximately two (2) months after having been suspended without pay. (SMF 27-30). Prior to this time, Plaintiff had filed no complaint, of any kind against Defendants nor did she assert any discrimination or retaliation. (SMF 27 – 30 & Ex. 12; Complaint ¶95). Indeed, "[i]t is axiomatic that an employer cannot 'retaliate' against an employee for conduct in which the employee has not yet engaged." *Giese v. City of Kankakee*, 71 F.4th 582, 591 (7th Cir. 2023); *citing Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 933 (7th Cir. 2017). Accordingly, Plaintiff cannot prove her claim of retaliation.

## CONCLUSION

For the foregoing reasons, Defendants, Steven Schroeder and Creative Werks, respectfully request this Court grant their Motion for Summary Judgment and enter a judgment in their favor and grant such other relief as this Court deems just and appropriate, including but not limited to their costs.

        **Respectfully submitted,**
        **Creative Werks LLC and Steve Schroeder**

By:   *s/Jon D. Cohen*
      One of their attorneys

Jon D. Cohen, ARDC 6206666
Dickinson Wright PLLC
55 W. Monroe St., Suite 1200
Chicago, Illinois 60603
(312) 641-0060
jcohen@dickinsonwright.com