

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MARY MADISON,
Plaintiff,

v.

CREATIVE WERKS, LLC,
and Steve Schroeder, individually,
Defendants.

Case No. 23CV16476
Honorable Judge Manish S. Shah

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

## INTRODUCTION

This employment case concerns violations of Title VII of the Civil Rights Act of 1964, the Food Safety Modernization Act ("FSMA"), 42 U.S.C. § 1981, and 42 U.S.C. § 1985, and does not involve any genuine dispute of material fact.

Defendants' own admissions confirm Plaintiff's protected activities, adverse employment actions, satisfaction of legitimate expectations, and disparate treatment compared to similarly situated employees. Defendants' generalized denials, insufficient affirmative defenses, and admissions of key facts remove any genuine issue of material fact, entitling Plaintiff to judgment as a matter of law.

Therefore, Plaintiff respectfully moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The pleadings, judicial admissions, and incorporated materials

1

demonstrate that Plaintiff has sufficiently established claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1985(3).

## LEGAL STANDARD

Under Rule 12(c), a motion for judgment on the pleadings is appropriate where the pleadings disclose no material issue of fact and the moving party is entitled to judgment as a matter of law. See *Adams v. City of Indianapolis,* 742 F.3d 720, 727-728 (7th Cir. 2014). Additionally, affirmative defenses must meet the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), providing "fair notice" and factual plausibility. Defenses raised only by bare assertions are insufficient.

In considering a Rule 12(c) motion, courts may consider the complaint, the answer, any written instruments attached as exhibits, and any documents incorporated by reference. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452–53 (7th Cir. 1998).

## STATEMENT OF UNDISPUTED FACTS

See Plaintiff's Statement of Undisputed Material Facts filed concurrently.

## ARGUMENT

**I. PLAINTIFF ADEQUATELY STATES CLAIMS UNDER TITLE VII, 42 U.S.C. § 1981, AND § 1985(3)**

**A. Title VII Retaliation and Discrimination**

Protected activities under Title VII and FSMA include raising internal complaints regarding unlawful conduct. *Crawford v. Metro. Gov't of Nashville & Davidson Cty.,* 555 U.S. 271, 277 (2009).

2

Defendants acknowledge that Plaintiff engaged in statutorily protected activity by raising concerns regarding food safety, race, and sex disparities, including the FDA investigation and *FDA audit (Dkt. #1- Exhibit 7 and Dkt. #53, pgs. 20 and 23-25 ¶60, 61, 75, 77, 78 & 81)*, drafting the risk analysis (Dkt. #53 pg. 19 ¶58), and having a conversation with Defendant Schroeder regarding the Risk Analysis and other compliance issues (Dkt. #53 pg. 12 ¶26 and pg. 20 ¶60-61), and notifying Defendants of adverse employement actions, disparate and retalitory treatment (Dkt. #53 pg. 26 ¶84 & pg. 29 ¶95).

Plaintiff also objected to exclusion from internal investigations and was compelled, as a condition of employment, to meet with an alleged independent fact-finder (Dkt. #53 pg. 25 ¶82), who was, in reality, the Defendants' outside counsel (Dkt. #53 pg. 28 ¶93). In the case of Burdine the Court reasoned that when an employer's proffered justification, such as compelling Plaintitff to meet its outside counsel, turns out to be false, it "is itself equivalent to a finding that the employer intentionally discriminated." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981) Additionally, Defendants admitted in their pleadings that they were notified of Plaintiff's concerns regarding disparate treatment related to retaliation, sex, and race discrimination (Dkt. #53 pg. 26 ¶84 & pg. 29 ¶95), reinforcing their awareness and deliberate inaction in addressing these violations.

Further, Defendants acknowledge in their pleadings that Plaintiff was subjected to multiple adverse actions shortly after engaging in protected activity. These include:

- Exclusion from internal investigations (Dkt. #53 pg. 24 ¶77) further obstructing Plaintiff's ability to engage in fair proceedings;
- Paid suspension for discussing concerns and presenting the Risk Analysis to Defendant Schroeder (See Suspension letter-Dkt. #1; See also Dkt. #53 pg. 23 ¶75); and

3

- Denial of sign-on bonus compensation (Dkt. #53 pg. 25 ¶79; See also Dkt. #1 pg. 61).

Defendants' admissions reinforce disparate treatment, pretext, and retaliatory intent, further supporting Plaintiff's claims.

These adverse actions satisfy the standard articulated in *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006), where retaliation encompasses any employer action that would dissuade a reasonable worker from making or supporting a charge of discrimination. Further, Plaintiff has established the but-for causation through the temporal proximity[1] of the adverse actions taken and Defendants' direct admissions and pretextual explanations. *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338, 352, 362 (2013).

**B. 42 U.S.C. §§ 1981 and 1985(3) Claims**

Plaintiff also asserts conspiracy claims under §§ 1981 and 1985(3), which require proof of a conspiracy motivated by racial animus and an act in furtherance of that conspiracy causing injury. *Smith v. Bray,* 681 F.3d 888, 901 (7th Cir. 2012).

Defendants' pleadings and admissions support a pattern of coordinated acts, including: Following Plaintiff's protected activity, Defendants, their Vice President of People (HR), and comparator Zicher engaged in concerted retaliatory measures, including procedural obstructions, disparate treatment, and other adverse employment actions, reinforcing pretext and discriminatory intent, when:

1. They engaged in or participated in an internal investigation without Plaintiff's involvement (Dkt. #53 pg. 24 ¶77) further obstructing Plaintiff's ability to engage in fair proceeding, against Defendants' own policies, that resulted in alleged unfounded

---

[1] Plaintiff was suspended just three business days after speaking with Defendant Schroeder. Shortly thereafter, Plaintiff's suspension was changed to unpaid following Plaintiff's objection to seeing outside legal counsel and request for legal representation (Dkt. #53, pg. 25 ¶81).

4

allegations (Dkt. #53 pg. 24 ¶76) that were not placed in Plaintiff's personnel file as required (Dkt. #53 pg. 28 ¶92). This deliberate exclusion undermines procedural fairness, raises concerns of bias, collusion, and pretext, and reflects a failure to provide Plaintiff with a meaningful opportunity to respond. Such actions further reinforce Defendants' retaliatory and discriminatory intent, highlighting fundamental due process violations

2. Defendants and their Vice President of People (HR) collaborated to orchestrate an internal investigation involving an external source, presenting it as an interview with an independent fact-finder—solely for Plaintiff (Dkt. #53 pg. 23 ¶75) However, Plaintiff later discovered that the purported fact-finder (Dkt. #53 pg. 25 ¶82) was, in reality, Defendants' legal counsel, who then asserted privilege to conceal the results (Dkt. #53. pg. 28 ¶93). This reinforces pretext and reflects a deliberate effort to obstruct transparency, further undermining the integrity of the investigation.

3. Defendants further advanced their scheme by hiring an expert witness[2] to falsely impugn Plaintiff's competence and fabricate a false narrative as a subsequent remedial measure (Dkt. 53 pg. 30 ¶98). This manipulation of expert testimony reinforces pretext, retaliatory intent, and a concerted, deliberate effort to undermine Plaintiff's credibility.

4. Defendants allowed comparators like Zicher to commit serious company and public policy violations (DKT. #1, pg. 18, ¶49, pp. 36–52 and pp. 72–78) without discipline (DKT. #53 pg. 27 #86 and pg. 30 ¶99), demonstrating disparate treatment, reinforcing

---

[2] Defendants' expert witness—unqualified in FSMA and Regulatory Food Science—falsely claimed compliance before the Department of Labor, while Plaintiff's comparator, Zicher, contradicted these claims, stating that they had hired Plaintiff to write the Food Safety Plans. Plaintiff's rebuttal and expert testimony further exposed inconsistencies, pretext, and concealment of non-compliance. Beyond FSMA misrepresentation, Defendants engaged in retaliation, including unjust discipline, reputational harm, litigation disadvantages, and procedural obstruction against Plaintiff's federally protected rights. Ultimately, Defendants abandoned their expert witness, further exposing contradictions in their defense and reinforcing Plaintiff's claims of FSMA failures and retaliatory misconduct.

pretext, and unlawful discrimination (Dkt. 53 pg. 26 ¶84 and pg. 29 ¶95). Defendants' failure to impose equal consequences highlights inconsistencies in enforcement, further supporting Plaintiff's claims of bias and retaliatory intent. *Humphries v. CBOCS West, Inc.,* 474 F. 3d 387, 407- 7th Circuit 2007).

5. As a result of Defendants' calculated schemes and coordinated actions, Plaintiff endured unjust suspensions (paid and unpaid), disparate treatment, litigation disadvantages, due process violations, emotional distress, reputational harm, and denial of civil rights, all of which obstructed access to justice. (Dkt. #53 pg. 26 ¶84 and pg. 29 ¶95)

6. Defendants' misconduct extended beyond Plaintiff, resulting in wider societal harms, including the introduction of adulterated and deleterious food products into commerce, as evidenced by the FDA investigation and complaints (DKT. #1, pp. 36–52 & pp. 72–78 and Dkt #53 pg. 7 fn. 3 and pg 9 ¶14), further underscoring their reckless disregard for legal and ethical obligations.

Defendants' coordinated actions establish the necessary elements of conspiracy—agreement, overt acts, and intentional harm—resulting in Plaintiff's injury. Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971); See also, *Adickes v. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

**II. Defendants' Affirmative Defenses Are Deficient Under Rule 8(c) and Waived**

Federal Rule of Civil Procedure 8(c) requires affirmative defenses to be pled with a sufficient factual basis to give fair notice. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants assert defenses such as same actor inference,

after-acquired evidence, same decision, legitimate reasons and mixed motive, and attempt to limit damages and failure to plead retaliation under Title VII without a factual basis: **1. Same Actor Inference**

Defendants allege the same actor defense without identifying the actors or the circumstances of adverse actions. This conclusory assertion is insufficient. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Further, this issue is moot, as there is no evidence to support that any adverse action was taken by Defendants other than Plaintiff's October 26, 2022, suspension letter (Dkt. # 53 pg. 28 ¶92).

**2. After-Acquired Evidence**

Defendants have not provided specific details regarding the allegedly discovered evidence, its timing, or its relevance to Plaintiff's adverse employment actions, including the alleged termination. Defendants claim that Plaintiff was terminated, yet they are unable to provide any evidence to support this assertion (Dkt. #53, pg. 28 ¶92) and, in fact, have outright denied terminating Plaintiff in their pleadings (Dkt. #53, pg. 3 ¶11). This contradiction further undermines their defense, rendering it fatally deficient and implausible under Iqbal and Twombly pleading standards (Iqbal, 556 U.S. 662, 678 (2009)).

**3. Same Decision**

Defendants' assertions regarding Plaintiff's alleged "alarmist" behavior and "unprofessional," "misstated," and "error-filled" reporting are entirely unsupported by contemporaneous documentation. Defendants' own admissions in Dkt. #53 pg. 28 ¶92 confirms that no legitimate, documented basis for these allegations exists, further undermining their credibility. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

7

**Failure to Identify Any Specific Violations by Plaintiff**

Defendants have failed to reference or provide specific company policies or procedures that Plaintiff allegedly violated, including chain-of-command expectations or other inferred infractions related to Plaintiff's risk analysis and conversation with Defendant Schroeder. *Teamsters,* 431 U.S. at 341-42, 97 S.Ct. at 1857-58– Furthermore, Defendants' own admissions (Dkt. #53 pg. 19 ¶55-57 & Fn. #88) confirms that they had an open-door policy—a fact also corroborated in the FDA report (Dkt. #53, pg. 19, Fn. ¶8). This admission directly contradicts any assertion that Plaintiff failed to follow a hierarchical reporting structure, further demonstrating the inconsistency of Defendants' defenses.

**Improper Use of Personnel Records and Lack of Documentation**

Under the Illinois Personnel Records Review Act (820 ILCS 40/4), employers cannot use personnel documents outside an employee's official file in court. Defendants failed to provide contemporaneous documentation and admitted that no documents had been withheld from Plaintiff's personnel file (Dkt. #53, pg. 28, ¶92), and any attempt to introduce undisclosed records would violate statutory protections under the Illinois Personnel Records Review Act.

Courts reject reliance on undocumented allegations in employment actions. In Muldrow v. City of St. Louis, 601 U.S. —, 144 S. Ct. 967 (2024), the Court reaffirmed that employment decisions require legitimate, documented reasons. Similarly, Ricci v. DeStefano, 557 U.S. 557 (2009) held that discarding or withholding records without strong evidence violates Title VII

Violating record retention regulations creates a presumption that missing records contain adverse evidence (Latimore v. Citibank, 151 F.3d at 716). Additionally, the Supreme Court prohibits conclusory statements without factual support, which applies to insufficient affirmative defenses under Rule 8(c), such as Defendants (Ashcroft v. Iqbal, 556 U.S. at 678).

8

**4. Alternatively Mixed Motive**

Defendants' defense of a legitimate, non-discriminatory basis for Plaintiff's termination is fatally flawed, lacking supporting evidence (Dkt. #53, pg. 28, ¶92). Additionally, it fails to comply with Rule 8(c) due to improper pleading and lack of specificity, rendering it legally insufficient. Defendans attempt to limit damages is factually unsupported and legally deficient (Heller Financial, Ibid), and their failure to preserve arguments and incorrect pleading further invalidate their defenses (Reed, 915 F.3d at 478).

Affirmative defenses require factual allegations, and Defendants' failure to specify policy violations makes them legally inadequate (Heller, 883 F.2d at 1294).

**III. Failure to Defend and Waiver of Affirmative Defenses**

Defendants failed to affirmatively plead any defenses against Plaintiff's hostile work environment and 42 U.S.C. §§ 1981 and 1985(3) claims, thereby waiving those defenses under Rule 8(c). Courts routinely strike untimely or vague defenses, and failure to properly assert affirmative defenses constitutes waiver (Venters v. City of Delphi, 123 F.3d 956, 967 (7th Cir. 1997); Kontrick v. Ryan, 540 U.S. 443, 458 (2004); Castro v. Chicago Housing Authority, 2020 WL 2836776 (N.D. Ill. June 1, 2020)).

Additionally, Defendants assert that Plaintiff failed to plead retaliation under Title VII, yet this defense is barred as a matter of law. By filing an Answer without first moving under Rule 12(b)(6), Defendants waived any challenges to the sufficiency of the Complaint pursuant to Rule 12(h) (Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Also, Defendants' own admissions contradict this claim. Further, Title VII's anti-retaliation provision

protects Plaintiff's complaints and the ensuing adverse actions, making Defendants' argument legally untenable.

Further, Defendants did not raise an alternative mixed-motive defense, leaving no viable justification for their adverse actions against Plaintiff. As a result, Defendants have forfeited and waived this defense against the issues presently before the Court (Kontrick, 540 U.S. at 458), further undermining their argument and reinforcing pretext and retaliatory intent.

Given Defendants' failure to timely assert a defense, Plaintiff respectfully moves to strike these affirmative defenses and bar Defendants from introducing them later in litigation.

## IV. DEFENDANTS' JUDICIAL ADMISSIONS BAR THEIR DEFENSES

Defendants' admissions in the pleadings — including protected activity, adverse actions, lack of discipline, and comparator misconduct — are judicial admissions, binding them and removing these issues from factual dispute. *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

**Here, Defendants admit:**

1. Defendants denied terminating Plaintiff (Dkt. #53 pg. 3 ¶11);

2. Plaintiff reported food safety, race, and sex claims (Dkt. 53 pg. 26 ¶84 and pg. 29 ¶95);

3. Plaintiff's personnel file had neither negative performance reviews nor termination documents (Dkt. #53, pg. 28 ¶92).

4. Defendants withheld no documents from Plaintiff's personnel file (Dkt. #53, pg. 28, ¶92); 5. Comparator Zicher was not subject to discipline (Dkt. 53, pg.27 ¶86 and pg. 30 ¶99). These admissions are not exhaustive, but they fatally undermine Defendants' asserted legitimate bases for adverse action, corroborating pretext and disparate treatment.

## V. PLAINTIFF MET LEGITIMATE EXPECTATIONS

Defendants hired Plaintiff for her subject matter knowledge in quality and regulatory matters (Dkt. #53, pg. 22, ¶71; pg. 7, ¶8) but failed to provide contemporaneous documentation of poor performance or termination (Dkt. #53, pg. 28, ¶92). Under the Illinois Personnel Record Review Act (820 ILCS 40/4), employers cannot retroactively add records to personnel files.

Defendants' unsupported allegations—calling Plaintiff "alarmist," "unprofessional," and her report "error-filled" and "misstated"—contradict her clean personnel record (Dkt. #53, pg. 28, ¶92).

## VI. COMPARATOR EVIDENCE DEMONSTRATES DISPARATE TREATMENT

The FDA investigation, report, and consumer complaints—which Defendants admitted existed—confirm that comparator Zicher introduced adulterated and deleterious products into commerce (Dkt. #1, pp. 36–52 & pp. 72–78; Dkt. #53, pg. 7 fn. 3 & pg. 9 ¶14), violating 21 U.S.C. § 331(a). Consumer reports of illness following consumption further substantiate these violations (Dkt. #1, pp. 36–52 & pp. 72–78).

Despite these violations, Zicher faced no disciplinary action, nor was he required to meet with outside counsel, underscoring disparate enforcement of company and public policies and supporting Plaintiff's claims of bias and pretext (*Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 407 (7th Cir. 2007)).

The FDA report corroborates Zicher's submission of incorrect documentation—false information that was deemed "not easy to read or understand" and contained errors (Dkt. #1, pg. 50, ¶4), reinforcing negligence and failure to maintain regulatory standards. Courts recognize submission

11

of false information as more serious than other workplace misconduct (Hiatt v. Rockwell International Corp., 26 F.3d 761 (7th Cir. 1994)).

Plaintiff and Zicher performed analogous roles and were a part of the Defendants' core business operations—compliance group (Dkt. #53 pg. 6 ¶7). This included Food Safety, customer audits, FDA investigations, FDA audits, and FSMA compliance metrics. Both were subject to the same management scheme, raised similar concerns about food safety and regulatory compliance (Dkt. #53 pg. 30 ¶99), yet they were treated differently. Zicher sent emails regarding the September 28–29, 2022, FDA visit to Defendant Schroeder, VP of People Gretchen LeMay, and others, further demonstrating their parallel involvement in compliance oversight (Dkt. #53 pg. 12 ¶25).

Under FSMA mandates, all companies must ensure food safety and compliance, reinforcing the gravity of Zicher's violations. Legal precedents—including the Park Doctrine and the Blue Bell Ice Cream case—confirm that Plaintiff and Zicher were held to the same standards, governed by FDCA as amended by FSMA (*Coleman v. Donahoe,* 667 F.3d 835, 849 (7th Cir. 2012)).

Despite these violations (Dkt. #1, pp. 36–52 & pp. 72–78) and other non-conformances, Defendants failed to impose disciplinary measures or ensure equal treatment (Dkt. #53 pg. 26 ¶84 and pg. 29 ¶95), reinforcing disparate enforcement, pretext, and retaliatory intent (*Coleman v. Donahoe,* 667 F.3d 835, 846, 848 (7th Cir. 2012)). Defendants' own pleadings confirm that Zicher—Plaintiff's comparable—was not disciplined, further supporting disparate enforcement and pretext (Dkt. #53 pg. 27 ¶86 and pg. 30 ¶99).

In contrast, Plaintiff—who did not violate company or public policy—was suspended (Dkt. # 53 pg. 23 ¶75), subjected to different terms and conditions than Zicher, who was afforded an internal investigation and did not have to meet with outside counsel (Dkt. #53 pg. 24 ¶77, and retaliated against when Defendants withheld the sign-on bonus (Dkt. #53 pg. 25 ¶79), and

converted her suspension from paid to unpaid, amounting to de facto termination for raising legitimate concerns pursuant to FSMA (Dkt. #53 pg. 24 ¶76) and other objections.

Defendants do not dispute that Plaintiff and Zicher were similarly situated, satisfying the comparator analysis under *Coleman v. Donahoe,* 667 F.3d 835, 846, 849 (7th Cir. 2012). Despite these clear similarities, Defendants failed to apply equal scrutiny or disciplinary measures, reinforcing disparate treatment, pretext, and retaliatory intent (Ibid at 848). These inconsistencies further demonstrate that Defendants selectively imposed adverse actions while shielding similarly situated employees, like Zicher, from accountability, further supporting pretext and bias in enforcement practices.

**SUMMARY**

Defendants failed to raise proper affirmative defenses under Rule 8(c) and provided no legitimate justification for their actions. Their admissions, contradictions, and reliance on pretext confirm unlawful discrimination and retaliation, not a valid business rationale (McDonnell Douglas, 411 U.S. at 792; Reeves, 530 U.S. at 148).

The Supreme Court holds employers liable for failing to prevent and correct workplace misconduct (Faragher, 524 U.S. at 789). Despite notifications of disparate treatment on November 8, 2022, and January 23, 2023 (Dkt. #53 pg. 26 ¶84 and pg. 29 ¶95), Defendants failed to take corrective action.

Defendants admitted that Plaintiff denied making unfounded allegations (Dkt. #53 pg. 24 ¶76), yet still pursued adverse employment actions based on those same allegations, exposing pretext for discrimination and retaliation. Instead of correcting their misconduct, Defendants escalated their discriminatory practices, acting willfully and with reckless disregard. They colluded with outside counsel to obstruct fact-finding, misusing attorney-client privilege to shield misconduct,

13

rather than addressing discrimination and ensuring food safety violations (EEOC v. CRST Van Expedited, 679 F.3d at 687; Swierkiewicz, 534 U.S. at 512).

Defendants, after being notified of violating Plaintiff's protected rights (Dkt. # 53 pg. 26 ¶84 and pg. 29 ¶95) acted in further contravention of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3) by subjecting Plaintiff to further retaliatory and discriminatory harm while protecting similarly situated comparator Zicher—who acted in contravention of FSMA—by introducing adulterated and deleterious foods into commerce under his leadership. Despite this serious regulatory breach, Zicher was not punished, subjected to adverse employment actions, or required to meet with outside counsel, further reinforcing Defendants' pretext and unlawful discriminatory intent.

Defendants' reckless and malicious concerted actions violated Plaintiff's protected rights through intentional discrimination and retaliation (Emmel, 95 F.3d at 637). Their misconduct caused irreparable harm to Plaintiff, customers, consumers, and society at large, making their egregious conduct so shocking that it demands immediate accountability (Perry, 126 F.3d at 1013).

Defendants weaponized expert testimony to undermine Plaintiff's credibility, justify their discriminatory narrative, and retroactively defend their actions, despite courts deeming such tactics legally insufficient (Burlington N., 548 U.S. at 68). Plaintiff countered with expert testimony and a personal rebuttal, discrediting their pretextual reasoning. Notably, Defendants abandoned this strategy after conflicting testimony from their expert, Plaintiff's expert, and Plaintiff's comparator exposed their discrimination.

**CONCLUSION**

Defendants failed to raise proper affirmative defenses under Rule 8(c) and provided no legitimate justification for their actions, relying instead on contradictions and pretext (McDonnell Douglas, 411 U.S. at 792; Reeves, 530 U.S. at 148). Their failure to rebut Plaintiff's allegations and continued silence regarding key discriminatory acts confirm that Plaintiff's claims are legally sufficient and uncontested (Faragher, 524 U.S. at 789).

Judgment on the pleadings is warranted where Defendants fail to set forth a viable defense, and the pleadings demonstrate no material factual dispute requiring further litigation (Venters, 123 F.3d at 967). Accordingly, Plaintiff is entitled to judgment pursuant to F.R.C.P. 12 (c).

And, for the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant judgment on the pleadings in her favor;
2. Strike Defendants' affirmative defenses, with prejudice;
3. Set a hearing on damages, and
4. Grant any further relief deemed appropriate.

Date: June 25, 2025 Respectfully submitted,

/S/ Mary Madison
9758 S Charles
Chicago, Il 60643
6152396684
Mdj123197@aol.com