

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MARY MADISON,

Plaintiff,

v.                            Case No. 23CV16476

                                   Honorable Judge Manish S. Shah

CREATIVE WERKS, LLC,

and Steve Schroeder, individually,

Defendants.

---

## PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois, Plaintiff Mary Madison submits the following Statement of Undisputed Material Facts in support of her Motion for Summary Judgment:

**I. General Pleading Deficiencies & Admissions (Relevant to all claims)**

1. Defendants denied in Dkt #53 pg. 5, Paragraph 1, allegations of the Complaint that Plaintiff is an African American female.

2. Defendants admitted that Plaintiff was employed but is no longer employed by the defendant. Dkt. #53 Pg. 2 ¶5

3. Defendants denied that they "terminated Plaintiff 's employment." Dkt. #53 p. 3, 11(b)

4. Defendants made vague and conditional Denials relative to ¶¶ 10, 18, 19, 20, 22, 54, 78, 83, 84, 94, 104, 107, 108, 109, 110 in Dkt. #53

5. Paragraphs ¶¶ 10, 18, 19, 20, 22, 54, 78, 83, 84, 94, 98, 104, 107, 108, 109, and 110 of Dkt. #53 allege intentional discrimination, conspiracy, harassment, retaliation, and the premeditated/malicious nature of Defendants' conduct.

6. Defendants' response to Paragraphs 104 & 109 of Dkt. #53 states that "it contains legal conclusions to which no response is required; however, to the extent a response is required, Defendants deny the same."

7. Defendants admitted that one of Plaintiff's duties was to ensure regulatory compliance with FSMA. Dkt. #53, pg. 5, ¶2

8. Defendants admitted Plaintiff was hired by Defendants specifically for her subject matter knowledge in regulatory compliance and quality assurance. Dkt. #53, pg. 22, ¶71; pg. 7, ¶8

9. Defendants admitted they had an FDA visit on September 28–29, 2022. Dkt. #53, pg. 7, ¶9

10. Defendants admitted that there was an FDA complaint. Dkt. #53, pg. 7, fn. 3; pg. 9, ¶14

11. Defendants admit that the FDA inspector noted Defendants' "see something, say something" policy in the inspector's report. Exhibit 4 of Dkt. #1, pg. 36; Dkt. #53, pg. 19, Fn.¶88

12. Defendants introduced adulterated product(s) into the stream of commerce. Dkt. #53, pg. 7, fn.

13. Defendants admitted that they maintained an Open Door Policy allowing employees to report concerns directly to executive leadership without retaliation. Dkt. #53, pg. 19, ¶55–57 & Fn. 88

14. Defendants admitted that on October 21, 2022, Plaintiff raised analogous food safety concerns that Zicher had raised with management. Dkt. #53, pg. 20, ¶60–61

15. Defendants admitted Plaintiff was suspended three (3) business days later, on October 26, 2022, after her conversation with Defendant Schroeder regarding Risk Analysis and other compliance issues. Dkt. #53, pg. 12, ¶26; pg. 20, ¶60-61

16. Defendants admitted that Plaintiff reported concerns of racial and sex-based disparate treatment, retaliation, and FSMA food safety violations to Defendants. Dkt. #53, pg. 29, ¶95

17. Defendants never denied that Zicher and Plaintiff were not similarly situated comparators. Dkt #53

18. Defendants admit that Plaintiff was never issued a discrete termination letter or formal separation notice. Dkt. #53, pg. 28, ¶92

19. Defendants admit Plaintiff was never issued a discrete notice of poor performance. Dkt. #53, pg. 28, ¶92

20. Defendants admitted Plaintiff requested her personnel file -----twice, pursuant to the Illinois Personnel Record Review Act. Dkt. #53, pg. 28, ¶92

21. Defendants have not properly alleged that Plaintiff failed to meet legitimate employment expectations prior to her protected activity. Dkt. #40 & 5

22. Defendants alleged that Plaintiff's communications were "alarmist" and "unprofessional" but offered no examples. Dkt. #53, pg. 28, ¶92

23. Defendants hired Plaintiff to manage its regulatory and compliance issues. Dkt. #53, pg. 7, ¶8

24. Defendants did not deny Plaintiff's claim under 42 USC 1985, nor her hostile work environment claim. Dkt. #53

25. Defendants did not object to the exhibits attached to Plaintiff's initial complaint. Dkt. #40 and & #53

26. Defendants offered Plaintiff a severance package. MM Dec.-Exhibit 23.

27. Defendants did not deny that the outside counsel was an independent fact finder. Dkt. #53 pg. 25 ¶82

28. Defendants did not investigate Plaintiff's claims of disparate treatment. Dkt. #53, pg. 29, ¶95.

29. Defendants stated that Plaintiff was suspended for policy violations. Dkt. #53 Affirmative defense #3

30. Defendants admitted that Plaintiff denied making unfounded allegations (Dkt.#52 pg. 24 ¶76

31. Plaintiff's suspension without pay began on November 8, 2022. MM Dec. pg. 24 ¶3.

32. Defendants did not deny the allegations of ¶69 of Dkt. #53.

II. **Key Factual Assertions Supporting Retaliation Claims (Title VII, § 1981, § 1985)**

33. Defendants admitted that Plaintiff tendered a "Risk Analysis Report" on October 20, 2022, and discussed it with Mr. Schroeder on October 21, 2022, making "certain accusations of compliance failures. Dkt. #53 ¶60-61

34. Defendants admitted that Plaintiff raised regulatory compliance issues. Dkt. #53 ¶61

35. Defendants admit that Plaintiff was suspended. Dkt. #53, pg. 23, ¶75

36. Defendants admitted that Plaintiff was issued a suspension letter. Dkt. #53, pg. 23, ¶75

37. The plaintiff was suspended with Pay on October 26, 2022. Dkt. #53, pg. 23, ¶75

38. Defendants admitted that there was a Direct Link between the Suspension Letter and the conversation with Steve Schroeder.   Dkt. #53 ¶60, 61, 75, 77, 78 & 81

39. Defendants admitted that Plaintiff did not participate in any investigation before being informed of her suspension. Dkt. #53 ¶75

40. Defendants admitted they had an internal investigation conducted without the Plaintiff. Dkt. #53, pg. 24, ¶76

41. Defendants did not raise an affirmative defense to Plaintiff's claim under 42 USC 1981. Dkt. #53

42. Defendants admitted that Plaintiff requested to have an attorney present at the meeting with Dkt. #53, pg. 25, ¶82

43. Defendants did not deny that the suspension transitioned from paid to non-paid after Plaintiff requested to have an attorney present. Dkt. #53, pg. 25, ¶82

44. Defendants did not deny that the suspension transitioned from paid to non-paid after Plaintiff objected to having to see Defendants outside legal counsel. Dkt. #53, pg. 25, ¶82

45. Defendants deny that Plaintiff  was entitled to a signing bonus per the terms of her offer letter... due to the date of her suspension and termination."

46. Defendants admit to withholding Plaintiff's sign-on bonus. Dkt. #53 pg. 25 ¶79

47. Defendants did not raise an affirmative defense to Plaintiff's claims of retaliation. Dkt. #53-Affirmative Defenses

III. **Key Factual Assertions Supporting Disparate Treatment Claims (Title VII, § 1981)**

48. Defendants admitted that Erich Zicher was part of its operation relating to regulatory compliance and quality activities. Dkt. #53, pg. 7 ¶7

49. Defendants admitted that Mr. Zicher has not been subject to adverse employment actions related to Plaintiff's allegations of compliance gaps or deficiencies." Dkt. #53, pg. 27, ¶86

50. Defendants admitted that Mr. Zicher is a white male and that Mr. Zicher was not the subject of any adverse employment or disciplinary actions arising from or related to Plaintiff's allegations."  Dkt. #53, pg. 30, ¶99

51. Defendants admitted that by and through Plaintiff's Complaint, she asserts that adverse employment actions were taken against her and that she had been treated differently

than others who had raised the same or similar issues of compliance deficiencies. Dkt. #53, pg. 23 ¶75 pg., pg. 26 ¶84, pg. & pg. 30 ¶99

52. Zicher provided a "Customer Supplied Materials Procedure" that was "not easy to read or understand" and had "incorrect revision numbers" when the "Consumer Complaint Procedure" was requested. Dkt. #1 FDA EIR (Exhibit 4):

53. Zicher, a similarly situated employee outside Plaintiff's protected classes, engaged in conduct resulting in adulterated products entering into the stream of commerce, yet suffered no adverse employment actions. Dkt. #1, pp. 36–52 & pp. 72–78; Dkt. #53, pg. 7, fn. 3; pg. 9, ¶14

54. Defendants did not require Zicher to meet with outside counsel. Dkt. #53, pg. 27, ¶86 & pg. 30, ¶99

### IV. Key Factual Assertions Supporting Hostile Work Environment Claims (Title VII)

55. Defendants admitted that there was a meeting with their client, Ghirardelli, around this time. Dkt. #53, pg.23 ¶72

56. Defendants only denied the legal conclusions in paragraph ¶83. Dkt. #53, pg. 26 ¶83.

57. Defendants fail to properly deny that being forced to meet with Ford-Harrison was a term and condition of Plaintiff's employment and an intimidation tactic that was harassive in nature and that Plaintiff felt punished and treated differently. Dkt. #53, pg. 26 ¶83

58. Denied the "gaslighting" and "impugning," but did not specifically deny the characterization as "extremist and an alarmist." Dkt. #53 pg. 30 ¶99.

### V. Key Factual Assertions Supporting 42 U.S.C. § 1981 and § 1985 Claims (Conspiracy)

59. Defendants admitted that Plaintiff requested her personnel file." Dkt. #53, pg. 28 ¶91.

60. "Defendant specifically denies that Plaintiff was denied a copy of her personnel file." Dkt. #53, pg. 28 ¶92.

61. Defendants admitted that no documents were withheld from Plaintiff's personnel file, pursuant to her request. Dkt. #53, pg. 28, ¶92

62. Defendants admitted that they asserted privilege with respect to attorney-client communication and/or work product between Defendant and its legal counsel." Dkt. #53, pg. 28 ¶93.

63. Defendants admitted they hired and funded an expert witness to support their position at the Department of Labour. Dkt. #53, pg. 30, ¶98

64. Defendants did not raise an affirmative defense to Plaintiff's claim under 42 USC 1985. Dkt. #53-Affirmative Defenses

## VI. False Statements to Government Agencies:

65. Defendants told the Department of Labour in July of 2023 that Plaintiff was terminated because of incompetence. MM Dec. pg. 23 ¶6-Exhibit 30, JTH Dec. #11.

66. Defendants told the IDHR that Plaintiff was not confident in her job and was terminated because of incompetence. MM Dec. pg. 24 ¶2- Exhibit 31

67. Defendants told the IDHR that they transitioned the suspension from paid to non-paid because they were not able to reach Plaintiff. MM Dec. pg. 24 ¶2-Exhibit (2/29/24 Witness Interview-Gretchen LeMay VP of HR)

## VII. Procedural Irregularities

68. Defendants admitted that the outside counsel claimed attorney-client privilege. Dkt. #53, pg. 28, ¶93

69. Defendants fail to deny that being forced to meet with Ford-Harrison was a term and condition of Plaintiff's employment. Dkt. #1, pg. 60; Dkt. #53, pg. 23, ¶75; pg. 25, ¶82; pg. 28, ¶93

## VIII. Litigation Misconduct (Subpoena to CEO):

70. Defendants directed a subpoena to the CEO of Plaintiff's subsequent employer for her personnel file. DKT.


Respectfully Submitted,
**Mary Madison**
**June 25, 2025**