**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MARY MADISON | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23CV16476 |
| | ) | |
| | ) | Hon. Honorable Manish S. Shah |
| CREATIVE WERKS, LLC *et al*. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGEMENT**

Defendants, Creative Works LLC ("Creative Werks") and Steve Schroeder ("Schroeder"), by their attorneys, Dickinson Wright, PLLC submit this reply in support of their Motion for Summary Judgment as follows:

**INTRODUCTION**

Defendants filed a Motion for Summary Judgement ("Defendants' Motion") with respect to Mary Madison's ("Plaintiff") Complaint claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff asserts that she was discriminated based on her sex and her race and that she was retaliated against for engaging in protected activities.

Defendants' Motion (and supporting Memorandum) are predicated upon the following bases: (1) With respect to her Title VII and 42 U.S.C. § 1981 claims, Plaintiff alleges *indirect* evidence of discrimination, but the undisputed facts do not support the same because she is unable to identify a similarly situated person who was treated differently; (b) and with respect to her retaliation claim, the undisputed facts do not reflect Plaintiff engaged in any *protected activities at all, and/or otherwise* prior to any adverse employment action.

As it relates to evidence of any similarly situated employee(s), Plaintiff argues that her supervisor, Erich Zicher, is the *sole* similarly situated employee based on his raising of "similar

1

regulatory concerns" by virtue of his referring to a particular FDA inspection in an email and based upon the fact that she and Zicher both have PCQI license qualifications. However, the actions that Plaintiff engaged in related to her termination were not remotely related to Zicher's passing reference to a particular FDA inspection. Regarding the issue of "protected activities" Plaintiff argues that her written "Risk Analysis" submitted to Defendants before being terminated, constitutes 'protected actions' on the basis that it raised "systematic [safety] FSMA violations." Plaintiff does not assert that her "Risk Analysis" contained any allegations of discrimination or such….rather solely that by raising safety concerns, her actions should be considered as "protective activities" as it relates to her discrimination/retaliation claims. These responsive arguments by Plaintiff are not supported by her Complaint nor consistent with the law.

Neither the legal nor factual arguments raised by Plaintiff in her Response/Opposition have overcome the arguments raised in Defendants' Motion. In this respect, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits…, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* e.g. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Here, Defendants have satisfied their burden of showing the court an absence of evidence on an issue on which the non-movant has the burden of proof. *Anderson v. Liberty Lobby*, 7 U.S. 242, 248 (1986).

I.   **PLAINTIFF CANNOT MEET HER BURDENS REGARDING HER TITLE VII AND §1981 CLAIMS OF DISCRIMINATORY TREATMENT**

With discrimination claims, it is the burden of a Plaintiff to establish, among other *prima facie* elements, that she was discriminated against under both Title VII and §1981 actions *See* e.g, *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). To defend against any such claims, an employer may produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action, even though

such reasons need not be wise or correct. *Anderson v. Street*, 109 F.4th 646,653 (7th 2024); *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Further, once asserted by an employer, the burden shifts back to Plaintiff who bears the burden of establishing that the Defendant intentionally discriminated against her on the basis of her race or sex. *McGowan*, 581 F.3d at 579-80.

With respect to Plaintiff's burden of proving discrimination, she can do so through direct or indirect evidence. *McDonald Douglas Corp*, 411 U.S. at 804; *Chaib v. Ind.*, 744 F.3d 974, 981-82 (7th Cir. 2014.) Here, Plaintiff does not alleged any direct evidence of discrimination, arguing that her sole basis for alleging same is a purported comparison to her supervisor, Erich Zicher. The law requires that a comparator be "very similar" to Plaintiff. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("similarly situated" comparators must be "*prima facie* identical in all relevant respects"). This would include, but not be limited to, demonstrating that the comparator has the same supervisor, was subject to the same standards, and *engaged in the same conduct*. *Anderson v. Mott St.*, 104 F.4th 646, 653 (7th Cir. 2024).

### A.     UNDISPUTED MATERIAL FACTS REGARDING COMPARATOR

As reflected in Defendants' Statement of Undisputed Facts: (a) Zicher was Plaintiff's supervisor and had a *different* supervisor than Plaintiff (SMF 3, 4 and Complaint ¶5); (b) Plaintiff and Zicher assisted in a routine FDA inspection (SMF 5-6) during which the FDA notified Creative Werks of a one (1) year-old customer complaint; (c) and that Creative Werks notified the FDA of a similar complaint that it had known about and remediated approximately one (1) year earlier (SFM 7-9, 22). Plaintiff does not deny any of the above noted material undisputed facts supporting Defendants' Motion, and she sets forth the following additional facts (although not properly labeled as such).

(a)     Zicher confirms that the initial visit was focused on the consumer complaint, "encompassing the issue" cited in his email (Madison Response to 56.1, No. 6);

3

(b)     Defendants admit that there was a prior similar customer complaint (Id. at No. 7);

(c)     Admitting that Creative Werks had discontinued the relevant product approximately one (1) year earlier, with Plaintiff having no basis to admit or deny same (Id. at 9); and

(d)     Zicher's sent two emails regarding the FDA inspection, noting five (5) observations made by the FDA inspector.  (Id. at 16).

In summary and in substance, Plaintiff's response to the Rule 56.1 Statement of Undisputed Facts and her Additional Facts, as it relates to Zicher's role with respect to the same and his emails describing the FDA audit are not in dispute by the parties.  However, the agreement as to these facts, for purposes of the Defendants' Motion does not advance Plaintiff's burden to demonstrate that Zicher was a similarly situated employee/comparator.

Defendants have never asserted legally or factually, nor is there any evidence cited by Plaintiff, that she was terminated because she either: (a) participated in a routine FDA audit; or that she; (b) sent an email summarizing the FDA audit.  Notwithstanding, Plaintiff would have this court look, myopically at these two (2) unremarkable assertions to assert a "commonality" with Zicher: arguing that because they *both* participated in an FDA audit and *both* sent emails summarizing the FDA audit they meet the similarity test required to establish indirect evidence of discrimination.  This is the legal equivalent of asserting that they 'both have heads on their shoulders' or 'both regularly wore shoes.'  In this respect, Plaintiff's strawman argument misses the *entire* emphasis of the Defendants' asserted basis of Plaintiff's dismissal--which was the substance of her "Risk Analysis" tendered weeks after her nominal email about the FDA inspection. Here undisputed facts show that her suspension and termination had nothing do to with her mere participation with an FDA inspection nor her summary email relating to same, rather she was terminated for her seventeen (17) page Risk Analysis---and as such comparing her other random benign actions to Zicher does not make him a comparable party.

4

Plaintiff's *own* Complaint focuses on her termination as being related to her having drafted and tendered her "Risk Analysis" to Creative Werks' CEO. (See Compl. ¶¶ 58, 60, 61, 66, 67, 72, 73, 78 and 88). Whether or not Plaintiff believes her observations and conclusions in her Risk Analysis were valid or otherwise, it is not disputed that her Risk Analysis included a long laundry list of problematic factual and legal allegations, asserting that Creative Werks:

(a) had no understanding of its regulatory compliance systems, its safety plans and operations, its manner of conducting business, and asserting a complete failure to meet its customer needs…with the assertion of dire consequences due to these alleged failures (SMF 23);

(b) assertions that Creative Werks' failure to comply with Federal Regulations constituted "an inherent systematic and systemic issue throughout the organization that created irreparable harms for all stakeholders." (SMF, Ex. 8, pg. 1);

(c) assertions that there has been losses of customer business due to a failure to comply with applicable regulations (SMF 36-38)[1];

(d) other assertions of failures of Preventative Controls (SMF 35), loss of goodwill and profitability (SMF 39);

(e) Plaintiff's reliance upon review of one (1) safety plan when making conclusions even though there were four (4) safety plans (SMF 46)[2];

---

[1] Plaintiff does not dispute that: (a) she failed to conduct any research to supporting some of her material conclusions (SMF 36 & Pl. 56.1 Response, No. 36); that Creative Werks was concerned because her conclusions were not consistent with its customer experience (*Id*); that Plaintiff asserted there to have been lost revenues due to regulatory compliance issues but admitting not to know of any such instances (SMF 37 & Pl. 56.1 Response to No. 37); and Plaintiff reporting a loss of Pepsi business due to regulatory non-compliance issue while admitting she actually had no idea why Pepsi discontinued its business (*Id*. and SMF 38 & P. 56.1 Response to No. 38).

[2] Plaintiff does not dispute these factual assertions in her Response to these SMFs (See 56.1 Response to Nos. 35, 39, 46).

(f)     her assertion that "Other stakeholders could suffer injury, illness, or death, in addition, other can suffer loss of employment and economic stability" based on two (2)  customer complaints of mere discoloration due to packaging issue a year prior to her employment (SMF 32, 38, 41 & 43)[3]

(g)     her raising a likelihood of criminal penalties even though: (1) remediated by Creative Werks nearly two (2) years earlier with no reported injuries; (2) and the FDA acknowledging the remediation measures taken; and (3) generally reflecting a lack of logical reasoning that would implicate any criminal liability. (SMF 44)[4]; and

(g)     had a complete lack of safety standards and did not follow food related regulations not-withstanding Creative Werks having had dozens of independent third-party food safety audits and inspections assessing same (SMF 13-14, 17-19, 20, 35, 39, 46, 48 & 53)[5].

It is notable too that after Plaintiff participated in an investigation of her actions, after she had been suspended and terminated, she sent a letter to the Company arguing that her Risk Analysis was purportedly justified and that the Company was wrong to use its substance as a basis to terminate her.  (SMF 29.)  In this vein, Plaintiff does not set forth any Undisputed Facts (nor deny any relevant Undisputed Facts) reflecting that Zicher ever submitted any writings or oral reports containing any of such similar findings, allegations or conclusions similar in any respect to her Risk Analysis.  Plaintiff admits to having no knowledge whatsoever of any statements made by Zicher to anyone in the Company of a similar nature, admitting further to have no knowledge of any writing ever drafted by Zicher (other than a nominal email describing the FDA audit).  In this respect, Plaintiff testified she has no knowledge of Zicher ever submitting a written report similar, in any way, to the substance of her Risk Analysis. (SMF 56-70.)

---

[3] Plaintiff does not dispute these facts in her 56.1 Responses (See 56.1 Response to Nos. 32,38,41 &43).
[4] Plaintiff does not dispute these facts in her 56.1 Responses (See 56.1 Response to No. 44).
[5] Defendant does not dispute that these audits occurred, (56.1 Response, No. 13) but merely argues that they individually or collectively do not imply general compliance with applicable safety regulations. (See e.g., 56.1 Response 13, 14, 17-20 & 35).

Plaintiff admits she is not aware of Zicher ever submitting a writing that asserting: (a) any criminal liabilities of the Company with respect to failure to follow FDA regulations (SMF 57); (b) assertions reflecting any systematic failure of the Company to comply with FSMA (SMF 65-67); (c) reporting of any breaches of fiduciary duties to customers (SMF 59 ); (d) expressing concerns about the x-ray machine and the need to exceed manufacturer recommended maintenance (SMF 60); (e) asserting that the Company lacked any satisfactory food safety plan and lacked any cognitive recognition of same (SMF 62); (f) alleging the Company had never interpreted, analyzed and/or applied relevant food safety statutes (SMF 58, 63); (g) accusing the Company of encouraging a disregard for the law (SMF 64); (h) asserting that Creative Werks had a culture opposed to regulatory transparency (SMF 68); and/or (i) implying that Creative Werks and its officers were facing potential criminal liability for criminal liability, including with respect to a minor food discoloration issues where no medical attention was sought and where the FDA accepted Creative Werks remediation of same (SMF 57).   As such, Zicher did not engage in the *same conduct* as Plaintiff that led to her termination.

To satisfy the "similarly situated" prong of the *prima facie case*, an employee must be "directly comparable in all material respects." *Sartor v. Spherion Corp*., 388 F.3d 275, 279 (7th Cir. 2004).  This requires the plaintiff to show not only that the employees reported to the same supervisor, *engaged in the same conduct*, but also show that there were no "differentiating or mitigating circumstances as would distinguish ... the employer's treatment of them." *Ineichen*, 410 F.3d at 961 (7th Cir. 2005) *citing Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 617-18 (7th Cir. 2000).  Indeed, even if two employees have the same responsibilities and the same supervisor, being terminated for different is not sufficient to satisfy the indirect evidence standard.  *See e.g., Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009).

Plaintiff cannot satisfy her burden of demonstrating that Zicher was similar and treated

differently than her; therefore, it is not relevant if Plaintiff (or if this Court) agrees or disagrees with Creative Werks' interpretation and/or reaction to her Risk Analysis, although Defendants' contend that their interpretation of the Risk Analysis is clearly discernable  There is simply no evidence that Zicher (her only alleged comparator) ever engaged in actions similar to Plaintiff, and thus there is no indirect evidence of discrimination.

Accordingly, Defendants are entitled to summary judgment on inability of Plaintiff to establish any direct or indicted evidence of discrimination.

## II. THERE WAS NO PROTECTED ACTIVITIES AT ISSUE

In Plaintiff's Response/Opposition Brief, she asserts that she was engaged in a "protected activity" *by virtue of her tendering her Risk Analysis*, arguing that it raised assertions of regulatory non-compliance.  However, there is *nothing* whatsoever in the Risk Analysis referring or relating to any unlawful employment practice, discrimination or employee based complaint. *See* 42 U.S.C. . § 2000e–3a; *Gates,* 513 F.3d at 686.  Left to surmise her reasoning, Plaintiff argues that having been allegedly terminated for raising safety "whistleblower" type concerns, she seeks to use that basis as a predicate for "protected activities" here.

Plaintiff appears to make similar arguments regarding the existence of protected activities, with respect to her:  a) participation in an internal company investigation into her Risk Analysis prior to her be terminated; and/or (b) her bringing her lawyer to said investigation.  (Compliant ¶81). However, a Plaintiff's mere participation in a purely *internal* investigation and/or plaintiff's use of an attorney in that context, does not qualify as protected activity under Title VII unless the employer's investigation is connected to or pursuant to a pending EEOC/DOL investigation—which has not been alleged here and, by virtue of Plaintiff's own attachments to her Complaint do not establish this.  *See* e.g, *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 745 (2010).  Accordingly, the specific alleged actions argued to constitute "protected activities" is not sufficient here for Plaintiff to

8

succeed on her claims.

Finally, if and to the extent Plaintiff's asserting in a letter to Defendants, *after* she had been terminated, wherein she asserted racial and sexual discrimination, cannot sustain an argument for retaliation either. Indeed, "[i]t is axiomatic that an employer cannot 'retaliate' against an employee for conduct in which the employee has not yet engaged." *Giese v. City of Kankakee*, 71 F.4th 582, 591 (7th Cir. 2023); *citing Nischan v. Stratosphere Quality, LLC*, 865 E.D. 922, 933 (7th Cir. 2017). Here, based upon the Statement of Undisputed Facts and Plaintiff's Response to same, this Court may/should predicate granting of summary judgment on the undisputed fact in the record that Plaintiff was terminated prior to making any such accusations.

### III.     REMAINING MISCELLANEOUS ARGUMENTS OF PLAINTIFF

Plaintiff raises a litany of additional arguments, many of which are not responsive to the merits of Defendants' Motion and which raise issues being addressed in other pending pleadings. To the extent not addressed in contemporaneously pled/filed pleadings, Defendants note as follows:

A.     <u>Plaintiff Was Terminated</u>. Plaintiff argues that Defendants allegedly "dispute" her assertion that she was 'terminated,' and thus should not be able to raise any defenses to same. This is fully addressed in a pending Response to Plaintiff's Motion to Strike Termination Related Defenses.

B.     <u>There Are No FSMA or §1985 Actions Asserted</u>. Plaintiff makes arguments concerning the adequacy of Defendants' Motion with respect to FSMA and/or § 1985 actions. Defendant notes there are no such causes of action pled in Plaintiff's Complaint.

C.     <u>Discovery Issues</u>. Plaintiff argues that a certain legal "independent fact finder" report, allegedly prepared by a third-party lawyer and not provided in discovery and/or whether privileged or not, should result in a denial of Defendants' Motion. Plaintiff similarly argues that Defendants' failure to provide her a copy of her own deposition testimony in this case, should similarly result in

a denial of this motion. (See Response pgs. 3-4). Notably, Plaintiff has never raised any of the above noted discovery issues prior to the close of discovery through any discovery conference or motion, nor has Plaintiff requested a copy of her deposition transcript in any discovery request, nor has she cited any legal authority for Defendant to have provided same to her. Secondly, Defendant has not nor does it seek to rely upon any purported "fact finder" report with respect to its decision to suspend or terminate Plaintiff. Accordingly, this issue does not save Plaintiff from summary judgment.

D. <u>Plaintiff's Disagreement With Cause</u>. Plaintiff makes several related arguments, asserting that Defendants' decision to terminate her: (a) was not legitimate based in her opinions of her own work product (i.e. her Risk Analysis) and/or a purported "expert report" tendered by Plaintiff in an unrelated administrative action; (b) based on her failure to locate any *direct* evidentiary support for her dismissal in her "personnel file"; (c) based on purported inconsistencies in Defendants' characterization of her Risk Analysis as "alarmist," "improper" and "unfounded" but not citing to any prior inconsistent statements; (d) was not supported by legitimate performance expectations *prior* to her submission of the Risk Analysis[6], even though that is the predicate action upon which her termination was based; and (e) asserting that the Defendants' exhibits "are not true and correct copies" but not citing to any disputed Rule 56.1 Uncontested Facts nor Additional Stated Facts in support of this allegations.

Defendants would assert that the above noted bases argued by Plaintiff to deny Defendants' Motion are without any merit and should be summarily disregarded.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants, Steven Schroeder and Creative Werks, respectfully request this Court grant their Motion for Summary Judgment and enter a judgment in their favor

---

[6] The focus on such an analysis is not whether an employee was necessarily performing well *prior* to their wrongful actions leading to their termination. *See e.g., Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1262 (7th Cir. 1993).

and grant such other relief as this Court deems just and appropriate, including but not limited to their costs.

**Respectfully submitted,**
**Creative Werks LLC and Steve**
**Schroeder**

By:     *s/Jon D. Cohen* _____
One of their attorneys

Jon D. Cohen, ARDC 6206666
Dickinson Wright PLLC
55 W. Monroe St., Suite 1200
Chicago, Illinois 60603
(312) 641-0060
jcohen@dickinsonwright.com