UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY MADISON,

    Plaintiff,

    v.

CREATIVE WERKS, LLC, and STEVE
SCHROEDER,

    Defendants.

No. 23 CV 16476

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary Madison began working for defendant Creative Werks in September 2022. A month later, she approached defendant Steve Schroeder, founder and president of Creative Werks, with a risk analysis she had drafted. Among other things, the analysis stated that Creative Werks was non-compliant with certain statutes and regulations, creating irreparable harm to stakeholders. Madison was thereafter suspended from her position. Defendants claim that Madison was suspended for the unprofessional report and conversation she had with Schroeder. Madison alleges her suspension was the result of discrimination based on her sex and race, as well as in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Defendants move for summary judgment and Madison moves concurrently for judgment on the pleadings (and summary judgment). Madison also moves to strike certain defenses raised by defendants. For the reasons discussed below, defendants' motion for summary

judgment is granted, and plaintiff's motions for judgment on the pleadings, summary judgment, and to strike are denied.

## I.     Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The court gives the non-moving party "the benefit of reasonable inferences from evidence, but not speculative inferences in [her] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough to not delay trial—a party may move for judgment on the pleadings" to "dispose of the case on the basis of the underlying substantive merits." Fed. R. Civ. P. 12(c); *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025). When a moving party challenges the sufficiency of a complaint under Rule 12(c), the same plausibility standard under Rule 12(b)(6) applies. *Wolf*, 132 F.4th at 518–19. When ruling on a Rule 12(c) motion, I may consider the pleadings, any exhibits

attached to the complaint, and matters of public record that are not subject to reasonable dispute. *Id.*

## II.    Local Rules 56.1 and Evidentiary Issues

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc..* 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The non-moving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3).

Both the initial statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(a), (b)(3). The non-moving party must cite specific, admissible evidence to dispute an asserted fact and concisely explain how the cited material controverts the asserted fact. N.D. Ill. Local R. 56.1(b)(3). All material facts set forth in the moving party's statement will be deemed admitted unless controverted by the statement of the opposing party. *Id.*

Some of Madison's denials to defendants' statement of facts do not respond to the facts alleged or cite to materials that do not dispute the asserted fact. *See, e.g.*, [98] ¶ 1.[1] As a result, the following facts are deemed admitted: [98] ¶¶ 3, 10–12, 14,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are

24–53, 55–58, 64–69, 73–74. Further, a "Rule 56.1 statement is not the province of legal arguments." *Hartford Fire Ins. Co. v. Taylor*, 903 F.Supp.2d 623, 634 (N.D. Ill. 2012). Legal arguments in Madison's response to the statement of facts are disregarded. *See* [98] ¶¶ 3, 46, 58.

## III.   Facts

Plaintiff Mary Madison is an African American female. [81] ¶ 1. She was hired by defendant Creative Werks on September 27, 2022, as a Quality Regulatory Manager. [81] ¶ 1. In this role, Madison was responsible for compliance with the Food Safety Modernization Act and other regulatory schemes regarding compliance and regulatory requirements. [81] ¶ 1. At the time of Madison's employment, defendant Steve Schroeder, a white male, was the president of Creative Werks, [81] ¶ 2, and Erich Zicher, a white male, was her supervisor, [81] ¶ 4.

Creative Werks's food safety programs and facilities were regularly audited and inspected by third-party entities. [81] ¶ 10. The company has never lost business due to a safety concern from the FDA. [81] ¶ 11. The day after Madison started her job at Creative Werks, an FDA inspector visited the company's Bartlett site and Madison and Zicher participated in the inspection. [81] ¶ 5. The conclusion of the September 2022 FDA inspection was "no action indicated" and no form was issued to management suggesting a material compliance issue. [81] ¶¶ 14–15.

---

largely taken from defendants' statement of facts, [81]; plaintiff's response to defendants' statement of facts, [98]; and defendants' reply to plaintiff's statement of additional facts, [106]. The parties dispute many facts, but not all of those disputed facts are material.

On October 21, 2022, less than a month after her start date, Madison tendered a document that she drafted entitled Regulatory Business Problem to Schroeder and made contemporaneous oral statements to him. [81] ¶ 23. Madison referred to the document as a risk analysis. [98] ¶ 23. Among other things, the risk analysis states that Creative Werks's "non-compliance to the relevant statutes … is an inherent systematic and systemic issue through the organization that creates irreparable harms for all stakeholders." [81] ¶ 31; [81-2] at 48. The risk analysis accuses Creative Werks of breaching contracts and breaching fiduciary duties. [81] ¶¶ 33–34. Though the parties disagree over the veracity of the analysis's assertions, it is undisputed that Creative Werks deemed it inaccurate and contradictory. *See* [81] ¶¶ 31–41.

Before speaking with Schroeder, Madison asked to speak with Creative Werks's Vice President of People, but she was not available until the following Monday and Madison did not wait. [81] ¶ 24. After tendering the risk analysis to Schroeder, it was subsequently shared with Zicher, Zicher's supervisor, and the Vice President of People, who collectively determined it was "full of gross misstatements, mischaracterizations, inadequately researched, intentionally misleading, and alarmist." [81] ¶ 25.[2]

On October 26, 2022, Madison was informed she was being suspended with pay for the unprofessional report and conversation she had with Schroeder. [81] ¶ 27. On

---

[2] Though Madison maintains the quality and accuracy of her analysis, her factual assertions do not controvert defendants' findings with respect to her actions.

November 8, 2022, she was placed on unpaid leave, and on January 17, 2023, Madison was terminated via notice to her attorney. [81] ¶ 28.[3]

On January 23, 2022, Madison submitted a letter to Creative Werks in "Response to Outcomes and Findings of investigation relative to the October 20, 2022 Risk Analysis and October 21, 2022 conversation with Mr. Steve Schroeder." [81] ¶ 29. In addition to defending her analysis, the letter also contends that Creative Werks's treatment of Madison was "retaliatory and based upon [her] engaging in protected activity, [her] race and [her] gender." [81-3] at 25–27.[4]

Madison is not aware of any written reports prepared by Zicher and given to Schroeder or the company. [81] ¶ 55. She lacks knowledge of Zicher making comments to Creative Werks that it had potential criminal liabilities or that it had breached fiduciary duties. [81] ¶¶ 56, 58. Zicher has never made any such statements. [81] ¶¶ 56, 58. Madison also lacks knowledge of Zicher making similar statements to those encompassed in her risk analysis to Schroeder or the company, such as whether Creative Werks has regularly been out of compliance with the Food Drug and Cosmetic Act and the Food Safety Modernization Act, whether Creative Werks

---

[3] Throughout her filings, Madison points to defendants' amended answer, where they essentially deny terminating her employment. *See, e.g.*, [99] at 1 (citing [53] ¶ 11); [96] at 7 (same). However, the vast majority of the record—including Madison's own allegations in her complaint—supports a finding that Madison was terminated. *See* [1] at 4; [81-3] at 50–51; [81-3] at 53–54; [81-3] at 57.

[4] Madison denies that this letter was the first time she raised issues of disparate treatment to defendants. [106] ¶ 29. However, this statement is not supported by specific citations to the record. At best, Madison draws attention to her own declaration, where she accused Creative Werks of retaliating against her "for identifying and raising non-compliance issues to Mr. Schroeder related to violations of FSMA." [81-3] at 15. Madison's declaration is silent on issues of race or gender. *See* [81-3] at 2–23.

6

misapplies food safety statutes, or whether Creative Werks encourages a disregard for the law. [81] ¶¶ 64–66, 68.[5] Ultimately, Madison has no knowledge of the substance of any conversations between Zicher and Schroeder concerning compliance gaps and deficiencies. [81] ¶ 69.

Madison alleges that her suspension was the result of discrimination based on her sex and race, as well as in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. [1] ¶ 9.

## IV. Motions to Strike

Before addressing the merits of Madison's claims, I pause briefly to respond to her two motions to strike. [84], [86]. Motions to strike affirmative defenses are governed by Rule 12(f) of the Federal Rules of Civil Procedure. Such motions are disfavored and will be granted only if the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan*, 864 F.Supp. 726, 732 (N.D. Ill. 1993). Defendants raise five affirmative defenses, all of which I find sufficiently plead under the basic notice pleading requirements of Federal Rule of Civil Procedure 8.

More importantly, and as discussed in more detail below, Madison has not established a prima facie case of discrimination or retaliation under Title VII. "An affirmative defense is one that admits the allegations in the complaint, but avoids

---

[5] Though Madison denies each of these statements of fact (without proper citation to supporting record evidence), her denials do not dispute the keys facts differentiating her actions from those of Zicher. Namely, that Madison confronted Schroeder (as opposed to her direct supervisor or the Vice President of People) with a document accusing the company of wrongful behavior.

liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Divine v. Volunteers of Am. of Ill.*, 319 F.Supp.3d 994, 1003 (N.D. Ill. 2018). A negative defense, in contrast, is one that denies or "directly contradict[s] elements of the plaintiff's claim for relief." 5 *Wright & Miller's Federal Practice & Procedure* § 1270 (4th ed. 2025). Where a defendant succeeds on a negative defense, the court need not reach the viability of any affirmative defense. Thus, Madison's motion to strike defendants' affirmative defenses is denied as moot.

Madison's motion to bar "termination-based" defenses is denied on similar grounds. Madison argues that defendants denied terminating her in their answer to the complaint and that they therefore cannot relitigate her termination status. [86] at 2. But as noted above, the vast majority of the record in this case, including Madison's own allegations in her complaint, supports a finding that Madison was terminated. *See* [1] at 4; [81-3] at 50–51; [81-3] at 53–54; [81-3] at 57. Even more, whether Madison was terminated is ultimately irrelevant to Madison's inability to establish a prima facie case of Title VII discrimination or retaliation. Indeed, whether the challenged adverse employment action is Madison's suspension *or* her termination is of no consequence because defendants do not dispute that Madison can establish an adverse employment action.

## V. Analysis

### A. Discrimination

Title VII makes it unlawful for an employer to discriminate against any individual because of her race, color, religion, sex, or national origin. 42 U.S.C.

8

§ 2000e-2(a)(1). Under Title VII, there are "two paths to survive summary judgment." *Gamble v. Cook Cnty.* 106 F.4th 622, 625 (7th Cir. 2024).[6]

The first path requires Madison to "present enough evidence from which a reasonable jury could find that Defendants discriminated against her because she's Black [or a woman]." *Id.* at 626. Madison does not invoke this totality approach articulated in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).[7] Even if she had, as discussed below, there is no evidence that defendants treated Madison less favorably than similarly situated non-Black, non-female employees. *See Gamble*, 106 F.4th at 628.

The second path is "the well-known framework of *McDonnell Douglas*." *Lane v. Stericycle, Inc.*, 162 F.4th 866, 874 (7th Cir. 2025). To establish a prima facie case of discrimination under *McDonnell Douglas*, Madison must show that: (1) she is a member of a protected group; (2) she was fulfilling her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

---

[6] Madison brings a functionally identical claim under 42 U.S.C. § 1981. [1] at 8–9. Because Madison "does not differentiate the operative facts based upon the statute invoked, and because the elements of [her] claims and the methods of proof are essentially identical under either statute," the below analysis applies equally to her claims under § 1981 and Title VII. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (discrimination); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (retaliation).

[7] Defendants refer to this as the "direct" method of proving discrimination and cite *Chaib v. Indiana*, 744 F.3d 974 (7th Cir. 2014), for the proposition that the direct method requires an outright admission by the decisionmaker of discriminatory behavior. [80] at 4. *Ortiz*, however, instructs district courts to "stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." 834 F.3d at 765.

Once a prima facie case is established, there is a presumption of discrimination and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for its action." *Id.* If the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is pretextual. *Id.*

Defendants concede for the purposes of summary judgment that Madison has satisfied the first and third elements of her prima facie case: she is a member of two protected classes (race and sex) and her suspension and termination constitute adverse employment actions. [80] at 5. Defendants dispute the remaining two elements. [80] at 5.

With respect to the second element, Madison argues that defendants have not disputed that she was meeting their legitimate performance expectations before her risk analysis. [99] at 5. However, "when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)). At the time of Madison's suspension—and ultimate termination—she had already confronted Schroeder with her risk analysis. Thus, "Creative Werks' determination that Madison was not qualified to perform the services she was hired to do," [81] ¶ 73, absent evidence to the contrary, is undisputed evidence that Madison was not meeting her employer's

10

legitimate employment expectations at the time of her suspension. *See Peele*, 288 F.3d at 329.

With respect to the fourth element, Madison argues that Zicher was a similarly situated individual who was not in her protected classes and was treated more favorably than her. [99] at 2. "The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors." *Coleman*, 667 F.3d at 846 (quotation marks omitted). The purpose of this prong "is to eliminate other possible explanatory variables" for differential treatment, such as differing roles. *Id.* Similarly situated employees must be "directly comparable" to the plaintiff in all material respects, but they need not be identical in every conceivable way. *Id.* Precise equivalence is not required. *See id.*

To establish that a comparator is similarly situated, a plaintiff must usually at least show that the comparator (1) dealt with the same supervisor; (2) was subject to the same standards; and (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

Zicher was Madison's supervisor, negating the possibility that the two individuals dealt with the same supervisor. [81] ¶ 4. In any event, "the real question is whether [the plaintiff and comparator] were '*treated more favorably* by the same decisionmaker.'" *Coleman*, 667 F.3d at 848 (quoting *Ellis v. United Parcel Serv.*, 523

F.3d 823, 826 (7th Cir. 2008) (emphasis in original)).[8] Here, both Madison and Zicher ultimately reported up to the same decisionmaker—defendant Schroeder. *See* [81] ¶ 4. Further, defendants do not challenge whether Madison and Zicher were subject to the same standards. [80] at 4.

Defendants do, however, argue that Madison and Zicher did not engage in materially similar conduct and that she therefore cannot satisfy the similarly situated employee method of proof. *See* [80] at 4 (citing *Ineichen v. Ameritech*, 410 F.3d 956 (7th Cir. 2005)). I agree with defendants. According to Madison, she and Zicher engaged in similar conduct because they both raised similar regulatory concerns and were both involved in FDA inspections and submitted quality assessments. [99] at 2; [96] at 12.

Madison's evidence of Zicher's similar conduct is a single internal email he sent relating to the FDA inspection she participated in. [81] ¶ 55; [106] ¶ 55. But this conduct is different from approaching the president of the company with a document accusing it of regulatory and legal violations. *See, e.g.*, [80] ¶ 44. Unlike Madison's surprise encounter with Schroeder, Zicher's email seems to actually fit within his job responsibilities, [80] ¶ 3, and Madison has not produced evidence to the contrary.

Madison has failed to establish a prima facie case of discrimination. But even if Madison could make out a prima facie case, her Title VII claim would still fail. Defendants have articulated a legitimate, nondiscriminatory reason for the adverse

---

[8] *But see Gamble*, 106 F.4th at 627 (noting that different experience levels, job titles, and performance duties are relevant to finding that two employees are not similarly situated).

12

employment action; namely, that they found Madison's actions to be "reckless, unprofessional, demonstrative of an employee failing to conduct research to support material and serious allegations, … and seemingly inconsistent with the skill set required by an employee holding her role." [80] at 11. Madison responds by asserting that defendants' stated reason is pretextual. [99] at 2, 4–5; [96] at 4–5.

Pretext is a lie, "specifically a phony reason for some action," not "just faulty reasoning or mistaken judgment on the part of the employer." *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025). Defendants' performance-based justification for suspending Madison is straightforward: she called into question her ability to perform a job by confronting the company president with accusations he deemed inappropriately alarmist.[9] The question is thus whether there is sufficient evidence for a reasonable factfinder to decide that defendants' justification for suspending Madison was pretext for sex or race discrimination. Despite Madison's various theories to the contrary, that evidence is absent.[10]

---

[9] Madison faults defendants for failing to specifically identify why the risk analysis was inaccurate. [99] at 3. But whether an employer's stated reason is accurate is of no consequence when it is sincerely held. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999).

[10] Madison argues, for example, that defendants' "failure to distinguish Zicher further supports pretext." [99] at 2; [96] at 13. Yet as discussed above, Madison and Zicher are not similarly situated and therefore a reasonable jury cannot draw an inference of pretext from evidence that the two were treated differently. *Upchurch v. Indiana*, 146 F.4th 579, 588 (7th Cir. 2025). Further, Madison suggests that the lack of a "policy, testimony, audit response, or written directive" supporting her suspension renders the action pretextual. [99] at 4. But an employer is not required to have a written policy covering all possible behaviors that may warrant suspension. Finally, Madison accuses defendants of orchestrating an internal investigation and hiring an expert witness for the purpose of fabricating a false narrative that would support her suspension. [96] at 5. Yet this claim is unsupported by the record in this case and does not cut against defendants' performance-based justification for Madison's suspension and ultimate termination.

In the absence of a genuine issue of material fact surrounding Madison's discrimination claim, summary judgment is appropriate.[11]

### B.    Retaliation

To prevail on a retaliation claim under Title VII (or 42 U.S.C. § 1981), Madison must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023). Similar to a Title VII claim for discrimination, retaliation claims also utilize the burden-shifting framework. *See Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Thus, for the same reason discussed above, Madison's retaliation claim will fail even if she can establish a prima facie case—defendants have articulated a legitimate, nonretaliatory reason for its action and Madison has not presented sufficient evidence to show that the stated reason is pretextual.[12]

Madison also cannot establish a prima facie case for retaliation in the first instance. Madison argues that her risk analysis is a protected activity. [99] at 5. But

---

[11] Madison's "Additional Grounds for Denial of Summary Judgment" are unpersuasive. [99] at 3–6. Madison does not allege common law conspiracy, FSMA, or § 1985 claims in her complaint. *See* [1]. Even if a conspiracy were alleged, "the absence of any underlying violation of [her] rights precludes the possibility of" Madison succeeding on a conspiracy theory. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017). Madison's discovery-related arguments are untimely. And Madison's extensive arguments about the validity of her risk analysis is both unsupported by the record and inconsequential in determining whether defendants proffered a legitimate, nondiscriminatory reason for her suspension.

[12] With respect to her retaliation claim, Madison argues that the close temporal proximity between her alleged protected activity and subsequent adverse employment action is evidence of pretext. [99] at 2. But temporal proximity between an employee's protected activity and an adverse employment action "rarely suffices alone to support an inference of a retaliatory motive." *Vassileva v. City of Chicago*, 118 F.4th 869, 875 (7th Cir. 2024). And, as discussed below, Madison's risk analysis did not constitute a protected activity.

Title VII-protected activity must be some opposition to a form of discrimination that Title VII prohibits. *See Cole v. Bd. of Trs. of N. Illinois Univ.*, 838 F.3d 888, 901 (7th Cir. 2016). Madison's risk analysis makes no reference to—nor raises any inference of—discrimination claims or threats of discrimination claims by Madison. [81-2] at 48–52. Madison's lawsuit is not about whistleblower retaliation, and thus the fact that her risk analysis raises questions of food-safety compliance is not evidence of a Title VII violation. *See, e.g.*, *Rabenhorst v. Noem*, 162 F.4th 856, 865 n.4 (7th Cir. 2025) (noting that a whistleblower grievance does not qualify as protected activity for the purposes of a Title VII retaliation claim).

Madison also argues that her participation in Creative Werks's internal investigation into her risk analysis, including bringing her lawyer, constitutes a protected activity. [96] at 3. But participating in an internal investigation (as opposed to an investigation conducted by an official body authorized to enforce Title VII) is not protected conduct. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 746–47 (7th Cir. 2010). Madison did not file an EEOC charge until August 2023, months after she had been suspended and then terminated. [81-3] at 29. "It is axiomatic that an employer cannot 'retaliate' against an employee for conduct in which the employee has not yet engaged." *Giese*, 71 F.4th at 591.[13]

---

[13] For this same reason, Madison's January 23, 2023 letter cannot support her retaliation claim. [81-3] at 25–27. There is no evidence that Madison lodged a complaint—internally *or* externally—until after Creative Werks had suspended and terminated her.

15

## VI.    Conclusion

Defendants' motion for summary judgment, [79], is granted. Plaintiff's motions to strike, [84] and [86], for judgment on the pleadings, [87], and for summary judgment, [89], are denied. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 9, 2026

16